IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 2 7 2004

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

|  |  |  |
|---|---|---|
| CORNELIUS BENNETT, SYLVESTER ROGERS, STACEY WARREN, RODNEY WASHINGTON, CLIFTON LEE, SR., OZZIE GREEN, and LARRY MCBRIDE, individually and on behalf of the class they seek to represent, | ) ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) | CASE No. 3:04CV00291 SWW |
| v. | ) ) | CLASS ACTION |
| NUCOR CORPORATION; NUCOR-YAMATO STEEL COMPANY, L.P.; and NUCOR STEEL -ARKANSAS | ) ) ) ) |  |
| Defendants. | ) ) |  |

## THIRD AMENDED COMPLAINT - CLASS ACTION

### I. NATURE OF COMPLAINT

1.  This action is brought by six African-American current and former employees and one African American applicant of Nucor Corporation ("Nucor") and/or Nucor-Yamato Steel Company, L.P. ("Nucor-Yamato") or Nucor Steel-Arkansas ("Nucor-Arkansas"). Cornelius Bennett, Clifton Lee Sr., Sylvester Rogers, Larry McBride, Rodney Washington, Ozzie Green, and Stacy Warren, bring claims on their own behalf and in behalf of a putative class against Nucor-Yamato and/or Nucor regarding claims arising from Nucor-Yamato's Blytheville, Arkansas plant. Stacey Warren also brings claims against Nucor-Arkansas arising from the plant in Armorel,

1

Arkansas.

2.    Cornelius Bennett, Clifton Lee Sr., Sylvester Rogers, Larry McBride, Rodney
      Washington, Ozzie Green and Stacy Warren (hereinafter "plaintiffs"), seek a
      declaratory judgment that Nucor-Yamato and/or Nucor have engaged in systemic
      pattern and practices of racial discrimination in employment opportunities at Nucor-
      Yamato's plant in Blytheville, Arkansas and that such conduct is unlawful under two
      statutes: (a) Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C.
      §§2000e, et seq., and (b) Section One of the Civil Rights Act of 1866, as amended
      in 1991, 42 U.S.C. §1981a. They also seek a permanent injunction and other
      equitable relief necessary to eliminate the effects of Nucor-Yamato's and/or Nucor's
      past and present racial discrimination and prevent such discrimination from
      continuing to adversely affect their lives and careers, including, but not limited to,
      affirmative restructuring of the selection procedures, training and other terms and
      conditions of employment, reimbursement of expenses incurred in prosecuting this
      action, and attorneys' fees. Each such plaintiff further seeks damages, back-pay and
      other equitable remedies necessary to make themselves and the members of the class
      which they seek to represent whole.

3.    Stacey Warren further seeks a declaratory judgment that Nucor-Arkansas and/or
      Nucor have engaged in systemic pattern and practices of racial discrimination in
      employment opportunities at Nucor-Arkansas' plant in Armorel, Arkansas facility
      and that such conduct is unlawful under two statutes: (a) Title VII of the Civil Rights
      Act of 1964, as amended in 1991, 42 U.S.C. §§2000e, et seq., and (b) Section One

of the Civil Rights Act of 1866, as amended in 1991, 42 U.S.C. §1981a. He seeks a permanent injunction and other equitable relief necessary to eliminate the effects of Nucor-Arkansas's and/or Nucor's past and present racial discrimination and to prevent such discrimination from continuing to adversely affect his life and career, including, but not limited to, affirmative restructuring of the selection procedures, training and other terms and conditions of employment, reimbursement of expenses incurred in prosecuting this action, and attorneys' fees. He seeks damages, back-pay and other equitable remedies necessary to make himself and the members of the class which he seeks to represent whole.

## II.    *JURISDICTION AND VENUE*

4.    This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343(4), and Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§2000e, et seq., as amended.

## III.    *CONDITIONS PRECEDENT TO SUIT UNDER TITLE VII*

5.    The Plaintiffs have fulfilled all precedent conditions necessary to the institution of this action under Title VII. Plaintiffs' claims arising under 42 U.S.C. §1981 do not require administrative exhaustion.

## IV.    *PARTIES*

### A.    *Defendants*

6.    **Defendant Nucor Corporation** is a corporation doing business in various States, with its corporate headquarters in Charlotte, North Carolina. Nucor is an employer as defined by 42 U.S.C. §2000e(b). It is also an individual subject to suit under 42 U.S.C. §1981, as amended. Nucor maintains either actual or constructive control,

3

oversight, or direction over the operation, including the employment practices of the other defendants.

7.      **Defendant Nucor-Yamato Steel Company, L.P.** is a corporation doing business in the State of Arkansas and an employer as defined by 42 U.S.C. §2000e(b). It is also an individual subject to suit under 42 U.S.C. §1981, as amended.

8.      **Defendant Nucor Steel-Arkansas,** is a corporation doing business in the State of Arkansas. Nucor Steel-Arkansas is an employer as defined by 42 U.S.C. §2000e(b). It is also an individual subject to suit under 42 U.S.C. §1981, as amended.

**B.      *NAMED PLAINTIFFS***

9.      **Named Plaintiff Cornelius Bennett** is an African-American resident of the State of Tennessee and a citizen of the United States. At all times material to this action, he has been employed at Nucor-Yamato's plant in Blytheville, Arkansas.

10.     **Named Plaintiff Rodney Washington** is an African-American resident of the State of Tennessee and a citizen of the United States. At all times material to this action, he was employed at Nucor-Yamato's plant in Blytheville, Arkansas.

11.     **Named Plaintiff Clifton Lee, Sr.** is an African-American resident of the State of Arkansas and a citizen of the United States. At all times material to this action, he has been employed at Nucor-Yamato's facility located in Blytheville, Arkansas.

12.     **Named Plaintiff Sylvester Rogers** is an African-American resident of the State of Arkansas and a citizen of the United States. At all times material to this action, he has been employed at Nucor-Yamato's plant located in Blytheville, Arkansas.

13.     **Named Plaintiff Ozzie Green** is an African-American resident of the State of South

4

Carolina and a citizen of the United States. At all times material to this action, he was employed at Nucor-Yamato's plant located in Blytheville, Arkansas.

14.    **Named Plaintiff Larry McBride** is an African-American resident of the State of Arkansas and a citizen of the United States. At all times material to this action, he has been employed at Nucor-Yamato's plant located in Blytheville, Arkansas.

15.    **Named Plaintiff Stacey Warren** is an African-American resident of the State of Arkansas and a citizen of the United States.  He applied for and was denied employment at Nucor Building Systems' plant located in Terrell, Texas, Nucor-Arkansas' plant in Armorel, Arkansas and Nucor Yamato's plant in Blytheville, Arkansas.

## V.    *CLASS CERTIFICATION*

16.    Racially discriminatory treatment is manifested by such policies and/or patterns or practices which deny African-American applicants positions with the companies and African American employees desirable job assignments, promotional opportunities, training, and other benefits and conditions of employment on the same terms applied to white employees.  In particular, each defendant deters  African-American employees and/or applicants   from seeking promotions and desirable job assignments; fails to select and/or train African-Americans for desirable job assignments; ignores, and in some cases actively supports, racist comments, racist jokes, and racist behavior among its employees; and fails to enforce policies prohibiting racial discrimination.

17.    This action in part seeks to enjoin each defendant from pursuing specific illegal

policies and/or practices that have injured and continue to injure plaintiffs and other African-American employees and/or applicants for employment opportunities in all aspects of Defendants' employment operations. Each defendant has created and maintained a system-wide employment policy of race-based disparate treatment and impact, which limits the employment opportunities for African-Americans in various aspects of defendants' employment operation including, but not limited to job selections, training and other terms and conditions of employment.

18. Certification of separate classes is sought for two separate facilities and companies that are the subject of this action. The Plaintiffs seek certification of a class of African-Americans adversely affected by the employment practices at Nucor-Yamato's plant in Blytheville, Arkansas. Stacey Warren also seeks certification of a separate class for African-Americans adversely affected by the employment practices at Nucor-Arkansas' plant in Armorel, Arkansas.

## VI. COUNT ONE - CLAIMS AGAINST NUCOR-YAMATO AND NUCOR ARISING FROM THE BLYTHEVILLE, ARKANSAS PLANT

### A. CLASS DEFINITION AND COMMON QUESTIONS OF LAW AND FACT

19. The African-American named plaintiffs, Cornelius Bennett, Rodney Washington, Clifton Lee, Sr., Sylvester Rogers, Stacey Warren, Ozzie Green and Larry McBride bring claims on their own behalf and on behalf of a class against Nucor-Yamato and Nucor. That class consists of African-Americans who have been subject to one or more aspects of the systemic racial discrimination described in the class claims of this Amended Complaint which include 1) Nucor-Yamato's and/or Nucor's selection

6

procedures and compensation, 2) racially hostile reputation and working conditions, and 3) unequal terms and conditions of employment. The prosecution of the claims of the named plaintiffs require adjudication of the question common to the putative class: whether the Defendants, Nucor and/or Nucor-Yamato, have engaged in systemic racial discrimination in its selection and compensation practices and the terms and conditions of work and employment in a manner made unlawful by the statutes under which this action is brought.

20.    The claims of the named plaintiffs are embedded in common questions of law and fact because defendants Nucor and/or Nucor-Yamato have: 1) prevented African-Americans from learning about or competing for opportunities in jobs traditionally held by white employees; 2) precluded or delayed their hiring and promotion into such jobs; and 3) subjected African-American employees to adverse terms and conditions of employment

## B.    *TYPICALITY OF RELIEF SOUGHT*

21.    The relief necessary to remedy the claims of the named plaintiffs is the same as that necessary for the class. Such plaintiffs seek the following relief for their individual claims and those of the class: 1) a declaratory judgment that the defendants, Nucor and/or Nucor-Yamato, have engaged in systemic racial discrimination in limiting the employment opportunities of African-Americans to lower classifications; 2) a permanent injunction against such continuing discrimination; 3) restructuring of said defendants' selection procedures so that African-Americans are able to learn about and fairly compete in the future for better classifications, compensation levels, and

7

terms and conditions of employment traditionally enjoyed by white employees; 4) restructuring of said defendants' workforce so that African-Americans are assigned to the classifications, locations and compensation levels they would have now hold in the absence of the defendant Nucor and/or Nucor-Yamato's past racial discrimination; and 5) damages, back pay and other equitable remedies necessary to make the African-American named plaintiffs and the class they seek to represent whole from defendants', Nucor and/or Nucor Yamato's, past discrimination.

C.   **NUMEROSITY AND IMPRACTICABILITY OF JOINDER**

22.   The persons whom the named plaintiffs seek to represent are too numerous to make joinder practicable.   The proposed class consists of more than one hundred former, current, and future African-American applicants and employees who have been, are, or will be employed at the Nucor-Yamato's facility in Blytheville, Arkansas. Defendant Nucor-Yamato's and/or Nucor's pattern and practice of racial discrimination also makes joinder impracticable by discouraging African-Americans from applying or pursuing employment opportunities, thereby making it impractical and inefficient to identify many members of the class prior to determination of the merits of such defendant's class-wide liability.

D.   **ADEQUACY OF REPRESENTATION**

23.   The named plaintiffs interests are coextensive with those of the class in that each seeks to remedy Nucor's and/or Nucor-Yamato's discriminatory employment practices so that racially hostile conditions of work will be eradicated and African-Americans will no longer be segregated in unequal positions and prevented from

8

obtaining management and other more desirable positions. Such named plaintiffs are able and willing to represent the class fairly and vigorously, as they pursue their common goals through this action. Plaintiffs' counsel are also qualified, experienced, and able to conduct the litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interest, experience and resources of the Plaintiffs and their counsel to litigate competently the individual and class claims of race-based employment discrimination at issue, satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

**E.    EFFICIENCY OF CLASS PROSECUTION OF COMMON CLAIMS**

24.    Certification of a class of similarly situated African-Americans is the most efficient and economical means of resolving the questions of law and fact that are common to the individual claims of the  named plaintiffs and the putative class they seek to represent.  The individual claims of the named plaintiffs require resolution of the common question of whether Nucor and/or Nucor-Yamato have engaged in a systemic pattern of racial discrimination against African-Americans. Such plaintiffs seek remedies to undo the adverse effects of such discrimination in their own lives, careers and working conditions and to prevent continued racial discrimination in the future.  They have standing to seek such relief in part because of the adverse effect that racial discrimination against African-Americans has had on their own interest in working and living in conditions free from the pernicious effects of racial bias and hostility.  In order to gain such relief for themselves, as well as for the putative class

9

members, the named plaintiffs must first establish the existence of systemic racial discrimination as the premise of the relief they seek. Without class certification, the same evidence and issues would be subject to repeated re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the class of African-Americans affected by the common question of law and fact is the most efficient and judicious means of presenting the evidence and argument necessary to resolve such questions for the named plaintiffs, the putative class and the defendants. Such plaintiffs' individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims of the type at issue in this Amended Complaint. A bifurcated method of proof and trial is the most efficient method of resolving such common issues.

## F.   *CERTIFICATION IS SOUGHT PURSUANT TO FED.R.CIV.P. 23(b)*

25   Nucor-Yamato and/or Nucor have acted on grounds generally applicable to the class by adopting and following systemic practices and procedures which are racially discriminatory.

26.   Nucor-Yamato's and/or Nucor's racial discrimination is their standard operating procedure rather than a sporadic occurrence. Such defendants have refused to act on grounds generally applicable to the class by refusing to adopt or follow selection procedures which do not have disparate impact or otherwise do not systemically discriminate against African-Americans and by refusing to establish conditions of work that are not hostile to African-Americans. Their systemic discrimination and

10

refusal to act on grounds that are not racially discriminatory have made appropriate final injunctive relief and corresponding declaratory relief with respect to the putative class as a whole.

27. Injunctive and declaratory relief are the predominant relief sought because they are both the culmination of the proof of each defendants' individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the named plaintiffs' and putative class members' entitlement to equitable remedies and legal relief at Stage II of such trial. Declaratory and injunctive relief flow directly and automatically from proof of the common question of law and fact regarding the existence of systemic racial discrimination against African-Americans. Such relief is the factual and legal predicate for the named plaintiffs' and putative class members' entitlement to equitable remedies for individual losses caused by such systemic discrimination.

G. **FACTS SUPPORTING ALLEGATIONS OF SYSTEMIC RACIAL DISCRIMINATION**

28. **Named Plaintiff Cornelius Bennett** has been employed at Nucor-Yamato's facility in Blytheville, Arkansas from approximately September, 1993 until the present. He has been employed in the capacity of roll guide builder. During his employment, Bennett has performed his duties and fulfilled his responsibilities in a satisfactory manner. Bennett has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally white job classifications; by being required to work in conditions in which he and other members of his race were demeaned; by

11

being required to work under discriminatory terms and conditions of employment, including being required to endure racial hostilities directed at himself and members of his race.

29.   Nucor-Yamato's and/or Nucor's discriminatory practices and procedures have adversely affected Bennett. For example, on or about March 2003, Ed Cables and Mike Dugan, who are white male supervisors, transferred  Bennett to another department without his consent. This transfer has resulted in Bennett's salary being reduced by approximately $15,000 per year. Similarly situated white employees were not subjected to the same treatment.

30.   As a result of such discriminatory actions, Bennett has suffered extreme harm.

31.   **Named Plaintiff Rodney Washington** was employed at Nucor-Yamato's facility in Blytheville, Arkansas from June 1993 until he was discharged. His final position at the Blytheville facility was in the capacity of a piler operator. During his employment, Washington has performed his duties and fulfilled his responsibilities in a satisfactory manner. Washington was adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally white job classifications; by not being provided training available to similarly situated white employees; by being required to work in conditions in which he and other members of his race were demeaned; and by being required to work under discriminatory terms and conditions of employment, including being required to endure racial hostilities directed at himself and members of his race.

12

32.   Such discriminatory selection procedures have adversely affected Washington.
During his employment, Washington has informed his supervisors that he was
interested in training and being promoted to positions with better opportunities for
advancement. Moreover, Nucor-Yamato and/or Nucor have routinely promoted white
employees to vacant positions over African-American employees of comparable or
more extensive experience. For example, on or about September 2002, Washington
applied for the position of lubricator in the maintenance department.  He was
qualified for the position.  Nevertheless, the position was given to Mike Smith, a
white employee, who was equally or less qualified than Washington. Washington
was subjected to a work environment that tolerates the use of racial slurs and adverse
terms and conditions of employment.

33.   Washington was wrongfully terminated  because of his race and in retaliation for his
opposition to racial discrimination. Washington had complained about racial
discrimination on numerous occasions.  Washington was continually harassed by a
white co-worker, Robert Despain.  Washington reported the harassment  to Doug
Stacey and Doug Patterson, his supervisors.  Doug Stacey told Washington that he
had heard Despain refer to African-Americans as "lazy ass working class niggers."
Stacey had never reported this comment to management.  Despain also wrote a racist
email that was sent over the Defendants' email system.  Washington was suspended
after Despain started a fight with him.  Washington wrote a letter protesting his
suspension  because he believed it was racially motivated. After receiving the letter,
the department manager threatened Washington for making the allegations and told

him that he would be "in trouble" if he could not prove them. At a meeting with the department manager and the plant manager, Washington produced a tape recording of the conversation he had with Doug Stacey. The plant manager became angry and threatened Washington. The plant manager confiscated the tape and refused to return it. In the months prior to his termination, Washington was required to work under both Stacey and Despain. Washington was terminated after he had a verbal altercation with Stacey.

34.     As a result of such discriminatory actions, Washington has suffered extreme harm.

35.     **Named Plaintiff Clifton Lee, Sr.** has been employed at Nucor-Yamato's facility in Blytheville, Arkansas. Lee has performed his duties and fulfilled his responsibilities in a satisfactory manner. Lee has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally white job classifications; by being required to work in conditions in which he and other members of his race were demeaned; by being required to work under discriminatory terms and conditions of employment, including being required to endure racial hostilities directed at himself and members of his race; and by not being provided training available to similarly situated white employees.

36.     Such discriminatory practices and procedures have adversely affected Lee. During his employment, Lee has informed his supervisors that he was interested in being promoted to positions with better opportunities for advancement. Moreover, Nucor-Yamato and/or Nucor have routinely promoted white employees to vacant positions

over African-American employees of comparable or more extensive experience. Lee has been subjected to discriminatory terms and conditions of employment. He and other African-American employees have been subjected to greater discipline and scrutiny than white employees. He and other African-American employees have been subjected to verbal harassment by white supervisors. Such defendants tolerate the use of racial slurs and racist jokes and behavior. For example, Lee was confronted at work by two white employees with a burning cross. Lee reported this to his supervisor, Ed Cable, but Cable took no action. Nucor-Yamato and/or Nucor sell headbands with the confederate flag on it from the company store.

37. Lee has been subjected to retaliation and racial discrimination regarding his selection for downgrading/ demotion. In March 2003, Ed Cable and Mike Dugan, white male supervisor, downgraded Lee from the second crew leader in NYS 2 to the position of roll shop employee in NYS 1. The demotion resulted in Lee earning $17,000 dollars less than he earned in his prior position. Less senior white employees were not downgraded/demoted.

38. As a result of such discriminatory actions, Lee has suffered extreme harm.

39. **Named Plaintiff Sylvester Rogers** has been employed at Nucor-Yamato's facility in Blytheville, Arkansas from approximately April 1996 until the present. He has been employed in the capacity of inspector in the finishing department. During his employment, Rogers has performed his duties and fulfilled his responsibilities in a satisfactory manner. Rogers has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or

compete for employment opportunities in traditionally white job classifications; by being required to work in conditions in which he and other members of his race were demeaned by being required to work under discriminatory terms and conditions of their employment, including being required to endure racial hostilities directed at himself and members of his race; and by not being provided training available to similarly situated white employees.

40.     Such discriminatory selection procedures and discriminatory terms and conditions of employment have adversely affected Rogers. During his employment, Rogers has informed his supervisors that he was interested in being trained and promoted to positions with better opportunities for advancement. Moreover, Nucor-Yamato and/or Nucor have routinely promoted white employees to vacant positions over African-American employees of comparable or more extensive experience. For example, on or about June 2002, Rogers applied for a piler operator position. Rogers was qualified for the position. Tim Paterson, a white male supervisor, initially refused to give Rogers the position. However, after Rogers received the position, he was not given the necessary training to properly learn the skills and knowledge required for the job. Due to the inadequate training that he received Rogers was transferred back to his former inspector position. On or about October 2002, Rogers applied for an inspector position in the finishing department (NYS 2). Although this position involved the same duties as his current position, it offered more hours of work and therefore greater compensation. Rogers was qualified for the position. Nevertheless, the position was given to Jeff Gallander, a white employee with less

seniority and experience than Rogers. In August 2003, Rogers bid on a hot saw operator position. Alan Thomas, a white employee, with less seniority and an inferior attendance record was awarded the position. Rogers has personally observed and been subjected to the defendants' tolerance of a racially hostile work environment. Nucor-Yamato and/or Nucor have tolerated racial slurs and racially derogatory graffiti and conduct. On numerous occasions Defendants have condoned the hanging of nooses in the workplace.

41.     Rogers filed a charge of racial discrimination in January, 2003. Since the filing of the charge he has been retaliated against by the Defendants. He has been the target of harassment and intense scrutiny. For example, In November, 2003 Rogers' supervisor, Darrel Warren, hung a rubber chicken by it's neck five feet form Rogers' work station and walked away laughing. Rogers asked him to take the chicken down and Warren became extremely angry. The incident left Rogers very shaken and with the distinct impression that his supervisor was telling him that he could be hung. Rogers was thereafter called into the office of the area manager, Mike Dugan. Rogers was threatened for over two hours by Dugan and Warren regarding why he believed that race discrimination existed at the Blytheville facility and questioned about if he had filed EEOC charges against the company. Rogers was told the only way he could advance was to "keep his mouth shut." He was also told not to mention that his supervisor had hung the chicken to anyone. On December 20, 2003, a white employee told him over a radio that he could "get a hanging."

42.     As a result of such discriminatory actions, Rogers has suffered extreme harm.

17

43.     **Named Plaintiff Ozzie Green** was employed at Nucor-Yamato's facility in Blytheville, Arkansas Nucor from September 1992 until recently. During his employment, Green performed his duties and fulfilled his responsibilities in a satisfactory manner. Green has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally white job classifications; by being required to work in conditions in which he and other members of his race were demeaned; by being required to work under discriminatory terms and conditions of employment, including being required to endure racial hostilities directed at himself and members of his race; and by not being provided training available to similarly situated white employees.

44.     Such discriminatory selection procedures and discriminatory terms and conditions of employment have adversely affected Green. During his employment, Green has informed his supervisors that he was interested in being trained and promoted to positions with better opportunities for advancement. Moreover, Nucor-Yamato and/or Nucor have routinely promoted white employees to vacant positions over African-American employees of comparable or more extensive experience. For example, on or about November 2003, Green applied for a roll builder job. He was qualified for the position. A white employee form another mill was awarded the positions. Green had been cross-training on the position and the white person selected had no experience in the process. In 2001, he applied for a lead person position but and was not selected. White persons of equal or lower qualifications

were awarded the position.   Green has observed white supervisors provide white employees with the answers to tests. The black employees on the supervisors crews were not provided the answers and did not score as well as the white employees. Such defendants used the test scores to award positions to the white employees. Green has personally observed and been subjected to the Defendants' tolerance of a racially hostile work environment.  Nucor-Yamato and/or Nucor have tolerated racial slurs and racially derogatory graffiti and conduct.   For example, black employees were assigned the dirtiest and most dangerous positions that no other employees would take.  Such defendants also tolerate racial jokes and graffiti.  Green has observed nooses drawn on the bathroom walls; that confederate flags are prominently displayed and sold by the company on company equipment.

45.   As a result of such discriminatory actions, Green has suffered extreme harm.

46.   **Named Plaintiff Larry McBride** is employed  at Nucor-Yamato's facility in Blytheville, Arkansas.  During his employment, McBride  has performed his duties and fulfilled his responsibilities in a satisfactory manner.   McBride has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally white job classifications; by being required to work in conditions in which he and other members of his race were demeaned; by being required to work under discriminatory terms and conditions of employment, including being required to endure racial hostilities directed at himself and members of his race; and by not being provided training available to similarly situated white

employees.

47.    Such discriminatory selection procedures and discriminatory terms and conditions of employment have adversely affected McBride. During his employment McBride has informed his supervisors that he was interested in being trained and promoted to positions with better opportunities for advancement. Moreover, Nucor-Yamato and/or Nucor have routinely promoted white employees to vacant positions over African-American employees of comparable or more extensive experience. For example, in the year 2000, McBride bid on a cold saw operator position on the A crew. At the time McBride was working on the D crew. McBride was told he was not eligible for the position because he had not been with the company for one year. McBride has observed that the requirement that an employee work for one year before they can bid for a higher position applies almost exclusively to black employees. At the time of his application, McBride was working in the I -Bed. I-Bed positions are held predominately by black employees because the position requires prolonged standing, flipping steel beams and working in extreme cold and heat. The cold saw operator position is a predominately white position. In fact, the cold saw pulpit is referred to as the "White House." During the same year that McBride was told he was ineligible for the cold saw operator position, a white employee, Steve Berry, was hired and quickly elevated with in a matter of months to the cold saw operator position. McBride has been told that if he wanted to cross-train for positions he would have to come in on his days off. McBride has observed white employees cross-training during their normal working hours. There are numerous

20

other example of white employees who were less qualified than McBride who have moved into higher positions for which McBride applied and was qualified.

48.     As a result of such discriminatory actions, McBride has suffered extreme harm.

49.     **Named Plaintiff Stacey Warren** has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being considered for employment. On September 26, 2003, Warren applied for an entry position at Nucor-Yamato's facilities located in Blytheville, Arkansas. Warren called each plant and spoke with a representative in the Human Resources Department at each plant to confirm receipt of his resume. Since that time, Warren has not received any further communications from the Defendant about his applications. Upon information and belief, white employees who are less qualified that Warren have been hired.

50.     Such discriminatory selection procedures have adversely affected Warren. Moreover, Defendants have routinely hired white applicants to vacant positions over African-American employees of comparable or more extensive experience.

51.     As a result of the foregoing discriminatory actions, Warren has suffered extreme harm.

## H.     *CLASS CLAIMS AGAINST NUCOR-YAMATO AND/OR NUCOR*

**DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000(e), <u>et seq.</u>, AS
AMENDED, AND THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981, AS AMENDED
<u>CLAIMS FOR DECLARATORY, INJUNCTIVE, AND OTHER EQUITABLE RELIEF</u>**

52.     The named plaintiffs restate and incorporate by reference Paragraphs 1 through 65 above as part of this Count of the Amended Complaint against Nucor-Yamato and/or Nucor.

53. Such African-American named plaintiffs and the class they seek to represent have been subject to systemic racial discrimination including, but not limited to, a pattern and practice of intentional discrimination and a battery of practices having unlawful disparate impact on their employment opportunities. The challenged racial discrimination includes a policy and practice of restricting African-Americans' employment opportunities to the lower classification and compensation levels. The systemic means of accomplishing such racial discrimination include, but are not limited to, Nucor-Yamato's and/or Nucor's selection procedures, racially hostile reputation and conditions of work, and unequal terms and conditions of employment.

54. Such selection and compensation procedures incorporate the following racially discriminatory practices: 1) reliance upon subjective procedures and criteria which permit and encourage the incorporation of racial stereotypes and bias of a predominantly white managerial staff; 2) refusal to establish or follow policies, procedures, or criteria that reduce or eliminate disparate impact and/or intentional racial bias or stereotypes in decisionmaking; 3) refusal to post or announce vacancies or employment opportunities in a manner that allows African-Americans to learn about such opportunities and compete for them before they are filled by white employees or applicants; 4) pre-selection of whites before vacancies or opportunities become known; and 5) discouragement of applications and expressions of interest by African-Americans through a reputation for racial bias, racially hostile conditions of work, and unequal terms and conditions of employment in such areas as work hours and position assignments.

22

55.     Nucor-Yamato's and/or Nucor's selection procedures have a disparate impact on the individual African-American Plaintiffs and the class they represent regarding claims arising in Arkansas. Such procedures are not valid, job related or justified by business necessity. There are objective and structured selection procedures available which have less disparate impact on African-Americans and equal or greater validity and job relatedness, but they not been considered.

56.     Such selection procedures are intended to have a disparate impact on the Arkansas named plaintiffs/class representatives and the class they seek to represent.

57.     The named plaintiffs and the class they seek to represent have been adversely affected by such practices in various way, but is not limited to, the following: not hiring or promoting African-Americans in traditionally white classification and compensation levels; assigning African-Americans to inferior work hours and other unequal terms and conditions of employment; and encouraging or ratifying racially hostile conditions of work and racially demeaning stereotypes regarding the capabilities, motivation and interests of African-Americans.

58.     Nucor-Yamato and/or Nucor have also continuously engaged in, condoned and ratified discrimination which constitutes a continuing violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq., as amended, and 42 U.S.C. §1981, as amended.

59.     The named plaintiffs have no plain, adequate, or complete remedy of law to redress the wrongs alleged herein, and this suit for back-pay, an injunction other equitable relief, and a declaratory judgment is their only means of securing adequate equitable

relief. Such Plaintiffs are now suffering and will continue to suffer irreparable injury from the challenged policies and practices as set forth herein unless enjoined by this Court.

60.     By reason of Nucor-Yamato's and/or Nucor's discriminatory employment practices, the named plaintiffs have experienced harm, including loss of compensation, back and front pay, and other employment benefits.

## CLAIMS FOR NOMINAL, COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO 23(B)(3)

61      The common issues of fact and law affecting the claims of the Representative Plaintiffs and proposed class members, including, but not limited to, the common issues identified in paragraphs 1-60 above, predominate over any issues affecting only individual claims.

62      A class action is superior to other available means for the fair and efficient adjudication of the claims of the  named plaintiffs and members of the putative class.

63.     The cost of proving Nucor-Yamato's and/or Nucor's pattern or practice of discrimination makes it impracticable for the named plaintiffs and members of the proposed class to prosecute their claims individually.

## VII.   *PRAYER FOR RELIEF AGAINST NUCOR-YAMATO AND/OR NUCOR FOR CLAIMS ARISING FROM THE BLYTHEVILLE, ARKANSAS PLANT*

64.     Wherefore, the named plaintiffs on behalf of themselves and the class members whom they seek to represent request the following relief:

a.      Acceptance of jurisdiction of this cause;

b.      Certification of the case as a class action maintainable under Federal Rules

24

of Civil Procedure Rule 23 (a) and (b), on behalf of the proposed plaintiff class, and designation of such Plaintiffs as representatives of the class and their counsel of record as class counsel;

c.    A declaratory judgment that Nucor-Yamato's and/or Nucor's employment practices challenged herein are illegal and in violation of Title VII and 42 U.S.C. §1981;

d.    A temporary and permanent injunction against Nucor-Yamato and/or Nucor and their partners, officers, owners, agents, successors, employees, representatives and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, racial discrimination and retaliation by such defendants set forth herein;

e.    An Order requiring Nucor-Yamato and/or Nucor to initiate and implement programs that provide (i) equal employment opportunities for African-American employees; (ii) remedy the effect of such Defendants' past and present unlawful employment practices; and (iii) eliminate the continuing effects of the discriminatory and retaliatory practices described above;

f.    An Order requiring Nucor-Yamato and/or Nucor to initiate and implement systems of assigning, training, transferring, compensating, and promoting African-American employees in a non-discriminatory manner;

g.    An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (e) and (f), above, which would provide for (i) the monitoring, reporting, and retaining of jurisdiction to

ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (e) and (f), above;

h.  An Order restoring the named plaintiffs and the class they seek to represent to those jobs they would now be occupying but for Nucor-Yamato's and/or Nucor's discriminatory practices;

i.  An Order directing Nucor-Yamato and/or Nucor to adjust the wage rates and benefits for the named plaintiffs and the class they seek to represent to the level that they would be enjoying but for such defendants' discriminatory practices;

j.  An award of back pay; front pay; lost job benefits; preferential rights to jobs, and other equitable relief for the named plaintiffs and the class they seek to represent;

k.  An award of nominal, compensatory and punitive damages for all legal relief sought in this complaint

l.  An award of litigation costs and expenses, including reasonable attorney's fees to the named plaintiffs and class members;

m.  Prejudgment interest; and

n.  Such other and further relief as the Court may deem just and proper.

## VIII. COUNT TWO - CLAIMS AGAINST NUCOR-ARKANSAS AND/OR NUCOR ARISING FROM THE PLANT IN ARMOREL, ARKANSAS

### A. *CLASS DEFINITION AND COMMON QUESTIONS OF LAW AND FACT*

65.     The African-American named plaintiff, Stacey Warren, is a member of the class he

seeks to represent against Nucor Steel-Arkansas and/or Nucor arising from Nucor

Steel-Arkansas' plant in Armorel, Arkansas.   That class consists of African-

Americans who have been subject to one or more aspects of the systemic racial

discrimination described in the class claims of this Amended Complaint which

include 1) the Defendant Nucor's and/or Nucor Steel-Arkansas' selection procedures

and 2) unequal terms and conditions of employment.  The prosecution of the claims

of the named plaintiff requires adjudication of the question common to the putative

class: whether defendants Nucor and/or Nucor Steel-Arkansas have engaged in

systemic racial discrimination in its selection and compensation practices and the

terms and conditions of work and employment in a manner made unlawful by the

statutes under which this action is brought.

66.     The claims of the named plaintiff is embedded in common questions of law and fact

because defendants Nucor and/or Nucor Steel-Arkansas have: 1) prevented African-

Americans from learning about or competing for opportunities in jobs traditionally

held by white employees; 2) precluded or delayed their hiring and promotion into

such jobs; and 3) subjected African-American employees to adverse terms and

conditions of employment.

**B.     *TYPICALITY OF RELIEF SOUGHT***

67.     The relief necessary to remedy the claims of the named plaintiff is the same as that

necessary for the class.   Such named plaintiff seek the following relief for their

individual claims and those of the class: 1) a declaratory judgment that the defendants

Nucor and/or Nucor Steel-Arkansas have engaged in systemic racial discrimination in limiting the employment opportunities of African-Americans to lower classifications; 2) a permanent injunction against such continuing discrimination; 3) restructuring of said defendants' selection procedures so that African-Americans are able to learn about and fairly compete in the future for better classifications, compensation levels, and terms and conditions of employment traditionally enjoyed by white employees; 4) restructuring of said defendants' workforce so that African-Americans are assigned to the classifications, locations and compensation levels they would have now hold in the absence of defendant Nucor and/or Nucor Steel-Arkansas' past racial discrimination; and 5) damages, back pay and other equitable remedies necessary to make the African-American named plaintiff and the class he seeks to represent whole from defendant Nucor's and Nucor Steel-Arkansas' past discrimination.

## C.   NUMEROSITY AND IMPRACTICABILITY OF JOINDER

68.   The persons whom the named plaintiff seeks to represent are too numerous to make joinder practicable.   The proposed class consists of more than one hundred former, current, and future African-American applicants and employees who have been, are, or will be employed at the facilities in Arkansas.   Defendant Nucor and/or Nucor Steel-Arkansas pattern and practice of racial discrimination also makes joinder impracticable by discouraging African-Americans from applying or pursuing employment opportunities, thereby making it impractical and inefficient to identify many members of the class prior to determination of the merits of such defendants'

class-wide liability.

## D.    *ADEQUACY OF REPRESENTATION*

69.    Stacey Warren's interests are coextensive with those of the class in that each seeks to remedy Nucor Steel-Arkansas' and/or Nucor's discriminatory employment practices so that racially hostile conditions of work will be eradicated and African-Americans will no longer be segregated in unequal positions and prevented from obtaining management and other more desirable positions.   Warren is able and willing to represent the class fairly and vigorously, as they pursue their common goals through this action.  Plaintiff's counsel are also qualified, experienced, and able to conduct the litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity.   The combined interest, experience and resources of Plaintiff Warren and his counsel to litigate competently the individual and class claims of race-based employment discrimination at issue, satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

## E.    *EFFICIENCY OF CLASS PROSECUTION OF COMMON CLAIMS*

70.    Certification of a class of similarly situated African-Americans is the most efficient and economical means of resolving the questions of law and fact that are common to the claims of the named plaintiff and the putative class.  The individual claims of the named plaintiff require resolution of the common question of whether Nucor Steel-Arkansas and/or Nucor have engaged in a systemic pattern of racial discrimination against African-Americans.  The named plaintiff seeks remedies to

undo the adverse effects of such discrimination in his own life, career and working conditions and to prevent continued racial discrimination in the future. He has standing to seek such relief in part because of the adverse effect that racial discrimination against African-Americans has had on his own interest in working and living in conditions free from the pernicious effects of racial bias and hostility. In order to gain such relief for himself, as well as for the putative class members, Stacey Warren must first establish the existence of systemic racial discrimination as the premise of the relief he seeks. Without class certification, the same evidence and issues would be subject to repeated re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the class of African-Americans affected by the common question of law and fact is the most efficient and judicious means of presenting the evidence and argument necessary to resolve such questions for the named plaintiff, the putative class and the defendants. The named plaintiff's individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims of the type at issue in this Amended Complaint. Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

## F. *CERTIFICATION IS SOUGHT PURSUANT TO FED.R.CIV.P. 23(b)*

71. Nucor Steel-Arkansas and/or Nucor have acted on grounds generally applicable to the class by adopting and following systemic practices and procedures which are racially discriminatory.

72.    Nucor Steel-Arkansas' and/or Nucor's racial discrimination is their standard operating procedure rather than a sporadic occurrence. Nucor-Arkansas and/or Nucor have refused to act on grounds generally applicable to the class by refusing to adopt or follow selection procedures which do not have disparate impact or otherwise do not systemically discriminate against African-Americans and by refusing to establish conditions of work that are not hostile to African-Americans. Nucor-Arkansas' and/or Nucor's systemic discrimination and refusal to act on grounds that are not racially discriminatory have made appropriate final injunctive relief and corresponding declaratory relief with respect to the putative class as a whole.

73.    The injunctive and declaratory relief are the predominant relief sought because they are both the culmination of the proof of the Nucor Steel-Arkansas' and/or Nucor's individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the named plaintiffs' and putative class members' entitlement to equitable remedies and legal relief at Stage II of such trial. Declaratory and injunctive relief flow directly and automatically from proof of the common question of law and fact regarding the existence of systemic racial discrimination against African-Americans. Such relief is the factual and legal predicate for the named plaintiffs' and putative class members' entitlement to equitable remedies for individual losses caused by such systemic discrimination.

G.    *FACTS SUPPORTING ALLEGATIONS OF SYSTEMIC RACIAL DISCRIMINATION*

74.    **Named Plaintiff Stacey Warren** sought employment at Nucor Steel-Arkansas' and/or Nucor's facility in Armorel, Arkansas. He was not selected. Warren has been

adversely affected by the challenged systemic practices and pattern of racial

discrimination by not being able to compete for employment opportunities.

75.     As a result of Nucor Steel-Arkansas' and/or Nucor's discriminatory actions, Warren

suffered extreme harm.

**H.      *CLASS CLAIMS AGAINST NUCOR-ARKANSAS AND/OR NUCOR***

**DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000(e), <u>et seq.</u>, AS
AMENDED, AND THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981, AS AMENDED
<u>CLAIMS FOR DECLARATORY, INJUNCTIVE, AND OTHER EQUITABLE RELIEF</u>**

76.     The named plaintiff restates and incorporate by reference Paragraphs 1 through 75

above as part of this Count of the Amended Complaint against Nucor-Arkansas

and/or Nucor.

77.     The named plaintiff and the class he seeks to represent have been subject to systemic

racial discrimination including, but not limited to, a pattern and practice of

intentional discrimination and a battery of practices having unlawful disparate impact

on their employment opportunities.  The challenged racial discrimination includes

a policy and practice of restricting African-Americans' employment opportunities to

the lower classification levels.  The systemic means of accomplishing such  racial

discrimination include, but are not limited to, Nucor-Arkansas' and/or Nucor's

selection procedures, racially hostile reputation and conditions of work, and unequal

terms and conditions of employment.

78.     Such selection procedures incorporate the following racially discriminatory practices:

1) reliance upon subjective procedures and criteria which permit and encourage the

incorporation of racial stereotypes and bias of a predominantly white managerial

staff; 2) refusal to establish or follow policies, procedures, or criteria that reduce or eliminate disparate impact and/or intentional racial bias or stereotypes in decisionmaking; 3) refusal to post or announce vacancies or employment opportunities in a manner that allows African-Americans to learn about such opportunities and compete for them before they are filled by white employees or applicants; 4) pre-selection of whites before vacancies or opportunities become known; and 5) discouragement of applications and expressions of interest by African-Americans through a reputation for racial bias, racially hostile conditions of work, and unequal terms and conditions of employment in such areas as work hours and position assignments.

79.   Nucor-Arkansas' and/or Nucor's selection procedures have a disparate impact on the individual African-American Plaintiff and the class he seeks to represent regarding claims arising in Arkansas. Such procedures are not valid, job related or justified by business necessity. There are objective and structured selection procedures available which have less disparate impact on African-Americans and equal or greater validity and job relatedness, but they not been considered.

80.   Such selection procedures are intended to have a disparate impact on the named plaintiff and the class he seeks to represent.

81.   The named plaintiff and the class he seeks to represent have been adversely affected by such practices in various way, but is not limited to, the following: not hiring African-Americans in traditionally white classification levels; and other unequal terms and conditions of employment; and encouraging or ratifying racially hostile

conditions of work and racially demeaning stereotypes regarding the capabilities, motivation and interests of African-Americans.

82. Nucor-Arkansas and/or Nucor have also continuously engaged in, condoned and ratified discrimination which constitutes a continuing violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq., as amended, and 42 U.S.C. §1981, as amended.

83. The named plaintiff has no plain, adequate, or complete remedy of law to redress the wrongs alleged herein, and this suit for back-pay, an injunction, other equitable relief, and a declaratory judgment is their only means of securing adequate equitable relief. Plaintiff is now suffering and will continue to suffer irreparable injury from the challenged policies and practices as set forth herein unless enjoined by this Court.

84. By reason of Nucor-Arkansas' and/or Nucor's discriminatory employment practices, the named plaintiff has experienced harm, including loss of compensation, back and front pay, and other employment benefits.

## CLAIMS FOR NOMINAL, COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO 23(B)(3)

85. The common issues of fact and law affecting the claims of the named plaintiff and proposed class members, including, but not limited to, the common issues identified in paragraphs 65-84 above, predominate over any issues affecting only individual claims.

86. A class action is superior to other available means for the fair and efficient adjudication of the claims of the named plaintiffs and members of the putative class.

87. The cost of proving Nucor-Arkansas' and/or Nucor's pattern or practice of

discrimination makes it impracticable for the named plaintiff and members of the proposed class to prosecute their claims individually.

## XI.   *PRAYER FOR RELIEF AGAINST NUCOR-ARKANSAS AND/OR NUCOR FOR CLAIMS ARISING FROM THE ARMOREL, ARKANSAS FACILITY*

88.   Wherefore, Stacey Warren on behalf of himself and the class members whom he seeks to represent request the following relief:

a.   Acceptance of jurisdiction of this cause;

b.   Certification of the case as a class action maintainable under Federal Rules of Civil Procedure Rule 23 (a) and (b), on behalf of the proposed plaintiff class, and designation of the Plaintiff as representatives of the class and their counsel of record as class counsel;

c.   A declaratory judgment that the Nucor-Steel Arkansas' and/or Nucor's employment practices challenged herein are illegal and in violation of Title VII and 42 U.S.C. §1981;

d.   A temporary and permanent injunction against Nucor Steel-Arkansas and/or Nucor their partners, officers, owners, agents, successors, employees, representatives and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, racial discrimination and retaliation by Nucor Steel-Arkansas and/or Nucor set forth herein;

e.   An Order requiring Nucor Steel-Arkansas and/or Nucor to initiate and implement programs that provide (i) equal employment opportunities for

African-American employees; (ii) remedy the effect of Nucor Steel-Arkansas and/or Nucor past and present unlawful employment practices; and (iii) eliminate the continuing effects of the discriminatory practices described above;

f.   An Order requiring Nucor Steel-Arkansas and/or Nucor to initiate and implement systems of hiring of African-American employees in a non-discriminatory manner;

g.   An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (e) and (f), above, which would provide for (i) the monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (e) and (f), above;

h.   An Order awarding Warren and the class he seeks to represent to those jobs they would now be occupying but for Nucor Steel-Arkansas' and/or Nucor's discriminatory practices;

i.   An award of back pay; front pay; lost job benefits; preferential rights to jobs, and other equitable relief for Warren and the class he seeks to represent;

j.   An award of nominal, compensatory and punitive damages for all legal relief sought in this complaint

k.   An award of litigation costs and expenses, including reasonable attorney's

fees to the Plaintiff and class members;

l.    Prejudgment interest; and

m.    Such other and further relief as the Court may deem just and proper.


Respectfully submitted this ___3___ day of December, 2004.


ROBERT L. WIGGINS, JR., ABS-1754-G-63R
ANN K. WIGGINS, ABS-7006-I-61A
BENJAMIN J. DeGWECK, ABS-8943-B-46-D
WIGGINS, CHILDS, QUINN & PANTAZIS, P.C.
THE KRESS BUILDING
301 19th STREET NORTH
BIRMINGHAM, ALABAMA 35203
205/314-0500
205-254-1500 (facsimile)


PHILIP E. KAPLAN, AR Bar No. 68026
KAPLAN, BREWER, MAXEY & HARALSON, P.A.
415 MAIN STREET
LITTLE ROCK, ARKANSAS 72201
(501) 372-0400
(501) 376-3612 (facsimile)


GRANT MORRIS, ESQ., Washington, D.C. Bar No. 926253
7 DUPONT CIRCLE, N.W., SUITE 250
WASHINGTON, D.C. 20036
Telephone: (202) 331-4707