**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**



**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 0 1 2005

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

| | | |
|---|---|---|
| **CORNELIUS BENNETT, et al.,** | § § § | |
| **Plaintiff,** | § § § | |
| **V.** | § § § | **CIVIL ACTION NO: 3:04 CV-00291 SWW JURY DEMAND** |
| **NUCOR CORPORATION, et al.,** | § § § | |
| **Defendants.** | § § | |

**RESPONSE OF DEFENDANT NUCOR-YAMATO STEEL COMPANY (LIMITED PARTNERSHIP) TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

**INTRODUCTION**

Plaintiffs' Motion to Compel ignores one of the most important Supreme Court decisions on employment discrimination class action cases. The cases Plaintiffs cite in support of the contention that they should be allowed discovery on every African-American employee at Nucor-Yamato Steel Company (Limited Partnership) (hereinafter "Nucor-Yamato") were either decided before the Supreme Court's decision in General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 102 S. Ct. 2364 (1982), or do not take the Falcon decision into account. Falcon specifically prohibits Plaintiffs from pursuing "across the board" class action allegations, and subsequent decisions deny discovery that does not concern similarly situated individuals. Many courts, including those in the Eighth Circuit, have recognized that, based on the Falcon decision, discovery should be limited to similarly situated employees under the authority of the same

24

decision makers. Significantly, a nearly identical motion to compel filed by Plaintiffs in the related South Carolina class action case against Nucor Steel-Berkeley was flatly denied this week by the District Court in that case.

Plaintiffs also ignore persuasive authority supporting the reasonable limitations on discovery proposed by Nucor-Yamato in this case. As one Court in this circuit has noted, "discovery rules are intended to provide broad access to information, they do not countenance a wide ranging search without foundational basis." Nelson v. Paracelsus Healthcare Corporation of North Dakota, Inc. 2000 WL 33340302, *1 (D.N.D., February 14, 2000). Similarly, other federal courts have stated that "[i]t is an abuse of Fed.R.Civ.P. 23 to make unsupported charges of class-wide discrimination, in the hope that broad-scale discovery may turn up some evidence to support the charges." Rodger v. Electronic Data Systems, Corp., 155 F.R.D. 537, 539 (E.D.N.C. 1994); see also, Cutner v. Atlantic Richfield Co., 1979 WL 209, *3-4 (E.D.Pa.). This is exactly what Plaintiffs hope to do in this case.

Plaintiffs place all of their hopes for the vast array of discovery they seek on one unpublished Order entered by this Court in Robinson v. Sears, Roebuck and Co., 111 F. Supp.2d 1101 (E.D. Ark. 2000). While citing this Order for each of their positions in the hope of achieving a similar result in this case, Plaintiffs roundly ignore the significant distinctions between Sears and this case. At least 5 significant issues that distinguish the Sears case: 1) the decisions in Sears were made by a core management group, here decisions are made by separate, autonomous managers; 2) the Court found that discovery in Sears would not create an undue burden because all the requested information was compiled in one place, while here the discovery requested is spread across 5 physically separate departments; 3) in Sears, all employees were commissioned sales associates, while in this case, there is no overarching

similar position or duty that employees perform; 4) the case in <u>Sears</u> involved differences in pay for performing the same work across departments, while in this case, employees' pay at Nucor-Yamato is tied to a production bonus system which varies by department; and 5) <u>Sears</u> admitted that class members performed essentially the same work. Here, as explained, the work is very different across the different departments. Once the two cases are distinguished, Plaintiffs are left with scant support for the massive amount of irrelevant and burdensome discovery they seek.

Nucor-Yamato has reasonably attempted to resolve the current discovery disputes in the face of Plaintiffs' burdensome Requests for Production. And sound precedent supports Nucor-Yamato's proposed limitation on discovery.

## I.    Nucor-Yamato Reasonably Attempted to Resolve The Present Discovery Disputes

### A.    Plaintiffs' Original Requests Are Irrelevant and Unduly Burdensome

This case began as a nationwide class action case filed by Plaintiffs in the Western District of Arkansas in December 2003. It was subsequently severed and transferred to four different jurisdictions, including this District, in July 2004. Plaintiffs served their first Requests for Production on Nucor-Yamato in February 2005. Contrary to the assertions in Plaintiffs' Motion, Nucor-Yamato timely responded to their Requests on March 11, 2005. At that time, Nucor-Yamato provided documents to Plaintiffs and also objected to Requests that were irrelevant and burdensome. Here are some of Plaintiffs' irrelevant discovery requests:

- ***Plaintiffs' Request No. 30****: Copies of e-mail correspondence generated or received by any pc, lap top, or hand-held device which is or has been the property of Nucor-Yamato.*

This Request sought every e-mail ever sent at Nucor-Yamato, regardless of subject matter, time frames, or sender. Nucor-Yamato cannot possibly be expected to comply with such

a request.  Not only are the vast majority of e-mails irrelevant to Plaintiffs' claims, but Nucor-Yamato's e-mails could number in the millions and take many months to produce.

- ***Plaintiffs' Request No. 2:*** *All documents identifying by name, race, and complete employment history, every employee selected for a position at the Nucor-Yamato company from December 8, 1999, to the present.*

Plaintiffs sought every document relating to every job at the facility since 1999, regardless of whether the job had anything in common with Plaintiffs, and regardless of whether an African-American had even held or sought the job.

- ***Plaintiffs' Request No. 6:*** *All documents which tend to show the reasons for selecting and not selecting each employee of the Nucor-Yamato corporation for a position from December 8, 1999 to present.*

Plaintiffs Request sought reams of paper on hundreds of employees regardless of their race or the job in question.  This Request alone would require the Company to spend hundreds of man-hours and a great deal of money to compile information that is not even relevant to the claims of the seven Plaintiffs.

- ***Plaintiffs' Request No. 34:*** *Any and all documents produced by either party in discovery or disclosures in EEOC v. Nucor-Yamato, CV-J-C-95-137.*

As a final example of Plaintiffs' irrelevant requests for production, Request No. 34 sought all discovery documents from a case that was litigated nearly ten years ago.  Additional requests seek all expert reports and every other piece of documentation from that case.  Plaintiffs cannot reasonably expect that all of the documents from a case that happened a decade ago would be relevant in any way whatsoever to the current Plaintiffs' claims.

The point of highlighting these examples is to show this Court that Plaintiffs' discovery Requests made in February 2005 were so burdensome and irrelevant that Nucor-Yamato had no choice but to object.

**B.**    **Nucor-Yamato Timely and Appropriately Responded to Plaintiffs' Requests**

Plaintiffs' current Motion implies that Nucor-Yamato made no attempt to answer their Requests, but again, Plaintiffs ignore the fact that Nucor-Yamato responded promptly and requested that Plaintiffs more narrowly tailor their requests. After Nucor-Yamato responded to the original Requests for Production on March 11, 2005, Plaintiffs never sent any further correspondence outlining their specific disputes with regard to Nucor-Yamato's responses and objections. Counsel for Plaintiffs made one phone call to counsel for Nucor-Yamato on March 14, 2005, during which Defense counsel stated that the Company was working diligently to provide a large volume of supplemental documents to Plaintiffs. During this call, Defense counsel estimated that Nucor-Yamato would need at least two weeks to provide the supplemental materials due to the enormous volume of the requested documents, which number in the tens of thousands. Rather than attempting to resolve the discovery disputes, and rather than waiting a few weeks for Nucor-Yamato to reasonably supplement the prior discovery responses, Plaintiffs filed this Motion to Compel on March 18, 2005. Without any further attempts to resolve these disputes without this Court's intervention, Plaintiffs filed the current Motion to Compel one week after Nucor-Yamato timely answered Plaintiffs' Requests for Production.

With regard to Plaintiffs' Interrogatories served on Nucor-Yamato on November 29, 2004, Nucor-Yamatos again responded in a timely manner on December 30, 2004. Plaintiffs thereafter sent a letter outlining their disputes with Nucor-Yamato's responses and objections to the Interrogatories on February 9, 2005. To attempt to resolve these disputes related to Nucor-Yamato's responses and objections to Interrogatories, Nucor-Yamato sent a ten-page letter on February 18, 2005 explaining its position on each of the disputes. In this letter, Nucor-Yamato

also proposed the following reasonable limitation on the scope of discovery in the case, based on relevant case law:

> Nucor-Yamato Steel Company will produce existing documents involving African-Americans who bid on positions similar in pay and requisite experience level needed as those bid upon by Plaintiffs, in the same Departments as those bid on by Plaintiffs, involving the same decision makers as Plaintiffs, and which occurred from 2001 to the present.

Following that correspondence, Plaintiffs sent another letter on March 2, 2005, rejecting out-of-hand Nucor-Yamato's proposed reasonable discovery limitations without offering any compromise whatsoever. Plaintiffs then filed this Motion to Compel and again failed to make any further attempts to resolve the disputes.

What Plaintiffs describe as Nucor-Yamato's unreasonable failure to respond to discovery requests was actually a period in which Nucor-Yamato responded and objected to the Requests in a timely manner and attempted to work out a solution to the disputes based on sound case law. Plaintiffs' original Requests were so irrelevant and burdensome that Nucor-Yamato's only choice was to object and ask that they be more narrowly tailored. After Nucor-Yamato worked diligently to resolve the disputes and sought to limit discovery based on sound precedent, in this Circuit, Plaintiffs chose to file a Motion to Compel based on outdated case law rather than compromise.

Plaintiffs argue in their motion that Nucor-Yamato did not object to production of computerized information and thereby waived any objections or limitations to such discovery. Plaintiffs' Motion to Compel, p. 7, paragraph 10. The Joint Rule 26(f) Report does state, however, that issues regarding electronic data production are anticipated, and that Defendants will attempt to resolve such issues with Plaintiffs, which has occurred. Joint Rule 26(f) Report at § 4(e). Nucor-Yamato further stated in the report that the anticipated cost, scope and time

required for identification and production of data would be burdensome and prejudicial, placing Plaintiffs on clear notice.   Id. Additionally, Plaintiffs' Requests for Production were not propounded upon Nucor-Yamato until several months *after* the Joint Report was finalized, making Plaintiffs' argument hollow.

**C.     Plaintiffs Unreasonably Delayed Signing a Confidentiality Agreement**

Another issue Plaintiffs largely ignored in their Motion was their delayed response to Nucor-Yamato's draft Confidentiality Agreement, which was proposed on December 22, 2004. Nucor-Yamato proposed that confidentiality agreement because of the vast array of sensitive employee documents sought by Plaintiffs, including personnel files of employees who are not party to this suit.   These personnel files contain information such as divorce records, medical records, garnishment documents, child support documents, social security numbers, and bank account information for direct deposits of paychecks.  Nucor-Yamato is obligated to ensure that this sensitive information is protected.

Plaintiffs responded with a counterproposal on January 5, 2005, and Nucor-Yamato compromised on each point, returning an amended draft of the Agreement on January 7, 2005. Thereafter, Plaintiffs never responded to the compromise.  Instead, Plaintiffs sent an entirely new Confidentiality Agreement on February 22, 2005 for Nucor-Yamato to consider.  Plaintiffs did so only a few days before they filed a Motion to Compel in the pending South Carolina case against Nucor Steel-Berkeley, about their issues were with Nucor-Yamato's amended draft.

On March 9, 2005, Nucor Corporation agreed to the new Confidentiality Agreement Plaintiffs proposed in the South Carolina case, again showing their good faith to work diligently to compromise on these issues, in order to accelerate the production of these sensitive employee records.  On March 29, 2005, Nucor Corporation and Nucor-Yamato further agreed to use the

same Agreement reached in the South Carolina case in the current case in Arkansas. Defendants have consistently conceded to Plaintiffs' requests in an effort to amicably resolve the discovery disputes at hand.

Instead of informing the Court of this issue or of Nucor-Yamato's multiple attempts to resolve the discovery disputes in this case, Plaintiff chose to characterize Nucor-Yamato as taking an unreasonable position regarding document production. However, taking all the facts into consideration, it is clear that Plaintiffs have played a key role in the delay through the unreasonableness of their original Requests and their failure to timely respond to Defendants' attempts to get a Confidentiality Agreement in place so that highly sensitive data regarding non-party employees could be produced.

### D.    Plaintiffs' Cases are Inapplicable

In support of Plaintiffs' position that they are entitled to discovery above and beyond those "similarly situated" to themselves, they primarily on an unpublished Order from this Court. Citing Robinson v. Sears Roebuck & Co., No. LR-C-98-739, Order of the Court, August 13, 1999.) Plaintiffs correctly point out that this Order determined the proper scope of discovery in the Title VII class action asserted in Sears. Plaintiffs neglect to mention, however, that the Court also limited discovery in the Sears case to only one store. Sears Order at p. 3. The proposed class in the Sears case was additionally already limited to the non-commissioned hourly employees at that store. Sears, 111 F.Supp. 2d at 1119-120. This Court did, however, include discovery from the separate departments at the single store in question. Plaintiffs argue that discovery from each department at within Nucor-Yamato's facility should be similarly allowed in the present case. But key factual distinctions between Sears and this case make the Sears discovery inapposite:

1)      In <u>Sears</u>, the plaintiffs alleged that discrimination was based on decisions made

"by the core white management group at the University Store," and the policies

were store-wide. 111 F.Supp. 2d, at 1106-07. It has long been recognized that

Title VII plaintiffs asserting class allegations must be sufficiently similar in

that they be subject to the same employment decision-makers. Allegations of

adverse employment decisions arising from various and independent managers

and supervisors cannot support requirements that plaintiffs' claims are common

or typical of the proposed class. Here, Plaintiffs are not similarly situated to

each other or to the proposed facility-wide class because there is no "core"

management. The employment policies and procedures are compartmentalized

within each separate department, and the department managers and even

supervisors are the actual decision-makers. Each department at the Nucor-

Yamato facility operates autonomously and independently regarding

employment decisions within that department. Department managers are free

to create and apply their own policies and procedures for hiring, promotions,

discipline and training, and are truly independent decision-makers. The

inference of central policies identified in the <u>Sears</u> case provided a basis for

determining that discovery across the different departments was proper. <u>See id.</u>

at 1121-22. The autonomous and independent nature of the decision-makers at

Nucor-Yamato's facility, however, clearly contradicts Plaintiffs' alleged need

for burdensome cross-departmental discovery. Plaintiffs should not be allowed

to conduct a fishing expedition based upon this Court's decision in the <u>Sears</u>

case because the existence of a central management and decision-making structure in that case which supported that decision are not present in this case.

2)      In <u>Sears</u>, this Court found that discovery across employment divisions at Sears would create no undue burden for Sears. Here, there is no easy solution to such wide-ranging discovery. Each department operates almost as an independent business, and maintains its own policies and filing procedures, as well as individual plaintiff files. Information and documents are maintained at various locations the independent departments, and throughout each department in the possession of the individual supervisors. Gathering information from the separate departments in this case creates an undue burden not present in the <u>Sears</u> case. Considered in light of the fact that Plaintiffs seek information regarding employees who were not supervised by the same decision makers, or even within the same department, such broad, probing discovery should not be allowed.

3)      In <u>Sears</u>, the class was based upon non-commissioned retail sales positions. Class discovery was limited to positions similar to those which plaintiffs held. In the present case, there is no common position or duties, such as retail sales, that employees have at Nucor-Yamato such as retail sales. Each department performs a different function. For example, the Melt Shop department is responsible for melting scrap steel into malleable form. The Shipping Department takes finished steel beams and rolls and fills customer orders by moving such material off the facility via various transport methods. The decision makers, functions and employee structure of these two departments

are so inherently different from one another that the employees in each department are situated very differently. Within each department, each position has different required skills, different duties, and different supervision and decision makers. Many of the positions within each department require such specialized skills that it would be impossible to find common issues linking putative class members, as was the case with the entry-level sales associates in the Sears case. Plaintiffs should not be allowed discovery regarding dissimilar employees who were employed in departments with completely separate functions and procedures, because those employees could never be included in Plaintiffs' proposed class.

4)    The Sears involved differences in pay for performing the same work. In this case, employees pay at Nucor-Yamato is determined, in large part, by a production bonus system which varies by department. This bonus, unlike the pay in Sears, is tied strictly to production and is not race-differentiated. The pay rates and decisions are so individual to each department that Plaintiffs are unable to assert that pay issues are common to the individual departments and employees therein.

5)    The Sears case noted that its class members in each department performed essentially the same type of work – retail sales. Here, as noted above, the alleged class members in the individual departments had entirely different job duties based on the independent functions of each department. For example, there is no position within the Melt Shop that has job duties and requirements similar to any job position in the Shipping Department. This case is

distinguishable from the Sears case because the alleged class members have no common job functions, and discovery should be limited accordingly.

**III.    Settled Case Law Supports Nucor-Yamato's Proposed Discovery Limitations**

Plaintiffs currently seek documents regarding employment decisions made for each African-American production employee at Nucor-Yamato since 1999. This would encompass hundreds or thousands of employment decisions that have absolutely nothing in common with Plaintiffs' claims. Plaintiffs request information involving different departments, different promotions procedures, different decision makers, different types of jobs, and different requirements, all over a period of six years.

Accordingly, based on post-Falcon cases discussed below, Nucor-Yamato proposed limitations on this discovery, including discovery related to employees similarly situated to Plaintiffs. Nucor-Yamato's proposed:

> Defendant will produce existing documents involving African-Americans who bid on positions similar in pay and requisite experience level needed as those bid upon by Plaintiffs, in the same Departments as those bid on by Plaintiffs, involving the same decision makers as Plaintiffs, and which occurred from 1999 to the present.

**A.    Limitations Based on Similarly Situated Employees are Reasonable**

Although federal rules permit liberal discovery, it "is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). Discovery, in the Title VII context, must be limited to the employment practices at issue in the case. Burns v. Hyvee, Inc., 2002 WL 31718432, *2 (D. Minn. 2002); Ardrey v. United States Parcel Service, 798 F.2d 679, 682 (4th Cir. 1986). While noting that discovery in a Title VII case is usually broad, the 8th circuit has stated that discovery can be limited even if it is relevant if "no need is shown, or compliance would be unduly

burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking the discovery of the information." <u>Miscellaneous Docket matter #1  v. Miscellaneous Docket matter #2</u>, 197 F.3d 922, 925 (8th Cir. 1999).

The issue in dispute in Plaintiffs Motion to Compel is class certification. <u>See</u> Fed.R.Civ.P. 23(c)(1) ("As soon as practicable after the commencement of the action brought as a class action, the court shall determine by order whether it is to be so maintained"); <u>see also</u> Plaintiff's Motion to Compel § 3 ("In order to secure the requisite expert report for class certification, plaintiffs have sought answers to interrogatories and document requests"); § 4 ("Plaintifffs need answers to production request...in order to have the...type of statistics needed for class certification"). However, Plaintiffs' attempt at "across-the-board" discovery for the certification of their class action was specifically rejected by <u>Falcon</u>. The <u>Falcon</u> court rejected the "across-the-board" approach commenting, "if one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential for a companywide class action." <u>Falcon</u>, 457 U.S. at 159.[1] The Court also reiterated its holding in <u>Rodriguez</u> that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." <u>Id</u>. at 156 (quoting <u>East Texas Motor Freight System, Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977)). Despite the fact that any class, and thus any relevant discovery, will be limited to those individuals who possess the same interest and suffer the same injury, Plaintiffs are seeking facility-wide discovery of departments and positions with which they had no interest.

Courts in the Eighth Circuit have held similarly. This Court has stated that a named plaintiff complaining of a particular employment practice cannot assert claims on behalf of the

---

[1] The "across-the-board" approach was limited by the court to instances where a biased testing procedure was used to evaluate both applicants and incumbent employees. <u>Falcon</u>, 457 U.S. at 159, FN 15.

putative class concerning other employment practices as to which he or she was personally injured. Sears, 111 F. Supp. 2d at 1115. Also, the 8th Circuit has held that a plaintiff affected by one policy, could not properly represent a class of plaintiffs that was not similarly affected. Roby v. St. Louis Southwestern Railway Co., 775 F.2d 959, 962 (8th Cir. 1985) (citing Walker v. World Tire Corp., Inc., 563 F.2d 918, 922 (1977)).

Plaintiffs argue Paxton v. Union National Bank, 688 F.2d 552 (8th Cir. 1982) for their position that limitations based on "similarly-situated" employees are against case law in this circuit. Specifically, they quote these two passages from Paxton in their Motion to Compel, paragraph 7 dealing with "similarly situated" limitations.

> The rule does not require that every question of law or fact be common to every member of the class, Mosley v. General Motors Corp., 497 F.2d 1330, 1334 (8th Cir. 1974); Like v. Carter, 448 F.2d 798, 802 (8th Cir. 1971), cert. denied, 405 U.S. 1045, 31 L. Ed. 2d 588, 92 S. Ct. 1309 (1972), and may be satisfied, for example, "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." American Finance Sys., Inc. v. Harlow, 65 F.R.D. 94, 107 (D. Md. 1974).[2]
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> Obviously, the bank's allegedly discriminatory promotion procedures will affect individual employees in different ways because of their diverse qualifications and ambitions. These factual variations are not sufficient to deny class treatment to the claims that have a common thread of discrimination. Duncan v. State of Tenn., 84 F.R.D. 21, 29 (M.D. Tenn. 1979). See Paxton, 688 F.2d at 561.

Tellingly, Plaintiffs leave out the connecting passage of this opinion, which puts the above passage in its proper context.

> Judge Woods wasted few words on the issue of the commonality of the promotion class, stating only: "Spann and Terry claim that they resigned from the bank because of discrimination in promotions, but the evidence fails to substantiate this charge as to them or other black bank employees." 519 F. Supp.

---

[2] It should be noted that, although the case law supporting this paragraph is redacted in Plaintiff's Motion to Compel, the actual cases cited in the Paxton opinion for this proposition of law all predate the Falcon decision by a decade.

at 172. Again, Judge Woods applied an incorrect legal standard that was improperly influenced by his view of the merits of the claims. The commonality requirement was satisfied because the following issue pervades all the class members' claims -- has Union National Bank discriminated against black employees by denying them promotions and giving them lesser promotions than those given whites similarly situated? See Id. (citing Chisholm v. United States Postal Service, 665 F.2d 482, 492 (4th Cir. 1981)).

In determining satisfaction of the commonality element of Rule 23 for review of a certification decision by the District Court, the Paxton Court held that a common issue could be sufficient. However, the Court in Paxton was addressing the appropriateness of the lower court decision to deny certification based on existent evidence of a larger putative class. 688 F.2d at 560-561. The connection was readily apparent, and the requested information was relevant to class certification. In the present case, no information exists pointing to a larger class with the same or similar issues. Plaintiffs must not be allowed to force Nucor-Yamato into producing broad discovery in hopes of uncovering a class of which they are presently unaware.

Plaintiffs also cite Donaldson v. The Pillsbury Co., 554 F.2d 825 (8th Cir. 1977), in support of their proposition that they should be allowed to discover all employee information from every department at Nucor-Yamato, regardless of how unrelated and irrelevant such information may be. Pillsbury found typicality where the plaintiff was able to factually demonstrate "that there were in fact other members of the class who had similar grievances." Id. at 831. Here, Plaintiffs have not demonstrated the existence of a class with similar grievances, and apparently wish to burden Defendants with over-broad production requests in order to pressure Nucor-Yamato into settlement. Further, the Pillsbury Court held that production of electronic data from the Pillsbury headquarters was proper, but only after it found that the plaintiff was a proper representative, and that her claims were common and typical of the factually-identified putative class. Id. at 831-832. In this case, Plaintiffs claims cannot be common and typical of a facility-wide class, because they were subject to individual policies and

practices which are, under Nucor-Yamato's philosophy, determined independently by each department within the facility, and by distinct decision-makers. Plaintiffs' arguments also fail because Nucor-Yamato has agreed to produce much of the information sought, and merely requires a sufficient amount of time to properly investigate and review such information.

A case in which the argument for across-the-board discovery has already been rejected within this circuit is Nelson v. Paracelsus Healthcare Corporation of North Dakota, Inc., 2000 WL 33340302. In that case, Plaintiff filed a motion to compel responses to interrogatories and document requests relating to salaries of employees of other than those who were to be represented in the class. Id. at *1. Similar to this case, the employer objected to this request of information to employees who were not similarly situated in that it sought information which was irrelevant, overbroad, and unduly burdensome. Id. The Court noted that before Plaintiff received this information, it must make some showing that the employees were somehow similarly situated to Plaintiff's class. Id. The employer in Nelson argued that Plaintiff must make a showing of similarly situated **before** gaining access to compensation data concerning other employees. Id. Plaintiff countered by arguing that the "similarly situated" issue is a fact question for the jury, which prevents a sufficient basis for discovery of the information.[3] The Court held that, while Plaintiff need not prove the similarly situated issue by a preponderance of the evidence by this stage, merely placing the issue in dispute by making a request for compensation information on other employees is not enough. Id. The Court went on to say that although discovery rules are intended to provide broad access to information, they do not countenance a wide-ranging search without foundational basis. Id. at *2.

---

[3] This is similar to Plaintiffs' argument here, which is that This Court could not determine sufficient similarity until after Plaintiff receives this across-the-board discovery. However, this argument was rejected in Falcon.

Similarly in this case, Plaintiffs state in their Motion to Compel that Nucor-Yamatos' "objections would foreclose the Court's consideration of such factual issues by refusing to disclose the information necessary to determine which employees are sufficiently similar." This is the argument that lost in Nelson. Plaintiffs only put the "sufficiently similar" issue in dispute without providing any basis in their Motion to Compel to show how the across-the-board discovery they seek involves sufficiently similar employees. Again, this is Plaintiff's burden. Like in <u>Nelson</u>, Plaintiffs are seeking a wide-ranging search without foundational basis. Despite this clear precedent, Plaintiffs' Motion to Compel argues that they should be entitled to discovery of information concerning employees who were not subject to the same supervisors, policies, and working conditions.

**B.    Limitations Based on Separate Departments are Reasonable**

Plaintiffs currently seek documents regarding employment decisions made in all five of the production departments at Nucor Yamato since 1999. This is despite the fact that Plaintiffs only worked in one department! That should be the starting point for this Court's analysis—the only current disagreement is whether Nucor-Yamato must provide documents from the departments in which no Plaintiff has ever worked.

Eighth Circuit case law shows that in the context of a class action, discovery should reasonably be limited to the work unit in which a representative plaintiff sought a position and which was controlled by the same decision makers. In the wake of <u>Falcon</u>, the 8th Cir. has held that a plaintiff alleging disparate treatment is not entitled to company-wide discovery absent a showing of a particular need and relevance for the requested information. <u>Carman v. McDonnel Douglas Corp.</u>, 114 F.3d 790, 792 (8th Cir. 1997). The focus must be on the decision maker. In <u>Carman</u>, that reasonable principle led to limiting discovery to one division; here it requires

limiting discovery to one department. Carman, 114 F.3d at 792. In Carman, because the decision was made locally, Plaintiff was not entitled to discovery regarding other divisions. See also, Scales v. J.C. Bradford & Co., 925 F.2d 901, 907 (6th Cir. 1991).

This limitation has been followed in other circuits as well. In Glenn v. Williams, the Court conducted a review of the case law on the limitation of discovery in Title VII discrimination suits based on employment departments. 209 F.R.D. 279, 281-82 (D.D.C. 2002). The Court stated that discovery in Title VII actions may appropriately be limited to employment units, departments, and sections in which there are employees who are similarly situated to the plaintiff. Id. (citing Earley v. Champion International Corp., 907 F.2d 1077 (11th Cir. 1990) (limiting discovery in Title VII cases to employing unit); James v. Newspaper Agency Corp., 591 F.2d 579 (10th Cir.1979) (limiting discovery in gender discrimination case to plaintiff's department); Haselhorst v. Wal-Mart Stores, Inc., 163 F.R.D. 10 (D. Kan. 1995) (discovery limited to employing unit); Rodger v. Electronic Data Systems, 155 F.R.D. 537 (E.D.N.C. 1994) (appropriate scope of discovery in age discrimination case was relevant operations division); Obiajulu v. City of Rochester, Dep't of Law, 166 F.R.D. 293 (W.D.N.Y. 1996) (limiting discovery to specifically classified employees within the department).

For the production of documents beyond the employing unit or work unit, the plaintiffs must show a more particularized need and relevance. Haselhorst, 163 F.R.D. at 11 Here, Plaintiffs have shown neither. This Court should therefore follow Carmen and the many courts that have recognized the proper limitation of discovery to the work unit involving the challenged decision maker.

**B.     Limitations Based on the Involved Decision makers are Reasonable**

Plaintiffs also seek all documents related to employment decisions in the production departments without regard for the supervisors involved in the decisions. Nucor-Yamato has agreed to provide documents on employment decisions that involve the same decision makers who made decisions involving Plaintiffs. In short, this dispute concerns only whether documents on decisions made by personnel other than those involved in Plaintiffs' decisions must be produced.

Nucor-Yamato's proposed limitation is in line with 8th Circuit case law. This Circuit has held that a plaintiff alleging disparate treatment is not entitled to company-wide discovery absent a showing of a particular need and relevance for the requested information. Carman, 114 F.3d at 792; see also, Scales v. J.C. Bradford & Co., 925 F.2d 901, 907. In Carman, the 8th circuit approved the district court's limitation of discovery to the one division controlled by the relevant decision-maker. 114 F.3d at 792. Specifically, the Court found that when the decision is made locally, discovery is properly limited to the plaintiff's local work unit. Id. at 792 (holding that, because a decision was made locally, plaintiff is not entitled to discovery regarding decision-makers in other divisions); see also, Rojas v. Florida, 285 F.3d 1339, 1343 (11th Cir. 2002) (per curiam).

Again, other circuits have agreed with Nucor-Yamato's proposed limitation. The case history on this issue was discussed in detail in Lott v. Westinghouse Savannah River Co., Inc., 200 F.R.D. 539, 553-54 (D.S.C. 2000). The Court stated:

> In Stastny, the Fourth Circuit found that where, like here, promotion and pay decisions were entrusted to scores of different supervisors and managers, commonality was lacking under Rule 23, FRCP. Other cases have found centralized decisionmaking the pivotal factor. See, e.g., Holsey v. Armour, 743 F.2d 199, 216 (4th Cir. 1984) (to have single class certified for promotion and hiring claims, the decisionmaker must be the same); Jefferson v. Ingersoll, Int'l

*Inc.,* 1999 U.S. Dist. LEXIS 13126, 1999 WL 669229 (N.D. Ill. 1999) (lack of centralized decisionmaking one factor showing absence of commonality and typicality in race discrimination claim challenging hiring, compensation and promotions) (unpublished), *reversed in part on other grounds,* 195 F.3d 894 (7th Cir. 1999); *Hewlett v. Premier Salons Int'l, Inc.,* 185 F.R.D. 211 (D. Md. 1997) (commonality established in race discrimination claim based on evidence of company-wide policy to discriminate against African Americans by hair salon); *Brooks v. Circuit City Stores,* 1996 U.S. Dist. LEXIS 9869, 1996 WL 406684 at 4 (D. Md. 1996) (unpublished) (commonality lacking where subjective determinations of diverse factfinders would have to be examined); *Hopewell v. University of Pittsburgh,* 79 F.R.D. 689, 692-96 (W.D. Pa. 1978) (commonality lacking where employment practices controlled by 300 budget units).

This long line of cases supports Nucor-Yamato's position that decisions made by individuals other than those who made the decisions about which Plaintiffs complain are neither common nor typical of Plaintiffs' claims. Discovery on these decisions is irrelevant because courts in the Eighth Circuit have held that a class will not be certified when there are numerous different decision-makers involved. Additionally, the case law cited formed the basis of Nucor-Yamato's proposal for reasonable discovery limitations in this case.

**B.      Limitations on Statistical Information are Reasonable**

Plaintiffs' Motion seeks all statistical data related to employees at Nucor-Yamato since 1999 with no limitations. On the other hand, Nucor-Yamato has agreed to provide information to allow Plaintiffs to develop a statistical analysis in the departments in which Plaintiffs sought a position. As with the dispute over departmental limitations, the only real disagreement here is whether Nucor-Yamato must produce documents concerning employees and departments that have no link to the purported class representatives.

In support of their request for plant-wide data, Plaintiffs stand silent about the current case law on the use of statistical information in the class action context. Contrary to the position taken by Plaintiffs, Federal Courts recognize that limitations on this type of data are reasonable in the employment law context. For example, in Ardrey, the Fourth Circuit approved a lower

Court's decision in denying a discovery request similar to Plaintiff's. 798 F.2d at 680-681. During discovery, UPS provided information on individuals who had been "promoted, transferred or qualified for various positions" similarly situated to plaintiffs. Id. However, UPS rejected plaintiffs requests for information about: 1) the employment history of all employees who had worked at the Charlotte, North Carolina headquarters of the UPS West Carolina region for the three years prior to the filing of their complaint; 2) all vacancies which occurred in all job titles for the three years prior to the filing of their complaint; 3) the name and race of each person who filled the vacancies; 4) transfer and promotion system policies; and 5) the names, race, and job titles of persons with knowledge of various personnel practices. See id. Plaintiffs further requested "information about the employment history of employees, statistics, and duties, pay grades and minimum qualifications for jobs that were not related to the claims of individual plaintiffs." Id.

As in the current case, plaintiffs in Ardrey filed a motion to compel. Id. at 681. The District Court denied the motion on the ground that the information requested was "hardly germane" to the individual plaintiffs' claims "in view of the statistical data already furnished in respect to the specific jobs they sought." Id. According to the District Court, because UPS "had already provided information about individuals and their claims, UPS was not required to produce the 'comprehensive employment history' requested by Plaintiffs. Id. The court also noted that such information would be "inordinately burdensome" for UPS to prepare. Id.

The Fourth Circuit recognized that "undue restrictions" of discovery in Title VII cases are "frowned upon." Id. at 684. Nonetheless, the Court of Appeals concluded that plaintiffs' argument was "without merit." Id. at 685. The Fourth Circuit found that the discovery permitted by the District Court on the individual plaintiffs' claims in terms of the individuals "similarly

situated" to the individual plaintiffs was sufficient to develop evidence, statistical and otherwise. Id. This type of reasoning was also approved by the 8th Circuit in Carman. 114 F.3d at 792 (company-wide statistics are usually not helpful in establishing pretext in an employment-discrimination case, because those who make employment decisions vary across divisions.) Here, Nucor-Yamato has already agreed to produce more than enough documentation to allow Plaintiffs to conduct a statistical analysis of individuals who bid either for the same position or similar positions, in three different departments since 1999. Plaintiffs fail to acknowledge the large amount of documents Nucor-Yamato has promised to provide and instead seek to convince this Court that completely unbridled discovery is warranted.

**C.    Limitations on the Policies and Procedures to be Produced are Reasonable**

Plaintiffs also seek documentation showing the policies and procedures used in each of the production departments at the facility. Again, Nucor-Yamato has already agreed to provide all such documentation from the department in which Plaintiffs sought positions. This dispute is only over departments in which Plaintiffs never worked nor sought positions.

The materials Nucor-Yamato has agreed to produce are more than reasonable and would permit Plaintiffs to show whether a class exists in the implicated department. To allow them access to the same materials in the other departments would require Nucor-Yamato to compile and produce materials that are not relevant to Plaintiffs' claims or any purported class they seek to represent. Additionally, Nucor-Yamato has already agreed to depositions during April 2005 of all production department managers. Nucor-Yamato has not moved to quash these depositions and will allow Plaintiffs to depose all the managers on issues related to how they conduct promotions in their departments. These depositions will likely be far more informative than any documentation simply because many of the differing promotions procedures in the

individual departments are not reduced to writing. A deposition is the best means of obtaining this departmental information, and Nucor-Yamato has already agreed to allow them. The document dispute seems inconsequential in light of the upcoming depositions of all production department managers. Moreover, in light of <u>Carmen</u>, <u>Ardrey</u>, and like authorities, Nucor-Yamato's offered discovery of all policies and procedures of in the relevant departments is more than sufficient under the precedents.

## CONCLUSION

Plaintiffs base their Motion to Compel on outdated case law and one unpublished Order from this Court in a case that is easily distinguished from this case. Rather than attempting to compromise on the scope of discovery in this case, Plaintiffs have maintained their position that they are entitled to every document at Nucor-Yamato Steel Company relating to every employee and applicant for the last 6 years. No employer can reasonably be expected to produce such a vast array of materials that are irrelevant to the diverse claims of 7 plaintiffs. Nucor-Yamato is eager to provide documents relevant to Plaintiffs' claims and any potential claims of similarly situated employees. It has begun that production and will continue production as soon as it can. However, Plaintiffs should not be permitted access to tens of thousands of documents that have absolutely no relation to their claims. Most importantly, both the United States Supreme Court and the Eighth Circuit have consistently recognized the inappropriateness of unbridled discovery beyond the work unit run by decision makers whose employment decisions are under scrutiny. This Court should do likewise.

RESPECTFULLY SUBMITTED,

Terry E. Schraeder
Texas State Bar Number - 17810200
Federal Identification Number – 1678
Alaniz & Schraeder, L.L.P.
16010 Barker's Point Lane, Suite 500
Houston, Texas 77079
(281) 531-0927
(281) 531-8024 (Facsimile)


D.P. Marshall Jr.
Barrett & Deacon, P.A.
Union Planters Bank Building
300 S. Church Street
PO Box 1700
Jonesboro, Arkansas 72403
(870) 931-1700
(870) 931-1800 (Facsimile)


By: ___*DPMarshall Jr.*___
ATTORNEYS FOR NUCOR-YAMATO
STEEL COMPANY (LIMITED
PARTNERSHIP)

562-205

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this response was served on all counsel of record by U. S. mail on this 1st day of April, 2005, as follows:

Robert L. Wiggins, Jr.
Ann K. Wiggins
Benjamin J. DeGweck
The Kress Building
301 19th Street North
Birmingham, Alabama 35203

Phillip E. Kaplan, AR. Bar No. 68026
Kaplan, Brewer, Maxey & Haralson, P.A.
415 Main Street
Little Rock, Arkansas 72201

David Sanford
2121 K. Street NW
Suite 700
Washington, D.C.  20037

Grant Morris
7 Dupont Circle NW
Washington, D.C.  20036

D.P. Marshall Jr.