IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| CORNELIUS BENNETT, ET AL. | \* |
| | \* |
| Plaintiffs | \* |
| | \* |
| VS. | \* |
| | \*   NO.  3:04CV00291 SWW |
| | \* |
| NUCOR CORPORATION, ET AL. | \* |
| | \* |
| Defendants | \* |
| | \* |

**<u>ORDER</u>**

Six plaintiffs bring this employment discrimination case, a putative class action, against Nucor Corporation, Nucor-Yamato Steel Company, and Nucor Steel-Arkansas ("Nucor"). Plaintiffs are current and former employees of Nucor's Blytheville, Arkansas plant who claim that Nucor discriminated against them because they are black. Specifically, Plaintiffs claim that Nucor prevented them from competing for promotions by way of discriminatory selection, training, and discipline practices and subjected them to a racially hostile work environment.

Several pending motions concerning discovery are ready for decision. Before the Court are (1) Nucor's motion for a protective order (docket entry #95), Plaintiffs' response (docket entry #106), and Nucor's reply (docket entry #111); (2) Plaintiffs' motion to compel (docket entry #104) and Nucor's response (docket entry #112); (3) a motion to quash filed by non-party Dawson Employment Service, Inc., ("Dawson") (docket entry #101), Plaintiff's response (docket entry #109), and Dawson's reply (docket entry #116); and (4) a motion to quash filed by non-party Lexicon, Inc. ("Lexicon") (docket entry #102), Plaintiffs' response (docket entry #110), Lexicon's reply (docket entry #115), and Plaintiff's response (docket entry #118). After careful

consideration, and for the reasons that follow, Nucor's motion for a protective order and Plaintiffs' motion to compel will be granted in part and denied in part and the motions to quash by Dawson and Lexicon will be granted.

## I.

In support of its motion for a protective order, Nucor states that three weeks before the expiration of the May 19, 2006 discovery cut-off date in this case, Plaintiffs served a "barrage of discovery requests calculated to harass and delay this case further." Docket entry #96, at 1. The discovery requests at issue include deposition notices for 56 Nucor employees; a request for personnel records for the period from 1988 through 1999; and a request to inspect and photograph Nucor's Batesville facilities.

### Depositions

*Supervisors and Employees*

Correspondence between the parties' attorneys shows that on April 20, 2006, Plaintiffs informed Nucor, by email, that they planned to depose eight Blytheville plant supervisors the week of May 2, 2006, in Blytheville. *See* docket entry #95, Ex. 6. In response, Nucor informed Plaintiffs that three of the eight supervisors were available for depositions the week of May 2, and Nucor reminded Plaintiffs that time was limited as the parties had already scheduled four depositions for the week of May 2. *See* docket entry #95, Ex. 7. Additionally, Nucor informed Plaintiffs that two of the proposed deponents no longer worked for Nucor. *See id*. Despite Nucor's concern about time limitations, Plaintiffs replied that they wanted to schedule the remaining three depositions for May 4 through 5. *See id.*, Ex. 8.

Nucor responded that depositions were scheduled for each day of the week of May 2 and

that conflicting schedules and pre-planned events made it impossible to schedule additional depositions for that week. Nucor suggested that one of the three unscheduled supervisor depositions take place after May 5, and that Plaintiffs conduct the two remaining depositions upon written questions. *See id.*, Ex. 9.

On April 26, 2006, Plaintiffs sent Nucor deposition notices for 50 witnesses, and on May 1, 2006, Nucor received notices for six additional depositions. *See id.*, Exs. 3, 14, 15. According to the notices, Plaintiffs intended to conduct 56 depositions back-to-back during the period from May 2, 2006 through May 16, 2006.

Nucor asserts that Plaintiffs failed to give reasonable notice of their desire to take 56 depositions during the final 3 weeks of discovery in this case. "A party desiring to take the deposition of any person upon oral examination shall give *reasonable* notice in writing to every other party in the action." Fed. R. Civ. P. 30(b)(emphasis added). Plaintiffs gave Nucor's attorneys 6 days to clear their schedules for a two-week period and prepare for 56 unexpected depositions. The Court agrees that Plaintiffs failed to give Nucor reasonable notice as required under Rule 30(b) with respect to a *portion* of the proposed depositions. The Court finds that Plaintiffs gave Nucor reasonable notice, in writing, of its desire to depose eight supervisors listed in Plaintiffs' April 20 email communication. However, Plaintiffs' April 26 surprise notices failed to give Nucor reasonable notice of depositions for additional Nucor employees. Nucor's motion for a protective order will be granted with respect to these notices.

*CEO, Dan DiMicco*

On April 21, 2006, Plaintiffs served Nucor with a notice for the deposition of Dan DiMicco, Nucor's CEO, to take place on May 11, 2006 in Charlotte, North Carolina. *See id.*,

Ex. 3. Nucor asserts that Plaintiffs' notice is deficient because it came 30 days before the discovery deadline. The Court disagrees and finds that Plaintiffs' notice was timely.

Nucor also asserts that Plaintiffs seek to depose DiMicco purely for the purpose of harassment and that he has no unique or superior knowledge of the claims and issues relevant to this lawsuit. Plaintiffs state that DiMicco served as the plant manager of the Blytheville plant, he was directly involved in events at issue in this lawsuit, and he has personal knowledge of matters that are relevant to the claims and defenses in this case.

Plaintiffs' notice of deposition states that it is in accordance with Federal Rules of Civil Procedure 30(b)(5) and 30(b)(6). Rule 30(b)(6) provides that a party seeking to take the deposition of a corporation may name the corporation as a deponent in a notice of deposition and provide a description of the matters on which an examination is requested. When the deposition of a corporation is noticed in this manner, the corporation has the obligation to select an officer, director, or managing agent to testify on behalf of the corporation. To the extent that Plaintiffs noticed DiMicco for deposition as a corporate representative, they lack the ability to select the deponent who will speak for the Nucor.

However, to the extent that Plaintiffs noticed DiMicco's deposition under Rule 30(b)(1), which allows the deposition of "any person" with information relevant to a claim or defense, Nucor must produce DiMicco for deposition. DiMicco's position as CEO does not exempt him from testifying as to his personal knowledge regarding facts relevant to Plaintiffs' claims.

<u>Request for Production of Documents</u>

On April 14, 2006, 35 days before expiration of the discovery deadline, Plaintiffs served Nucor a third set of interrogatories and requests for production, which includes the following

request:

> Please provide the same information and documents . . . for the period January 1, 1988 to December 8, 1999 that you have previously provided or been requested to provide for the period after December 8, 1999 in prior interrogatories and requests . . . including, but not limited to, each employee's name, race, social security number, job, crew, department and work assignments and dates, bid and application records, qualifications, jobs sought either by hiring or promotions (including transfers), and any other information related to any reasons for selecting or not selecting such persons for the jobs they sought.

Docket entry #104-1, Attach. A.

Nucor objects to the foregoing request, asserting that (1) Nucor has produced all employment records dating back to 1999, and although discovery in this case opened in November 2004, Plaintiffs waited until the last minute to expand the temporal scope of discovery (by 11 years) and seek information that could not possibly be compiled before the close of discovery; (2) Plaintiffs seek information pertaining to promotion decisions made eighteen years ago, involving decision makers who no longer work for Nucor; and (3) Plaintiffs' request seeks information about decisions that are well outside of the statute of limitations for discrimination claims.

Plaintiffs forward three arguments in support of their request for information dating back to 1988. First, they state that they require such data because Nucor's "officials have recently shown that they are relying on pre-1999 discipline, safety, training, experience and other matters that occurred in the pre-1999 time period." Docket entry #104, at 7. The Court agrees that Plaintiffs are entitled to discover information regarding specific reasons that Nucor cites as a basis for its decisions concerning a named plaintiff or a specific putative class member, but the discovery request at issue seeks much more. To require Nucor to produce data spanning an additional 11 years, at this late hour, without a limiting discovery to specific events at issue in

5

this case would be most unreasonable.

Second, Plaintiffs state that pursuant to *Bazemore v. Friday*, 106 S. Ct. 3000 (1986), and *Morgan v. United Postal Service*, 380 F.3d 459 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 1933 (2005), they are entitled to discover evidence of "pre-liability period discrimination" in order to show that Nucor's criteria for hiring and promotion decisions "perpetuate past discrimination into the future." Docket entry #104, at 7-8.

In *Bazemore*, the Supreme Court held that an employer who maintained a facially discriminatory pay structure before Title VII became applicable to public employers could not use that structure to justify post-Title VII pay disparities. *See Bazemore*, 106 S. Ct. at 3006. The Court reasoned: "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII." *Id*.

In *Morgan*, the Eighth Circuit found that the plaintiffs failed to adduce sufficient evidence of a pattern or practice of class-wide discrimination. In particular, the Court found that the plaintiffs' statistical evidence failed to raise a inference of pay discrimination because it failed to take into account past pay and performance factors, which affected current pay levels. *See Morgan*, 380 F.3d at 460-70. The Court noted that unlike the situation in *Bazemore*, where past pay was set according to a facially discriminatory pay structure, the plaintiffs in *Morgan* had no evidence of past pay discrimination and, thus, could not omit past pay from their statistical analyses.

Under *Bazemore* and *Morgan*, it is proper to omit explanatory variables from statistical analyses when those variables are affected by race discrimination. However, the Court disagrees

that this rule supports expanding discovery at the close of discovery, when the parties have submitted their experts' reports, rebuttal reports, and supplemental reports, which include extensive analyses regarding the inclusion or omission of explanatory variables in statistical evidence in this case.

Third, Plaintiffs point out that evidence of pre-liability period racial discrimination can be used as background evidence to prove their hostile environment claims. As previously stated, Plaintiffs are entitled to "pre-liability" discovery with regard to Nucor's proffered reasons for particular hiring or promotion decisions concerning Plaintiffs or specific putative class members. However, a search for background evidence at this stage in the case does not justify compelling Nucor to produce the extensive information sought by Plaintiffs.

<u>Entry Upon Land</u>

Federal Rule of Civil Procedure 34 authorizes a request to permit entry upon land in the possession or control a party for the purpose of inspection, measuring, surveying, photographing, testing, or sampling the property, within the scope of Rule 26(b). On April 26, 2006, Plaintiffs served Nucor a request for entry upon land, which requests that Nucor permit Plaintiffs and Plaintiffs' counsel and expert witnesses to enter the Blytheville plant to inspect, photograph, and observe the facility.

In support of its motion for a protective order, Nucor asserts that (1) the request is untimely because it does not permit Nucor a full 30 days, as provided in Rule 34, to respond to the request; (2) the request fails to describe areas of the plant to be inspected or photographed; and (3) any possible benefits to Plaintiffs from carrying out the inspection are outweighed by Nucor's interests in safety, continuing production, and trade secrets.

Plaintiffs state that evidence regarding the physical layout of the Blytheville plant's production line is relevant to several claims and defenses in this case, including Plaintiffs' allegations regarding work crew segregation. Additionally, Plaintiffs state that when Nucor deposed one of Plaintiffs' expert witnesses, the examiner asked the witness whether he had ever visited a steel mill or the Blytheville facilities.

The Court declines to prohibit Plaintiffs' proposed inspection on the basis that Plaintiffs' request came too late. Although Nucor had less than 30 days to respond to the request, it did indeed respond and suffered no prejudice with respect to the timing of the request. Additionally, Plaintiffs' request adequately describes the item to be inspected: Nucor's Blytheville facility. The parties should attempt to work out arrangements for Plaintiffs' inspection that address Nucor's concerns regarding safety, production schedules, and trade secrets. If, after a good-faith effort, the parties are unable to agree on the details of the inspection, either party may seek Court intervention.

## II.

Plaintiffs move for an order compelling Nucor to provide responses to Plaintiffs' third set of discovery requests, served April 14, 2006.[1] Plaintiffs' Interrogatories and Requests for Production Nos. 1 and 2 state:

> 1. For each occasion since December 7, 1999 that Nucor has had both African-Americans and non-African Americans applying, bidding, or expressing an interest in the same job, posting, or other hiring or promotion opportunity (including transfers), state that reason(s) for selecting the person hired, promoted, or awarded such job opportunity and the reason for not selecting any applicants, bidders, or

---

[1]For reasons stated in Part I of this order, the Court denies Plaintiffs' motion to compel to the extent that Plaintiffs seek unlimited personnel data covering the period from 1988 through 1999.

>persons who were African-American. In answering such interrogatory, please identify the job, posting, bidders, applicants, and other person seeking or considered for each such hiring or promotion opportunity, and the decisionmakers, interviewers or other persons involved in any way in the selection process.
>
>2. Identify and produce all documents (including but not limited to, all computerized or electronic data or information) related to any reason stated as the basis of selecting or not selecting any person covered by, or addressed in, interrogatory #1 immediately above.

Docket entry #104, App. B, at 4-5.

Nucor asserts, and the Court agrees, that the foregoing discovery requests ask Nucor to create a record containing information on virtually every hiring decision made at the Blytheville plant since 1999. Nucor states that it has provided Plaintiffs every employment record and data base about every hiring decision made at the Blytheville plant since 1999. Nucor objects that Plaintiffs' request imposes an unduly burdensome, time-consuming task that should be performed by Plaintiffs' counsel pursuant to Federal Rule of Civil Procedure 33(d).

Rule 33(d) provides an option to produce business records in answer to an interrogatory, stating as follows:

>Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. *A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.*

Fed. R. Civ. P. 33(d)(emphasis added).

Plaintiffs state that Rule 33(d) is inapplicable because Nucor has failed to specify the

9

records from which answers to the interrogatory can be derived. Additionally, they state that they "have never seen any documents that state a reason for a given promotion except in a few isolated instances." Docket entry #104, at 4. In response to Plaintiffs' Interrogatories and Requests for Production Nos. 1 and 2, Nucor states that any documentation that might have played a role in the employment selection decisions has been provided to Plaintiffs. *See* docket entry #104, App. B., at 4. The Court finds that Defendants' response is not sufficiently detailed to allow Plaintiffs to locate documents which contain the reasons for Nucor's selection decisions. Accordingly, Plaintiffs' motion to compel is granted to the extent that Nucor is directed to identify the specific document or group of documents that contain the information sought by Plaintiffs.

Plaintiffs' Interrogatory No. 4 asks Nucor to provide "the same information and documents for all persons working at [Nucor] on a temporary capacity . . . as [Nucor has] provided or been requested to provide for regular or non-temporary applicants or employees . . . ." Docket entry #104, ¶ 4.

Plaintiffs do not explain how information about temporary employees is relevant to a claim or defense joined in this case. They only state that they recently discovered that Nucor employs temporary employees, that temporary employees work side-by-side with regular employees, and that Nucor has selected temporary workers for "regular" jobs sought by Plaintiffs. Given Plaintiffs' claim that Nucor denied them promotions though discriminatory selection, training, and disciplinary practices, information about temporary employees is relevant only with regard to temporary employees that Nucor hired on a permanent basis. In its response to Interrogatory No. 4. Nucor states, in part, as follows:

10

> Defendant has produced over 200,000 pages of documents including every employment document since December 1999 . . . . This documentation includes information regarding any external candidates for jobs, which includes any temporary employees who applied for a job, as well as all application documents and records for any temporary employees who were awarded the jobs during the relevant time period.

Docket entry #104, App. B, at 6. Plaintiffs provide no rational basis for extending discovery regarding temporary employees beyond the information Nucor has already provided. Accordingly, Plaintiffs' motion to compel will be denied with respect to discovery regarding temporary employees.

### III.

Two companies that provide temporary services to Nucor--Dawson Employment Service, Inc., and Lexicon, Inc.–have filed motions requesting that the Court quash Plaintiffs' subpoenas which order them to provide the following data:

> 1. A copy of any electronic personnel or payroll database which contains information regarding employees of Dawson Temporary Services who are or have been employed as temporary workers at [Nucor]. This should include: 1) the temporary employer's name; 2) race; 3) hire date; 4) termination date; 5) position(s) held at [Nucor]; 6) period(s) of service at [Nucor]; 7) the department area of [Nucor] they were assigned and 8) wages paid for work at [Nucor].
>
> 2. Any documents containing information regarding employees of [Dawson/Lexicon] who are or have been employed as temporary workers at [Nucor]. This should include: 1) the temporary employee's name; 2) race; 3) hire date; 4) termination date; 5) position(s) held at [Nucor]; 6) period(s) of service at [Nucor]; 7) the department or area of [Nucor] they were assigned and 8) wages paid for work at [Nucor].
>
> 3. All contracts between [Nucor] and [Dawson/Lexicon] to provide temporary workers.
>
> 4. Copies of EEO-1 reports filed with the federal or state governments from 1995 to 2005.
>
> 5. Copies of any charges of racial discrimination filed with the state and federal

government, including the Equal Employment Opportunity Commission.
Docket entries #101, #102, attachments.

A party's subpoena power is not unlimited. Discovery may not be had on matters irrelevant to the subject matter involved in the pending action, and discovery of relevant information is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information. See *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2,* 197 F.3d 922, 925 (8th Cir. 1999)(affirming district court's decision to quash subpoena served on non-party).

Plaintiffs argue that the subpoenaed information is relevant "because there is testimony in this case that indicates that Nucor-Yamato promoted temporary workers, i.e., hired them as permanent employees, in competition with the named plaintiffs and putative class members in this lawsuit when bidding for promotions." Docket entry #118, at 8. Plaintiffs claim that they are "entitled to investigate the impact of [Dawson and Lexicon's] workforce on the denial of their promotions at Nucor-Yamato." *Id*.

Nucor has stated that it provided Plaintiffs data regarding all application documents and records for any temporary employees who were awarded jobs during the relevant time period. As previously stated, Plaintiffs provide no rational basis for extending discovery regarding temporary employees beyond the information Nucor has already provided. Furthermore, Nucor is the most convenient, and best source for information regarding temporary employees hired by Nucor. Accordingly, the motions to quash will be granted.

**IV.**

IT IS THEREFORE ORDERED that Defendants' motion for a protective order (docket entry #95) and Plaintiffs' motion to compel (docket entry #104) are GRANTED IN PART AND DENIED IN PART as stated in this order.

IT IS FURTHER ORDERED that the motions to quash by Dawson Employment Service, Inc., and Lexicon, Inc. (docket entries #101, 102) are GRANTED.  Lexicon's motion to amend its motion to quash (docket entry #114)  is DENIED AS MOOT.

IT IS SO ORDERED THIS 27TH DAY OF JUNE, 2006.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE