IN FOR THE EASTERN DISTRICT OF ARKANSAS
THE UNITED STATES DISTRICT COURT
JONESBORO DIVISION

| | | |
|---|---|---|
| **CORNELIUS BENNETT**, *et al.*, | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | **CIVIL ACTION NO:** |
| **V.** | § | **3:04 CV-00291 SWW** |
| | § | **JURY DEMAND** |
| | § | |
| **NUCOR CORPORATION**, *et al.*, | § | |
| | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**BRIEF IN SUPPORT OF DEFENDANTS NUCOR-YAMATO STEEL COMPANY
(LIMITED PARTNERSHIP), NUCOR STEEL-ARKANSAS (A DIVISION OF
NUCOR CORPORATION) AND NUCOR CORPORATION'S MOTION FOR
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................ 4

II.  SUMMARY JUDGMENT STANDARD.............................................................. 5

III. PLAINTIFFS' EVIDENCE IS INSUFFICIENT FOR A PATTERN AND PRACTICE
     CLAIM UNDER EIGHTH CIRCUIT PRECEDENT ......................................... 6

     A.   PATTERN AND PRACTICE CLAIMS ARE UNAVAILABLE FOR INDIVIDUAL PLAINTIFFS............. 6

     B.   PLAINTIFFS' STATISTICAL EVIDENCE IS INSUFFICIENT TO SHOW A PATTERN AND
          PRACTICE OF DISCRIMINATION IN PROMOTIONS AND HIRING ................................ 8

     C.   PLAINTIFFS' ANECDOTAL EVIDENCE IS SIMILARLY INSUFFICIENT TO SUPPORT A
          PATTERN AND PRACTICE CLAIM OF DISCRIMINATION IN PROMOTIONS ............................... 11

          1.   Plaintiffs lack adequate evidence to establish a pattern and practice claim in
               promotions ............................................................................................. 11

          2.   The testimony offered by Plaintiffs is too generalized and lacks the specificity
               required for a pattern and practice claim .................................................... 12

          3.   The stray remarks alleged by Plaintiffs are not sufficient to show intent, a
               required element of a pattern and practice claim.......................................... 14

          4.   Plaintiffs' allegations of discriminatory remarks involve non-decisionmakers .......... 15

IV.  PLAINTIFFS' EVIDENCE IS INSUFFICIENT TO SUPPORT A HOSTILE WORK
     ENVIRONMENT CLAIM .............................................................................. 16

     A.   THE NUCOR DEFENDANTS HAVE A VALID *FARAGHER/ELLERTH* DEFENSE
          IN ANY EVENT ............................................................................................. 19

     B.   CLIFTON LEE'S INDIVIDUAL CLAIMS OF A HOSTILE WORK ENVIRONMENT
          LACK MERIT ................................................................................................ 21

     C.   SYLVESTER ROGERS WAS NOT SUBJECTED TO A HOSTILE WORK ENVIRONMENT ................ 23

     D.   RODNEY WASHINGTON WAS NOT SUBJECTED TO A HOSTILE WORK ENVIRONMENT............ 24

     E.   OZZIE GREEN WAS NOT SUBJECTED TO A HOSTILE WORK ENVIRONMENT ......................... 25

V.     PLAINTIFFS LACK ADEQUATE EVIDENCE TO SUPPORT A DISPARATE
       IMPACT CLAIM UNDER EIGHTH CIRCUIT PRECEDENT ......................................... 26

   A.   PLAINTIFFS' BOTTOM-LINE STATISTICS DO NOT SHOW DISPARATE IMPACT ........................ 26

   B.   PLAINTIFFS FAIL TO SHOW THAT A SPECIFIC EMPLOYMENT PRACTICE CAUSED
        A DISPARATE  IMPACT ................................................................................................ 27

   C.   ANALYSIS OF PLAINTIFFS' COMPLAINT SHOWS THAT, RATHER THAN A CASE OF
        DISPARATE IMPACT, PLAINTIFFS' ALLEGATIONS INVOLVE DISPARATE TREATMENT ........... 29

VI.    THE NUCOR DEFENDANTS DESERVE SUMMARY JUDGMENT ON
       PLAINTIFFS' INDIVIDUAL CLAIMS ............................................................... 32

   A.   CORNELIUS BENNETT'S INDIVIDUAL CLAIMS ARE RIPE FOR SUMMARY JUDGMENT ............ 32

      1.   Cornelius Bennett never suffered an adverse employment action ................................ 32

      2.   Cornelius Bennett was treated the same as Caucasian employees ............................... 34

   B.   CLIFTON LEE'S INDIVIDUAL CLAIMS ARE RIPE FOR SUMMARY JUDGMENT ........................ 34

      1.   Clifton Lee never suffered an adverse employment action ........................................... 35

      2.   Lee was treated the same as Caucasian employees ...................................................... 36

      3.   Lee's promotion claims are untenable ........................................................................... 36

      4.   Lee's Title VII claims are barred by the statute of limitations .................................... 37

   C.   OZZIE GREEN'S INDIVIDUAL CLAIMS ARE RIPE FOR SUMMARY JUDGMENT ........................ 38

      1.   The Court should dismiss Ozzie Green's Title VII claims because
           he failed to exhaust his administrative remedies. ........................................................ 38

      2.   Green's promotions claim does not meet the Eighth Circuit standard ......................... 39

   D.   LARRY MCBRIDE'S INDIVIDUAL CLAIMS ARE RIPE FOR SUMMARY JUDGMENT.................... 42

      1.   McBride's Title VII claims for relief are barred because he failed
           to exhaust his administrative remedies ........................................................................ 43

      2.   McBride's promotion claims fail under the Eighth Circuit standard........................... 43

3.   McBride has failed to produce evidence to support his allegations
that he was denied the ability to cross-train because of his race. ................................. 45

E.   SYLVESTER ROGERS'S INDIVIDUAL CLAIMS ARE RIPE FOR SUMMARY JUDGMENT ............... 46

1.   Rogers's promotions claim fails step two of the *McDonnell Douglas*
standard under Eighth Circuit precedent ...................................................................... 47

2.   Rogers fails step four of *McDonnell Douglas* because African-American
employees received two of the positions Rogers was denied ..................................... 49

3.   A poor disciplinary record is a legitimate nondiscriminatory reason
to not promote an employee under Eighth Circuit precedent,
and Rogers cannot demonstrate pretext ...................................................................... 49

F.   RODNEY WASHINGTON'S INDIVIDUAL CLAIMS ARE RIPE FOR SUMMARY JUDGMENT .......... 51

1.   Washington's promotions claim fails the Eighth Circuit standard ............................. 51

2.   Washington's wrongful termination claim fails because he was terminated
based on legitimate, non-discriminatory grounds ........................................................ 53

VII.   CONCLUSION ............................................................................................................. 54

CERTIFICATE OF SERVICE ............................................................................................... 56

# I.    PRELIMINARY STATEMENT

While this case failed Rule 23's requirements for class action status, it has even bigger problems as seven individual lawsuits.  Standing alone, none of the six remaining Plaintiffs can survive summary judgment.  This case is nothing more than Plaintiffs' attempt to pull together a handful of diverse individual claims.  While each of these claims suffers different legal infirmities, the result is the same: each claim fails as a matter of law.

One Plaintiff (Lee) claims he was discriminatorily denied two promotions, yet both times, he voluntarily withdrew his bid before a decision was made.  Two Plaintiffs (Bennett and Lee) claim they were discriminatorily transferred from one part of the mill to another, yet both retained their same positions and Nucor-Yamato actually increased their incomes through the transfer.  Another Plaintiff's (Lee) individual claim is barred by the statute of limitations, while two other Plaintiffs (Green and McBride) never even filed an EEOC Charge, as required by Title VII.  More importantly, all Plaintiffs' broad-based claims of disparate impact, hostile work environment, and disparate treatment are devoid of evidentiary support.

Plaintiffs' pattern and practice claims fail for several reasons under the controlling Eighth Circuit precedent.  Plaintiffs offer this Court only bottom-line statistics, which fail to consider qualifications and eliminate nondiscriminatory variables.  And Plaintiffs offer this Court only stray remarks from non-decisionmakers, instead of solid and specific anecdotes connected to the challenged employment decisions.  Contrary to Eighth Circuit law, Plaintiffs have not established that discrimination was Nucor-Yamato's standard operating procedure.  Additionally, although the Eighth Circuit has yet to rule squarely on the point, other Circuits have uniformly held that pattern and practice claims are not available for individual, non-class plaintiffs.

Likewise, Plaintiffs have not demonstrated that a hostile work environment exists at the mills. The stray remarks they allege are both less severe and less pervasive than remarks the Eighth Circuit has held do not create such an environment. Plaintiffs have failed to show that these remarks affected their work; on the contrary, Plaintiffs allege they all did their jobs adequately.

Plaintiffs' disparate impact claims are empty too. Their bottom-line statistics are insufficient under Supreme Court precedent. Plaintiffs have failed to demonstrate discriminatory impact from any specific policy or practice. And because they are based on alleged intentional discrimination, Plaintiffs' disparate impact claims are really disparate treatment claims—which fail as a matter of law.

This Court has decided against certifying a class. Now, the matter turns to Plaintiffs' individual claims. This Brief first examines the legal framework of Plaintiffs' general disparate impact and treatment claims and then examines each Plaintiff's specific claims. This record reveals that all Plaintiffs' claims fail as a matter of law.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is one of the Court's tools for assuring the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Wormley v. Arkla, Inc.*, 871 F. Supp. 1079, 1081–82 (E.D. Ark. 1994). The Nucor Defendants can satisfy their summary judgment burden by either presenting evidence that negates the existence of a material element of a plaintiff's claim or by showing there is no evidence to support an essential element of a plaintiff's claim. *Celotex*, 477 U.S. at 322–24. To avoid summary judgment, each Plaintiff

must make a sufficient showing on every essential element of his case on which he bears the burden of proof. *Celotex*, 477 U.S. at 323; *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 857 (8th Cir. 2004). Each of the six Plaintiffs in this case fails to meet these legal standards.

### III.  PLAINTIFFS' EVIDENCE IS INSUFFICIENT FOR A PATTERN AND PRACTICE CLAIM UNDER EIGHTH CIRCUIT PRECEDENT

With the Court's denial of class certification, Plaintiffs can no longer bring a pattern and practice claim because it is not an appropriate vehicle for individual plaintiffs. Even if Plaintiffs were able to bring a pattern and practice claim, they have not met their burden of demonstrating a *prima facie* case of a pattern and practice of discrimination in promotions and hiring at Nucor-Yamato. To meet this burden, Plaintiffs must produce strong statistical evidence, coupled with specific anecdotal evidence that shows an employer intended to discriminate against the class. *E.E.O.C. v. Joe's Stone Crab*, 220 F.3d 1263, 1276 (11th Cir. 2000)("[a] plaintiff may establish a pattern or practice claim through a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally"). This proof must do more than state the mere occurrence of isolated or sporadic discriminatory acts. *Int'l. Bhd. Of Teamsters v. U.S.*, 431 U.S. 324, 335-36 (1977). Plaintiffs must show that "discrimination was the company's standard operating procedure—the regular rather than the unusual practice." *E.E.O.C. v. McDonnell Douglas Corp.*, 191 F.3d 948, 951 (8th Cir. 1999); *see also Craik v. Minn. State Univ. Bd.*, 731 F.2d 465, 470 (8th Cir. 1984). Here, because this Court denied certification, Plaintiffs cannot pursue their pattern and practice claims. Moreover, their proof is insufficient to meet the standard for a pattern and practice claim in any event.

### A.  Pattern and practice claims are unavailable for individual plaintiffs

Multiple circuits have held that individual plaintiffs are not permitted to bring pattern and practice claims at all, absent a certified class. *See, e.g., Bacon v. Honda of Am. Mfg., Inc.*, 370

F.3d 565, 575 (6th Cir.2004) (*cert.* denied); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355-56 (5th Cir. 2001); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 761 (4th Cir. 1998) (vacated on other grounds by *Lowery v. Circuit City Stores, Inc.*, 527 U.S. 1031 (1999)); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866-67 (7th Cir. 1985).  This is because of the clear differences between the method of proof of a pattern and practice claim versus an individual disparate treatment claim, as well as the fact that the Supreme Court has never allowed an individual, non-class plaintiff, to pursue a pattern and practice claim.  *E.g., Celestine*, 266 F.3d at 355-56.  Here, this Court should grant summary judgment on Plaintiffs' pattern and practice claims because they no longer represent a class.

Although the Eighth Circuit has yet to rule directly on this point, courts in the Eighth Circuit have adhered to this principle.  In *Elliott v. Color-Box, LLC*, the Northern District of Iowa stated:

> The defendant argues that "pattern or practice" claims are only applicable in class actions, not in individual, disparate treatment cases. The court agrees. We subscribe to the rationale that a pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case. The Supreme Court has never applied the [pattern and practice] method of proof in a private, non-class suit charging employment discrimination. Rather, the Court has noted that there is a 'manifest' and 'crucial' difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination.

No. C03-1042, 2005 WL 174872, *3, (N.D. Iowa, 26 Jan. 2005) (citations and internal quotations omitted).[1]   Because certification was denied, Plaintiffs may no longer claim to represent a class of African-American employees at Nucor-Yamato.  They may only pursue their

---

[1] For a similar case and a more thorough discussion see *Burrell v. Crown Cent. Petroleum, Inc.*, 255 F. Supp.2d 591 (E.D. Tex. 2003).  After denial of certification, the Eastern District of Texas refused to allow Plaintiffs to pursue their pattern and practice claims.

own, individual claims.  Accordingly, this Court should grant summary judgment on Plaintiffs'

pattern and practice claims under *Bacon, Lowery, Celestine, & Babrocky.*

### B. Plaintiffs' statistical evidence is insufficient to show a pattern and practice of discrimination in promotions and hiring

Even if Plaintiffs could still pursue their pattern and practice claims, they have failed to

produce sufficient evidence to prove that discrimination was Nucor-Yamato's standard operating

procedure.  To meet their *prima facie* burden, Plaintiffs must produce statistical evidence that

considers the relevant labor market and raises an inference of a pattern and practice of

discrimination.  *Morgan v. United Parcel Serv. of America, Inc.*, 380 F.3d 459, 465 (8th Cir.

2004).  Plaintiffs' statistics fail the *Morgan* standard.

In *Morgan*, as here, plaintiffs alleged the defendant company discriminated against

African-American employees in promotions.  *Morgan v. United Parcel Serv. of America, Inc.,*

143 F. Supp.2d 1143, 1145 (E.D. Mo. 2000).  The *Morgan* Plaintiffs supported these claims

through statistical evidence. *Id.* at 1148.  But the District Court held that plaintiffs' statistics

failed to control for qualifications, making them insufficient to support a *prima facie* pattern and

practice claim.  *Id.* at 1150, *citing Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 650-51

(1989); *see also, Joe's Stone Crab*, 220 F.3d at 1276 (holding employers liable for statistical

imbalances is *per se* inconsistent with Title VII's plain language and statutory purpose).

The Eighth Circuit affirmed the District Court's conclusion, stating that plaintiffs must

perform an analysis of qualified employees when the issue is promotion.  *Morgan*, 380 F.3d at

464-65. The *Morgan* Court held:

> Plaintiffs presented charts comparing the representation of blacks at the division-manager level to the percentage of all black officials and managers, operatives and laborers, blue collar workers, and the total UPS workforce. The district court properly found that a racial disparity amongst these populations would not give rise to an inference of discrimination. *The proper comparison is between the*

8

*racial composition of the at-issue jobs and the racial composition of the qualified population in the relevant labor market.* Statistics based on an applicant pool containing individuals lacking minimal qualifications for the job would be of little probative value . . . the probative inquiry involves a comparison between the percentage of division managers who are black and the percentage of *qualified* employees who are black in the population from which division managers are chosen. As the district court held, 'plaintiff's reliance on a bottom line racial imbalance in the workforce is insufficient to establish that blacks are less likely to be promoted.'

380 F.3d at 464-65 (emphasis added).[2]

The same deficiencies that the Eighth and the Eleventh Circuits found fatal in *Morgan* and *Joe's Stone Crab* exist here.  Plaintiffs' expert, Dr. Edwin Bradley, did not analyze a relevant labor pool of qualified employees for promotions.  Rather, he conducted a bottom-line statistical comparison of all employees, failing to control for qualifications.[3]  Nucor Defendants' Brief in Opposition to Plaintiffs' Motion for Class Certification, ¶ IX(B)(Dkt. #79).  In its order on class certification, this Court held:

Classwide disparate treatment is usually proved by using statistics, but to be legally sufficient these statistics must show a disparity of treatment, eliminate the most common nondiscriminatory explanations of the disparity, and thus permit the inference that, absent other explanation, the disparity more likely than not resulted from illegal discrimination

---

[2] For similar holdings, *see Cooper v. Southern Co.*, 390 F.3d 695, 726 (11th Cir. 2004) (the Eleventh Circuit noted that the plaintiffs' statistical evidence "failed to effectively measure job-related skills, education, experience, and job performance, using only broad, imprecise measurements as proxies for work experience." These failures rendered plaintiffs' statistical evidence "insufficient to support a conclusion that intentional discrimination was the defendants' standard operating procedure"); *Gonzalez v. City of New York*, 354 F. Supp.2d 327, 346-47 (S.D.N.Y. 2005) (finding Plaintiffs statistics inadequate to support a discriminatory promotion pattern or practice claim because they did not analyze a qualified labor pool); *Janey v. N. Hess Sons, Inc.*, 268 F. Supp.2d 616, 626 (D. Md. 2003) (bottom-line disparity insufficient to survive summary judgment on a pattern and practice claim).

[3] Dr. Bradley asserts that he "controlled for posting" in his analysis, which considers "every aspect to where that job is located." (Excerpt from the Deposition from Edwin Bradley, Ex. 44 at pg. 12, ln. 10-19, complete Deposition can be found at Ex. 40 to the Brief in Opposition to Class Certificaiton).  However, "controlling for posting" only means nothing more than "looking within the applicant pool." (Excerpt from the Deposition of Finis Welch, Ex. 45 at pg. 254, ln. 8-13, complete Deposition can be found at Ex. 41 to the Brief in Opposition to Class Certificaiton).  In other words, by "controlling for posting", Dr. Bradley did nothing more than consider only those applicants who bid on a given position, not the relevant market of qualified individuals.  Bradley's analysis also does not account for any individual characteristics of the applicants.  (Excerpt from the Supplemental Expert Report of Dr. Finis Welch, Ex. 46 at pg. 2, n.1, complete Supplemental Report can be found at Ex. 32 to the Brief in Opposition to Class Certificaiti; *see also* Excerpt from the Deposition from Edwin Bradley, Ex. 47 at pg. 13, ln. 2-14, complete Deposition can be found at Ex. 40 to the Brief in Opposition to Class Certificaiton).

<u>Order on Class Certification, Dkt. #123, p. 27</u> (citing *Hervey v. City of Little Rock*, 787 F.2d 1223, 1228-29 (8th Cir. 1986) (internal quotations omitted)).  This Court ruled correctly, and that holding undermines Plaintiffs' attempt to rest their pattern and practice claims on legally insufficient statistics.

By not controlling for any minimum qualifications, Dr. Bradley assumed all employees have identical qualifications for any given position.  Thus, according to Dr. Bradley's analysis, an entry level employee has the same probability of being selected for a promotion to supervisor as a more senior employee with more experience.[4]  Also, under Dr. Bradley's view, an employee lacking the relevant degree or experience, or both, is just as likely to receive an engineering position as someone who has an engineering background.[5]

Bottom-line disparities do not raise an inference of a pattern and practice of discrimination under *Morgan*.[6]  When qualifications are accounted for, however, there are no statistically significant disparities between Caucasians and African-Americans at Nucor-Yamato.[7]  Accordingly, Plaintiffs' statistical showing does not meet their burden to prove a pattern and practice of discrimination, and their claim is ripe for summary judgment.

---

[4] Excerpt from the Deposition from Edwin Bradley, Ex. 48 at pg. 83 ln. 8-13, complete Deposition can be found at Ex. 40 to the Brief in Opposition to Class Certificaiton.

[5] The emptiness of this position is demonstrated by this exchange in Dr. Bradley's deposition:  Question: Let's say we need to hire a schoolteacher.  And the applicants, some of them have college degrees and some of them do not.  Under your testimony...you would only consider education if as many African-Americans as non-African-Americans had college education? Answer: Actually, that's not true.  I would consider the variable that was required - - well, no, let's put it this way: You're right I would not consider that variable." Excerpt from the Deposition of Edwin Bradley, Ex. 49 at pg. 30, ln. 1-pg. 32, ln. 2, complete Deposition can be found at Ex. 40 to the Brief in Opposition to Class Certification.

[6] Dr. Bradley's failure to control for qualifications required by the job, or any variables other than race, has been his consistent practice, and has drawn criticism and rejection of his opinions in several courts.  *Yapp v. Union Pac. R.R. Co.*, 229 F.R.D. 608, 620 (E.D. Mo. 2005) (criticizing Dr. Bradley's analysis by stating there was no "distinction between departments, [and no] inquiry into minimal qualifications..."); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 260-62 (4th Cir. 2005) (upholding the District Court's exclusion of Dr. Bradley's opinion because he did not take into account any differences in plaintiffs' job titles or position); *Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 654-58 (N.D. Ga. 2003) (criticizing Dr. Bradley's analysis because it failed to account for job preference or experience of the employee or applicant, available job openings, and labor-market availability).

[7] Nucor Defendants' Brief in Opposition to Plaintiffs' Motion for Class Certification, ¶ IX(A)(Docket No.79).

### C.  Plaintiffs' anecdotal evidence is similarly insufficient to support a pattern and practice claim of discrimination in promotions

Without strong evidence of statistically significant disparities, Plaintiffs must depend on anecdotal evidence to support their pattern and practice claim.  Thus, their anecdotal evidence must be substantial.  Like their statistics, however, Plaintiffs' anecdotal evidence is lacking.  Plaintiffs depend primarily on the allegations contained in their complaint and their declarations attached to their Certification Brief.  Setting aside the self-serving nature of those allegations, and assuming *arguendo* they are true, those allegations are still insufficient to meet Plaintiffs' burden of proving a *prima facie* case of a pattern and practice of discrimination for four reasons.  First, the allegations are limited in scope.  Second, the allegations are too generalized to survive summary judgment.  Third, the allegations do not show the requisite intent required for a pattern and practice claim.  Finally, Plaintiffs' bare allegations about specific instances primarily involve non-decisionmakers. Therefore, the anecdotal evidence cannot support a pattern and practice of discrimination in hiring or promotions.[8]

### 1.  Plaintiffs lack adequate evidence to establish a pattern and practice claim in promotions

Plaintiffs' anecdotal evidence fails to show a pattern and practice of discrimination in promotions because, at most, they allege isolated instances across seven years.  Isolated instances spread over many years do not rise to the degree of pervasiveness required to prove

---

[8] Plaintiffs' anecdotal evidence of a pattern and practice of discrimination in *hiring* at Nucor-Yamato is non-existent.  While Plaintiffs have produced eight declarations in this case alleging discrimination at Nucor-Yamato, none of these declarations allege specific discrimination in hiring.  None of the class representatives in this case allege that they were discriminated against in the hiring process—in fact all of the representatives are either former or current employees.  Of the declarations submitted by Plaintiffs, none come from a rejected applicant alleging that he, or she, was discriminated in hiring.  Because there is insufficient statistical evidence as to Plaintiffs hiring claim, and there is no real anecdotal evidence of discrimination in hiring, Plaintiffs do not meet their burden on a pattern and practice hiring claim.

discrimination was Defendants' standard operating procedure.  The foundation of Plaintiffs' allegations consists of eight declarations—six of which are from Named Plaintiffs—which allege incidents of discrimination at Nucor-Yamato.  But eight declarations, out of more than 150 current employees, and hundreds more past employees available to testify, hardly show a pattern and practice of discrimination.  *Cooper v. Southern Co.,* 205 F.R.D. 596, 619 (N.D. Ga. 2001) (holding that 111 affidavits out of more than 12,000 employees was insufficient to establish a pattern and practice claim).  Though Plaintiffs ask this Court to focus on their own declarations, the majority of affidavits actually produced in this case state that there are no problems with Nucor-Yamato's promotion decisions.  Defendants have produced statements from ninety-four African-American employees stating they had not been unfairly[9] denied a promotion.  This evidence makes it impossible to conclude that discrimination in promotions is so wide-spread that it is Nucor-Yamato's standard operating procedure—the routine rather than the unusual practice.  *McDonnell Douglas Corp.*, 191 F.3d at 951.

### 2.     The testimony offered by Plaintiffs is too generalized and lacks the specificity required for a pattern and practice claim

Plaintiffs' allegations also fail to satisfy *Morgan* because they contain only generalizations and legal conclusions, not specific facts.[10]  These general allegations are insufficient to prove a claim of pattern and practice discrimination, which requires specific

---

[9] African-American employees were asked if they were unfairly denied a promotion.  The 22 employees, who thought that they should've got the promotion instead of the other employee, do not necessarily believe that the failure to receive the promotion was due to discrimination.  Many of these employees, although they thought they should have received the promotion in question, were unsure if their denials were based upon factors other than race.  Affidavits of African-American Employees taken in 2003, Ex. 29 to the Brief in Opposition to Class Certification.

[10] Another problem with Plaintiffs' assertions is that they are so general that it is difficult for Defendants to adequately investigate them.  Plaintiffs continually allege that they have heard discriminatory comments, seen confederate flags, are aware of a discriminatory reputation, or that it is their belief that African-Americans are disciplined more harshly than Caucasian employees.  Yet, with rare exceptions, Plaintiffs do not state who said the words, in what context the words were spoken, who wore the flags, or who spoke of the reputation, or what basis for the reputation existed.

underlying facts to raise an inference of discrimination.  *Robinson v. Sears, Roebuck and Co.*, 111 F. Supp.2d 1101, 1121 (E.D. Ark. 2000); *Bacon*, 370 F.3d at 575.

Plaintiffs' Third Amended Complaint alleges relatively few specific instances of discrimination.  Although the declarations attached to Plaintiffs' Certification Brief are more detailed, they are still general and contain mostly legal conclusions.  As an example, Plaintiffs repeatedly allege that Nucor-Yamato has a pattern and practice of discriminating in regards to discipline.  Plaintiffs' declarations and complaint however are largely devoid of specific instances of discriminatory discipline.  For instance, in each of the Named Plaintiffs' declarations the following sentences appear:

> It has been my experience that persons of my race are watched closer and disciplined quicker and more often than white employees.  This has caused me to be given discipline that I do not believe I would have been given if I were a different race.[11]

But only two Plaintiffs actually allege a specific incident where they supposedly experienced unfair discipline.[12]  Those allegations have no other evidentiary support in the record, as neither of these incidents is reflected in Bennett's or Lee's personnel file.  Two unsupported allegations from six Plaintiffs out of more than one hundred fifty current African-American employees, and numerous past employees, are not enough to support a claim that discrimination in discipline was Nucor-Yamato's standard operating procedure.  Accordingly, Plaintiffs' anecdotal evidence cannot support a claim of pattern and practice discrimination.

---

[11] Declaration of Larry McBride, Ex. 50 at ¶8(e); Declaration of Clifton Lee, Ex. 51 at ¶15; Declaration of Ozzie Green, Ex. 52 at ¶17; Declaration of Rodney Washington, Ex 53 at ¶10; Declaration of Cornelius Bennett, Ex. 54 at ¶10; Declaration of Sylvester Rogers, Ex. 55 at ¶11.
[12] Declaration of Clifton Lee, Ex. 51 at ¶16; Declaration of Cornelius Bennett, Ex. 54 at ¶10.

### 3.   The stray remarks alleged by Plaintiffs are not sufficient to show intent, a required element of a pattern and practice claim

Plaintiffs' shotgun allegations of isolated discriminatory remarks made in the workplace over the course of seven years are insufficient to meet their burden for a pattern and practice claim.  Pattern and practice claims require evidence of intentional discrimination.  *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2nd Cir. 2001) (the inquiry in a pattern-or-practice claim focuses on determining the existence of discriminatory intent); *Joe's Stone Crab*, 220 F.3d at 1273 (both pattern and practice and disparate treatment claims require proof of discriminatory intent; disparate impact claims do not);  *Mozee v. American Commercial Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991) (statistical and anecdotal evidence must show the employer's intent to treat the protected class unequally).  The statistical and anecdotal evidence must be sufficiently compelling for this Court to infer that intentional discrimination was Nucor-Yamato's standard operating procedure.  Plaintiffs' allegations of stray remarks do not show the level of intent required for a valid pattern and practice claim.

Plaintiffs continually point to their own allegations of discriminatory remarks and discriminatory items in the workplace, such as confederate flags or graffiti.  But those stray remarks and isolated incidents—if true—do not meet the Eighth Circuit's standard for intentional discrimination.  The Eighth Circuit has held that "stray remarks" with no connection to an employment decision cannot create a fact issue regarding discriminatory intent and are insufficient to defeat summary judgment.  *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 512-13 (8th Cir. 1995).  Other circuits agree.  *E.g.*, *Curry v. Menard, Inc.*, 270 F.3d 473, 477 (7th Cir. 2001) (inappropriate remarks not directed at employee are not direct evidence of discrimination); *Indurante v. Local 705, Intern. Bhd. of Teamsters*, *AFL-CIO*, 160 F.3d 364, 367 (7th Cir. 1998) (stray remarks not related to the disputed employment action are not direct

evidence of discriminatory intent).   Thus, Plaintiffs' stray-remark allegations cannot prove that Nucor-Yamato intended to discriminate against African-American employees in general, and they certainly do not show that such alleged intentional discrimination was Nucor-Yamato's standard operating procedure.   Therefore, this Court should grant summary judgment to the Defendants based on Plaintiffs' evidentiary failure on the intent element of their pattern and practice claim.

### 4.   Plaintiffs' allegations of discriminatory remarks involve non-decisionmakers

Following settled Supreme Court precedent, the Eighth Circuit has held that "[d]irect evidence of employment discrimination must be distinguished from stray remarks in the workplace, statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process." *Quick v. Wal-Mart Stores, Inc.*, 441 F.3d 606, 609 (8th Cir. 2006); *see also, Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) ("Thus, stray remarks in the workplace, while perhaps probative of sexual harassment cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard.").   Addressing discriminatory remarks made by fellow employees, in *Hitt v. Harsco Corporation,* the Eighth Circuit held that such comments are not persuasive evidence of discriminatory motive when the remarks are made by persons other than a decisionmaker. 356 F.3d 920, 925 (8th Cir. 2004); *see also, Girten v. McRentals, Inc.*, 337 F.3d 979, 983 (8th Cir. 2003).

Plaintiffs have failed to present evidence of discriminatory remarks made by the actual decisionmakers for the promotions which they complain about in this Court.   Accordingly,

Plaintiffs' limited anecdotal evidence of stray remarks cannot support the material elements of their *prima facie* pattern and practice claim as a matter of law.

Applying the same principle to Plaintiffs' allegations of derogatory graffiti in the bathrooms, and confederate do-rags at Nucor-Yamato, Plaintiffs' evidence cannot withstand summary judgment.   Plaintiffs cannot connect any of this alleged conduct to actual decisionmakers at Nucor-Yamato.   Plaintiffs never allege that any department manager ever uttered discriminatory language or wore any confederate flag.  Plaintiffs' showing of a few stray remarks and allegedly discriminatory incidents by non-decisionmakers does not meet the Eighth Circuit standard set out in *Quick* and *Clearwater*.

\* \* \*

Because Plaintiffs' can no longer bring a pattern and practice claim now that class certification has been denied, because their bottom-line statistical calculations failed to take qualifications into account as required by Eighth Circuit precedent, and because Plaintiffs' limited anecdotal evidence alleges generalized, stray remarks from non-decisionmakers, Plaintiffs cannot meet their burden for a pattern and practice claim under Eighth Circuit precedent.  Therefore, this Court should grant Nucor-Yamato's Motion for Summary Judgment on Plaintiffs' pattern and practice claims.

## IV.     PLAINTIFFS' EVIDENCE IS INSUFFICIENT TO SUPPORT A HOSTILE WORK ENVIRONMENT CLAIM

Plaintiffs fail to meet their burden on their hostile work environment claim.  Plaintiffs fail to meet this burden in both their general allegations that all African-American employees suffered from a hostile work environment and in the individual allegations of Clifton Lee,

Sylvester Rogers, Ozzie Green, and Rodney Washington.[13]   To establish a *prima facie* case of Title VII race-based hostile work environment, each Plaintiff must show that: (1) he or she is a member of a protected group; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of his or her employment. *Diaz v. Swift-Eckrich, Inc.*, 318 F.3d 796, 800 (8th Cir. 2003).  Harassment which is severe and pervasive is deemed to affect a term, condition, or privilege of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788-89 (1998).  Harassment only affects a condition of employment when the conduct is as severe "as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998).   A hostile work environment is one where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003) (internal quotations omitted). To decide whether a work environment is objectively offensive, that is, one which a reasonable person would find hostile or abusive, this Court must examine all the circumstances, "including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance."  *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004).

---

[13] In Plaintiffs' Third Amended Complaint, only Clifton Lee, Sylvester Rogers, Ozzie Green, and Rodney Washington make specific factual allegations that could conceivably constitute a hostile work environment.  Thus, their allegations will be discussed separately *infra*, ¶ (IV(A-C).  On the other hand, Plaintiffs Cornelius Bennett and Larry McBride make no specific factual allegations that would come under a hostile work environment framework.  Rather, they make the general allegation that they were required to "endure racial hostilities directed at himself and members of his race." Plaintiffs' Third Amended Complaint, ¶¶ 28, 29, 46, & 47.  Thus, their general hostile work environment allegations will be dealt with together.  *Supra*, ¶ IV

First, as to the derogatory language and graffiti alleged by Plaintiffs, the Eighth Circuit has held that racial slurs alone do not render a work environment hostile as a matter of law. *Loffredo Gardens*, 378 F.3d at 759-60.  There, the Eighth Circuit stated:

> Under our case law, the racial slurs did not render the work environment objectively hostile. For example, we held six instances of racially derogatory language from managers and coworkers over the course of a year and a half, together with burning cross graffiti, did not render the workplace objectively hostile. Although managers and coworkers said, "that damn nigger," "damn black," "nigger s* *t, radio," "nigger-rigging," and "f* * *ing nigger," we pointed out two of the comments were not made to the plaintiff, two were not referring directly to him, and another was made in the heat of an altercation involving threats by the plaintiff.

*Id.* (citations omitted).   Plaintiffs' general allegations of discrimination in this case involve conduct substantially less severe than the harassment experienced by the plaintiff in *Loffredo Gardens*.   More importantly, none of the Plaintiffs allege harassment as pervasive as the harassment discussed in *Loffredo Gardens*, where an African-American employee suffered six specific instances within a year and a half.   And *Loffredo Gardens* Court held the conduct alleged there did not rise to the level required to show a hostile work environment.

Second, Plaintiffs have never shown that any of the alleged harassment by Nucor-Yamato employees was ever severe or pervasive enough to affect a term or condition of employment.  In fact, Plaintiffs allege the opposite.   The only reference to job performance in Plaintiffs' complaint states that all Plaintiffs performed adequately in their jobs.[14]

In a similar case this year, the Eastern District of Missouri rejected a hostile work environment claim because the alleged harassment did not affect a term or condition of employment, or the employee's work performance.   In *Katoch v. Mediq/PRN Life Support Services, Inc.*, the plaintiff established that he was a member of a protected class, subjected to unwelcome harassment, and the harassment was based on a protected characteristic.  No. 4:04-

---

[14] Plaintiffs' Third Amended Complaint, ¶¶ 28, 31, 35, 39, 43, 46.

CV-938, 2006 WL 516843, *13 (E.D. Mo., 2 March 2006).    But the Court rejected his harassment claim.  *Id.*  Although the Court acknowledged that the alleged remarks occurred on a regular basis, and were repulsive and in very poor taste, the Court found that the comments did not unreasonably interfere with Katoch's work performance.  *Id.*  The Court noted that there were no allegations that Katoch was unable to do his job or that his work performance was negatively affected by these comments.  *Id.*  The Eighth Circuit has also held that even frequent remarks are not actionable if they do not affect a term or condition of employment.  *Duncan v. General Motors Corp.*, 300 F.3d 928, 934-35 (8th Cir. 2002).

Here, as in *Katoch*, Plaintiffs have made no showing that the alleged harassment ever interfered with their work performance, or affected a term or condition of employment.   In addition, although Plaintiffs make many generalized allegations that during a six-year period they sporadically heard racially derogatory terms and saw confederate flags in the workplace, this conduct hardly approaches the level of severity and pervasiveness required by *Loffredo Gardens, Katoch,* and *Duncan*.   Accordingly, this Court should reject Plaintiffs' hostile work environment claims as a matter of law.

### A.  The Nucor Defendants have a valid *Faragher/Ellerth* Defense in any event

Even if Plaintiffs could meet their burden for hostile work environment claims, Defendants would be entitled to summary judgment under the *Faragher/Ellerth* standard.  Under this standard, summary judgment is appropriate in a hostile work environment claim if the employer can prove:  "(1) that it exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm

otherwise." *Okruhlik v. Univ. of Arkansas*, 395 F.3d 872, 881 (8th Cir. 2005) (*citing Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004)).

The depositions in this case revealed that Plaintiffs rarely reported any of the alleged harassment at the time it occurred. This failure to report deprived Defendants of the ability to investigate and correct any inappropriate behavior. And, in the rare instances when Plaintiffs did report any alleged inappropriate behavior, Defendants acted immediately to investigate and correct it. Plaintiffs' hostile work environment claims fail in any event in the face of this clear affirmative defense created by the Supreme Court to protect employers such as Defendants who act affirmatively to prevent discrimination.

Nucor-Yamato has a clear policy against racial harassment, as both testimony and documentary evidence proved.[15] Based on this clear policy, Nucor-Yamato took corrective actions in the rare instances where Plaintiffs reported any alleged discriminatory behavior. For example, Plaintiffs complain that there was a hostile work environment because Nucor-Yamato inadvertently sold bandanas with the image of the confederate flag in their company store. Plaintiffs' Brief in Support of Class of Class Certification, Dkt. #73, pg. 15-17. But as soon as management received a report that these bandanas were being sold, Defendant immediately removed the bandanas from the store.[16] Most importantly, this was a one-time incident that was immediately corrected.[17] As noted earlier, the bandanas in question were received as part of an

---

[15] Excerpt from the Deposition of Joe Stratman, Ex. 56 at pg. 198, ln. 19-pg. 203, ln. 2, complete Deposition can be found at Ex. 42 to the Brief in Opposition to Class Certification; *see also,* Excerpt from the Deposition of Rick Ramsdell, Ex. 57 at pg. 341, ln. 14-pg. 342, ln. 12, complete Deposition can be found at Ex. 2 to the Brief in Opposition to Class Certification; *see also,* Nucor-Yamato No-Harassment Policy, Ex. 27.

[16] Excerpt from the Deposition of Bernice Gray, Ex. 58 pg. 93, ln. 6-14, complete Deposition can be found at Ex. 36 to the Brief in Opposition to Class Certification; *see also,* Excerpt from the Deposition of Rick Ramsdell, Ex. 59 pg. 333, ln. 2-7, complete Deposition can be found at Ex. 2 to the Brief in Opposition to Class Certification.

[17] Excerpt from the Deposition of Bernice Gray, Ex58 pg. 93, ln. 6-14, complete Deposition can be found at Ex. 36 to the Brief in Opposition to Class Certification; *see also,* Excerpt from the Deposition of Ozzie Green, Ex. 60 pg. 96, ln. 7—pg. 97, ln. 4, complete Deposition can be found at Ex. 12 to the Brief in Opposition to Class Certification (admitting he was satisfied with Nucor's response to his complaints regarding confederate flags).

assortment of bandanas without management's knowledge.  Even if the sale of these bandanas could rise to the severe and pervasive level required for hostile work environment claims, Defendants' prompt actions in removing them would eliminate the hostile work environment claim under the Supreme Court precedent.

Plaintiffs' only other specific claim of a plant-wide hostile work environment concerns graffiti, which was eliminated by the Company immediately following the few instances where it was discovered.  Plaintiffs themselves admit that Defendants corrected the problem as soon as the complaints were made—by erasing the graffiti.[18]  Moreover, many of the Plaintiffs admit that they never even complained about the graffiti in the bathrooms at Nucor-Yamato, not withstanding Nucor-Yamato's corrective efforts.[19]  Accordingly, because Nucor-Yamato took reasonable care to prevent and correct these problems, and because Plaintiffs largely failed to take advantage of the corrective opportunities provided by Nucor-Yamato, this Court should grant summary judgment on Plaintiffs' hostile work environment claims under *Okruhlik, Pennsylvania State Police,* and *Faragher/Ellerth*.

## B.  Clifton Lee's individual claims of a hostile work environment lack merit

While Lee makes the same broad claims of intentional discrimination that were addressed earlier in this Brief, he also makes one specific allegation that is contradicted by his own testimony.  Lee's Complaint claims that he was approached by two Caucasian employees with burning rags.[20]  In his deposition, Lee testified that the alleged incident took place in February of

---

[18] Excerpt from the Deposition of Rodney Washington, Ex. 61 pg. 198, ln. 3-20, complete Deposition can be found at Ex. 11 to the Brief in Opposition to Class Certification; *see also,* Excerpt from the Deposition of Clifton Lee, Ex. 62 pg. 84, ln. 9-19, complete Deposition can be found at Ex. 14 to the Brief in Opposition to Class Certification.
[19] Excerpt from the Deposition of Ozzie Green, Ex. 63 pg. 89, ln. 3-7, pg. 105, ln. 22-23, complete Deposition can be found at Ex. 12 to the Brief in Opposition to Class Certification; *see also,* Excerpt from the Deposition of Rodney Washington, Ex. 64 pg. 199, ln. 2-14, complete Deposition can be found at Ex. 11 to the Brief in Opposition to Class Certification; *see also,* Excerpt from the Deposition of Clifton Lee, Ex. 65 pg. 83, ln. 16—pg. 84, ln. 1, complete Deposition can be found at Ex. 14 to the Brief in Opposition to Class Certification.
[20] Plaintiffs' Third Amended Complaint, ¶ 36.

1992.[21]  Lee cannot identify any other witnesses or offer any evidence that would substantiate his claim this incident occurred.  Assuming the incident actually took place, it is undisputed it would have occurred more than seven years before the class period proposed by Plaintiffs in this case (from December 9, 1999 to the present) and well outside the limitations period for an individual claim.[22]

Lastly, Lee's one specific claim of harassment cannot meet the standard established by the Eighth Circuit.  To establish a Title VII race-based hostile work environment claim, Lee must show that: (1) he is a member of a protected group; (2) he was subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of his employment. *Diaz,* 318 F.3d at 800.  Lee cannot meet requirements 2-4 of *Diaz.*  As to the second step, Lee's own testimony revealed that the individuals he named could not possibly have committed the alleged action because they had been terminated a year earlier, casting doubt upon whether he actually was subjected to harassment.  Lee similarly fails the third step of *Diaz* because he offers no proof that burning rags were actually thrust at him, much less that this had some racial significance.  Finally, Lee fails the fourth step of *Diaz* because the alleged one-time incident occurred fourteen years ago, and certainly never affected Lee's employment.  Only harassment which is severe and pervasive is deemed to affect a term, condition, or privilege of employment. *Faragher*, 524 U.S. at 787-88.  The unverified one-time incident alleged by Lee certainly was not severe and pervasive.  Because Lee cannot meet 3 out of the 4 requirements of *Diaz*, he cannot prove a *prima facie* case of hostile work environment.

---

[21] Excerpt from the Deposition of Clifton Lee, Ex. 66 at pg. 382, ln. 22 – pg. 383, ln. 4, complete Deposition can be found at Ex. 14 to the Brief in Opposition to Class Certification..
[22] Deposition of Frankie Griggs, Ex. 67 at p. 289, ln. 9 – p. 290, ln. 9.

Lee's individual claims are ripe for summary judgment.   He cannot prove a case of discriminatory transfer because the transfer actually benefited him.   He cannot prove a case of discriminatory denial of promotions, because he voluntarily withdrew his bids for the only two promotions at issue.   His individual claims are barred by the statute of limitations.   And his one alleged incidence of harassment, as a matter of law, does not rise to the level of a hostile work environment.   For all of these reasons, Lee's claims cannot withstand summary judgment.

### C.  Sylvester Rogers was not subjected to a hostile work environment

Rogers claims that the work environment at Nucor-Yamato was hostile due to racist comments he allegedly heard at the mill.   Specifically, he alleges that a supervisor hung a chicken near his work station and that "the incident left Rogers very shaken and with the distinct impression that his supervisor was telling him he could be hung.[23]   Rogers's recitation does not reveal the true nature of the incident.   A newly appointed supervisor (Durell Warren) decided that, as a motivational tool, he would offer the "chicken award" for the first person who "goofs off" on their work shift.[24]     Warren explained this to the work crew before the shift began.[25] Durrell Warren then hung the chicken—by the foot—from the north end of the I-bed, quite some distance from Sylvester Rogers's workspace.[26]   Warren admits Rogers was disturbed by the incident—because a hanging chicken has some type of voodoo significance—which Warren was unaware of at the time.[27]   When Warren saw that the hanging chicken disturbed Rogers, he immediately took the chicken down.[28]   Rogers's reaction to a benign event cannot be the basis of a hostile work environment claim.

[23] Plaintiffs' Third Amended Complaint, ¶ 41.
[24] Deposition of Durell Warren, Ex. 68 pg. 95, ln. 1 through pg. 96, ln. 3.
[25] Deposition of Durell Warren, Ex. 68 pg. 95, ln. 1 through 7.
[26] *Id.* at ln. 11 through 14.
[27] *Id.* at ln. 15 through pg. 97, ln. 2.
[28] *Id.* at pg. 97, ln 2 through 5.

Rogers's other allegations also fall below the Eighth Circuit standard. For example, Rogers alleges he has seen confederate flags at Nucor-Yamato, but admits that after complaints were made, managers at Nucor-Yamato disciplined employees who wore any article of clothing which depicted that flag.[29] Rogers also alleges that he has been subjected to racial slurs and racially derogatory graffiti and conduct.[30] But again, the Eighth Circuit has held that racial slurs alone do not render a work environment hostile as a matter of law. *Loffredo Gardens*, 378 F.3d at 759-60.

Rogers's allegations are less severe than those facts the Eighth Circuit held were legally insufficient to support a hostile work environment claim in *Loffredo Gardens*. This is especially true given the fact that the *Loffredo Gardens* facts happened during a year-and-a-half period, whereas Rogers alleges the acts here occurred during a period of six years. Also, like in *Katoch*, Rogers has also never alleged that any of the alleged harassment ever affected a term or condition of his employment. In fact, Rogers alleges that he has performed his duties and responsibilities in a satisfactory manner.[31] Defendants, therefore, are entitled to summary judgment on Rogers's hostile work environment claim.

### D. Rodney Washington was not subjected to a hostile work environment

Similar to the other Plaintiffs, Washington's allegation of only a single incident of harassment does not meet the Eighth Circuit's standard for a *prima facie* case. Washington makes the same generic claims of a hostile work environment that are made by each of the Plaintiffs. Those allegations have already been addressed earlier in this Brief. Washington's only specific allegation concerns an incident where he was told by a Caucasian employee that

---

[29] Excerpt from the Deposition of Sylvester Rogers, Ex. 69 at p. 238, ln. 17 – p.239, ln. 19, complete Deposition can be found at Ex. 15 to the Brief in Opposition to Class Certification.
[30] *Id.* at p. 240.
[31] Plaintiffs' Third Amended Complaint, ¶ 39.

another Caucasian employee had used the term "working class nigger."[32]   Washington's only specific evidence of racial harassment was one alleged slur that he did not personally hear and which was not even directed at him.   Even if Washington had actually heard the slur, this was a one-time event that cannot meet the Eighth Circuit's standard in *Diaz*, which requires harassment so pervasive and severe that it affects a term or condition of employment.   *Diaz,* 318 F.3d at 800; *see also, Faragher*, 524 U.S. at 787-88.   Additionally, claims based on an alleged one-time statement are exactly what the stray-remarks doctrine was intended to curtail.   Again, the stray remarks doctrine prohibits claims of discrimination based on isolated remarks that are not causally connected to an employment decision.[33]   Thus, Washington's allegations about a stray remark he never personally heard fail to establish a *prima facie* case of a hostile work environment.

### E.  Ozzie Green was not subjected to a hostile work environment

Similar to the other Plaintiffs, Ozzie Green's allegations of harassment do not meet the Eighth Circuit's standard for a *prima facie* case of a hostile work environment. Along with other Plaintiffs, Ozzie Green alleges the same general allegations already discussed. Infra, VI; Plaintiffs' Third Amended Complaint, 44 ("Green has personally observed and been subjected to the Defendant's tolerance of a racially hostile work environment.   Nucor-Yamato and/or Nucor have tolerated racial slurs and racially derogatory graffiti and conduct.   For example, black employees were assigned the dirtiest and most dangerous positions that no other employees would take.   Such defendants also tolerate racial jokes and graffiti.")

The only specific factual allegation that Plaintiffs allege in their complaint is that Green has observed nooses on bathroom walls and confederate flags are prominently displayed and sold

---

[32] Plaintiffs' Third Amended Complaint, ¶ 33.
[33] *Supra*, ¶ B3.

by the company.  *Id.*  Green's allegations are less severe than those facts the Eighth Circuit held were legally insufficient to support a hostile work environment claim in *Loffredo Gardens*.  This is especially true given the fact that the *Loffredo Gardens* facts happened over a year-and-a-half period, whereas Green alleges the acts here occurred over a period of six years.  Also, like in *Katoch*, Green has also never alleged that any of the alleged harassment ever affected a term or condition of his employment.   Thus, this Court should grant summary judgment on Ozzie Green's allegation of hostile work environment.

## V.   PLAINTIFFS LACK ADEQUATE EVIDENCE TO SUPPORT A DISPARATE IMPACT CLAIM UNDER EIGHTH CIRCUIT PRECEDENT

Plaintiffs likewise miss the mark with their disparate impact claims.  To establish a *prima facie* case of disparate impact, Plaintiffs must produce proof that Nucor-Yamato "uses a particular employment practice that causes a disparate impact." 42 U.S.C. §2000e-2(k)(1)(A)(i).  Plaintiffs fail to make their *prima facie* case of disparate impact for three reasons.   First, Plaintiffs merely offer bottom-line statistics, which are insufficient to show disparate impact under Supreme Court precedent.  Second, Plaintiffs never isolate a specific employment practice and demonstrate that that practice actually causes an impact.  Third, the Plaintiffs' claims all allege intentional discrimination, which is not disparate impact at all, but rather disparate treatment subject to the pattern and practice analysis for proving intentional discrimination— which Plaintiffs fail to meet.  *See infra,* ¶ III.  Therefore, this Court should grant Nucor-Yamato's Motion for Summary Judgment on Plaintiffs' disparate impact claim.

### A.   Plaintiffs' bottom-line statistics do not show disparate impact

The same deficiency in Plaintiffs' bottom-line statistical evidence discussed in relation to their pattern and practice claims renders their disparate impact allegations ripe for summary judgment.  *Morgan*, 380 F.3d at 464-65.  In *Morgan*, the Eighth Circuit found that statistics

based on a pool containing individuals who lacked the minimum qualifications for the jobs in question are "of little probative value." *Id.* at 464. The Court of Appeals reasoned that such bottom-line statistics could not survive a summary judgment motion on Plaintiffs' disparate impact claim. *Id.* at 464-65.[34] This standard of proof is based upon longstanding Supreme Court precedent—bottom-line analysis cannot support a disparate impact claim in the face of a summary judgment motion. *Wards Cove,* 490 U. S. at 656-57. Because Plaintiffs offer only bottom-line statistical analysis in support of their disparate impact claim, they have not met the *Morgan* standard for a *prima facie* case of disparate impact.

### B. Plaintiffs fail to show that a specific employment practice caused a disparate impact

Plaintiffs' failure to identify a specific employment practice nullifies any *prima facie* case of disparate impact.[35] *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 953 (8th Cir. 2001); *Bradley v. Pizzaco of Nebraska, Inc.*, 939 F.2d 610, 612 (8th Cir. 1991); *see also, supra*, ¶ V(A). Plaintiffs fail to isolate a specific practice and show, through proper statistics, that the practice causes an adverse impact. Instead, they use a shotgun approach, citing numerous general "policies," alleging that one of those policies must be the culprit causing the alleged disparate impact. For example, Plaintiffs have alleged that the following policies cause a disparate impact:

- Failure to post jobs;[36]

- Pre-selection of Caucasian employees for positions;[37]

- Subjective decisionmaking;[38]

- Failure to put in safeguards to prevent discrimination;[39]

---

[34] In Cooper, the Eleventh Circuit similarly held that failure to control for qualifications failed to meet the summary judgment standard for a disparate impact claim. *Cooper*, 390 F.3d at 726.
[35] Plaintiffs' Third Amended Complaint, ¶ 54.
[36] Plaintiffs' Third Amended Complaint, ¶ 78(3).
[37] Plaintiffs' Third Amended Complaint, ¶ 78(4).
[38] Plaintiffs' Third Amended Complaint, ¶ 78(1).

- Initial job assignment;[40] and

- The combination of discipline, proximity, and training used to make an employment decision.[41]

Yet, Plaintiffs have never statistically analyzed a single one of these alleged practices to gauge the specific policy's effect on promotions as required by the governing precedent. Instead, they offer a bottom-line analysis of the disparity between African-Americans and Caucasians at Nucor-Yamato—and hope the Court will pick one of these practices and assume that it caused the statistical disparity. Plaintiffs' approach offends Eighth Circuit precedent. In its Certification Order, this Court agreed, stating:

> Rather than identify a specific employment practice for disparate impact analysis, Plaintiffs attribute the bottom-line racial imbalances documented by Dr. Bradley to unidentified "subjective combinations of selection criteria."

Order on Class Certification, Dkt. #123, p. 26.

In *Chaffin v. Rheem Mfg. Co.*, the Eighth Circuit required plaintiffs who attack allegedly subjective decisionmaking[42] based on disparate impact to "offer statistical evidence of a kind and degree sufficient to show that the practice in question has *caused* the exclusion of applicants for jobs or promotions because of their membership in a protected group." 904 F.2d 1269, 1276 (8th Cir. 1990). Because plaintiffs never made any attempt to show causation, the Eighth Circuit affirmed dismissal of their impact claims. *Id.* Similarly, in *Cooper*, the Eleventh Circuit stated that plaintiffs' experts who conducted an analysis similar to Dr. Bradley's), failed to demonstrate

---

[39] Plaintiffs' Third Amended Complaint, ¶ 78(2)
[40] Plaintiffs' Brief in Support of Class Certification, Dkt. #73, p. 13.
[41] Plaintiffs' Brief in Support of Class Certification, Dkt. #73, p. 8.
[42] Although Plaintiffs allege that they would have been able to isolate discipline, training, or experience as practices which may have caused an impact, they have failed to ever statistically isolate any one of these practices to demonstrate *whether the specific practice caused a statistically significant impact on African-Americans in promotions*. Moreover, even assuming Plaintiffs claims that Nucor-Yamato discriminates in disciplinary procedures, training assignments, or job placement, then this type of discrimination would not be a *neutral* practice, which is required for a disparate impact claim, but it would rather be *intentional* discrimination, which is more properly analyzed under the disparate treatment model.

a causal nexus between any statistical disparities in the defendants' workforce and the practice of using partially subjective criteria in decisionmaking. 390 F.3d at 716-17; s*ee also Wards Cove*, 490 U.S. at 651-55.

Plaintiffs here fail to prove causation—indeed, they never even try.   While Plaintiffs make bare allegations of practices which may cause impact, Plaintiffs' statistics never isolated any employment practice to demonstrate whether that practice caused an impact.  This Court has already so held:

> Plaintiffs maintain that the factors considered by Dr. Welch, such as discipline and training, which indisputably affect hiring decisions at Nucor, do not qualify as legitimate causal factors because they are racially tainted and have a disparate impact on black applicants.  In an attempt to substantiate this argument this argument Dr. Bradley examined Dr. Welch's data regarding discipline and training and concluded that black applicants were disciplined more than white applicants and received less training than white applicants.  However, Dr. Bradley *failed to eliminate common non-discriminatory reasons* for the disparity in rates of disciplinary action and training between black and white applicants, thus *his analysis fails to show discipline and training factors are racially tainted* based on disparate impact.

Order on Class Certification, Dkt. #123, p. 26 (citations omitted and emphasis added).

This Court should follow *Cooper* and *Chaffin* and grant summary judgment on Plaintiffs' disparate impact claims because they present no evidence to show that a particular employment practice caused a disparate impact in this case.[43]

## C.  Analysis of Plaintiffs' complaint shows that, rather than a case of disparate impact, Plaintiffs' allegations involve disparate treatment

Plaintiffs' complaints about the effect of a multitude of employment practices[44] are essentially claims of disparate treatment rather than disparate impact.  Disparate impact claims

---

[43] *See also, Yapp*, 229 F.R.D. at 622 ("Usually, under a disparate impact theory, the plaintiffs will point to a facially neutral policy or practice which the plaintiffs contend to prove has a disparate impact on the protected group of employees. Here, however, plaintiffs have not pointed out any actual policy, rather they just generally point to UPRR's subjective decision making process"); *Chapman v. Lorillard Tobacco Co.*, 342 F. Supp.2d 383, 395 (M.D.N.C. 2004) (The subjective nature of the Defendant's promotion process is not . . . per se discriminatory . . . [c]onjecture and opinion alone cannot support a prima facie case of disparate impact.);

must be based on some neutral practice which disproportionately impacts a minority group. As opposed to the disparate treatment model which is based on intentional discrimination. In its order on class certification, this Court agreed:

> Plaintiffs ground their individual claims on allegations that Nucor denied them promotions or opportunities for career advancement by segregating them from white employees, thus denying them informal training opportunities, and subjecting them to disparate treatment in the areas of training and discipline. The charge that Nucor denied Plaintiffs opportunities for career advancement through conspicuous, intentionally discriminatory means is incompatible with the disparate impact model of discrimination . . .

Order on Class Certification, Dkt. #123, p. 24. A similar attempt to clothe a disparate treatment claim as a disparate impact claim was made, and rejected, in *Morgan*. The Eighth Circuit, in upholding the district court's granting of summary judgment on the *Morgan* plaintiffs' disparate impact claims, stated:

> It is difficult to understand this claim as one of disparate impact. Plaintiffs' claim as to the subjective decisionmaking process is not that this facially race-neutral process has an adverse impact on blacks and the process cannot be justified by business necessity. Rather, Plaintiffs claim the subjective decisionmaking resulted in blacks remaining in center-manager positions longer than whites before they were promoted to the division-manager level. *We read Plaintiffs' argument as alleging disparate treatment through the subjective decisionmaking process; that is, that the subjective selection process provided the opportunity for [Defendant] to choose not to promote some employees because they were black--to discriminate on account of race.*

*Morgan*, 380 F.3d at 465, n. 2 (emphasis added).[45] As in *Morgan*, Plaintiffs allege that discrimination in this class results from subjective decisionmaking.[46] But they have not demonstrated through any evidence or statistics that the alleged subjective decisionmaking process itself leads to adverse impact. Without that proof, Plaintiffs' claims amount to nothing

---

[44] *See supra*, ¶ V.

[45] For a similar case brought by Plaintiffs' counsel, s*ee Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 541 (N.D. Ala. 2001) (*quoting Lott v. Westinghouse Savannah River Co., Inc.*, 200 F.R.D. 539, 553-54 (D. S.C. 2000) ("Notwithstanding an isolated conclusory allegation of disparate impact, the gravamen of the complaint is one of disparate treatment").

[46] Plaintiffs' Brief in Support of Class Certification, pg. 30-31.

more than claims against individual decisionmakers who allegedly discriminated against Plaintiffs—which are in reality disparate treatment claims. *Morgan*, 380 F.3d at 541. Thus, Plaintiffs' disparate impact claims should be dismissed.

Plaintiffs' reasons for intermingling their disparate impact and treatment claims are clear. Under a disparate impact analysis, they hoped they would have a better chance at certification because they would not have to prove intentional discrimination. The District Court of South Carolina disposed of a similar effort in the *Lott* case, stating:

> It is understandable that Plaintiffs would attempt to take advantage of the benefits of a disparate impact theory, in which they do not have to prove intentional discrimination. Conversely, under a disparate treatment theory, Plaintiffs must show intentional race discrimination. To make out a prima facie case of intentional discrimination, they must show a connection between their race and the adverse employment decision being challenged in each case. Under such a theory, and in the absence of direct proof of intentional discrimination, Plaintiffs' proof would be examined against the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Unquestionably their burden would be higher.
>
> . . .
>
> Notwithstanding an isolated conclusory allegation of disparate impact, the gravamen of the complaint is one of disparate treatment. Plaintiffs purport to attack a particular policy or procedure at Circuit City that results in class wide discrimination---subjective decisionmaking. However, Plaintiffs do not and cannot allege that subjective decisionmaking itself is a practice that discriminates. Rather, they can only allege that it allows a situation to exist in which several different managers are able to discriminate intentionally. The focus of the claim remains the individual employment decisions.

*Lott v. Westinghouse Savannah River Co., Inc.*, 200 F.R.D. 539, 553-54 (D.S.C. 2000). As in *Lott*, Plaintiffs' allegations in the current case are actually claims of intentional discrimination rather than disparate impact.

* * *

Plaintiffs have failed to satisfy the two fundamental elements of a *prima facie* case of disparate impact. Plaintiffs have not identified the particular policy or procedure which they

claim caused a disparate impact, and they failed to present statistical evidence showing that particular policy caused a statistically significant disparity in promotions.  For those reasons alone, Plaintiffs' disparate impact claims cannot survive summary judgment.  When the true nature of Plaintiffs' claims as disparate treatment claims mislabeled as disparate impact claims is added to the mix, there can be no doubt that Plaintiffs' disparate impact claims are insufficient as a matter of law.

## VI. THE NUCOR DEFENDANTS DESERVE SUMMARY JUDGMENT ON PLAINTIFFS' INDIVIDUAL CLAIMS

### A. Cornelius Bennett's individual claims are ripe for summary judgment

Cornelius Bennett's individual claims are deficient at best.  He never bid on a promotion, so he has no claim of discriminatory denial of a position.  Likewise, he makes no allegation of discriminatory treatment in relation to any specific disciplinary incident.  Bennett is thus completely dependent on the claims made by other Named Plaintiffs, and his lawsuit cannot stand on its own merits.

#### 1. Cornelius Bennett never suffered an adverse employment action

Bennett cannot prove a *prima facie* case of discrimination because he suffered no adverse employment action.  Bennett's only specific claim of an adverse employment action is his unsupported allegation of monetary loss due to a transfer from one NYS mill to another mill at the same facility.[47]  Bennett claims that he was discriminatorily transferred from the NYS I mill to the NYS II mill in 2003 resulting in a loss of pay.[48]  After the reassignment however, Bennett had the same Roll Guide Builder job classification, had identical job duties, received the same

---

[47] Plaintiffs' Third Amended Complaint, ¶29.
[48] The NYS I and NYS II facilities are parallel steel production operations located approximately 150 yards apart. NYS II is a newer facility which produces more specialized steel products than NYS I.

hourly pay rate, and had the same calculation for production bonus pay.[49]   In Plaintiffs'

Complaint, Bennett alleges that he lost approximately $15,000 in total compensation following

his transfer from NYS II to NYS I.[50]   Yet, Bennett did not dispute during his deposition that his

earnings actually *increased* almost $7,000 after his transfer, rising to $93,126.39 in 2003 from

$86,803.20 in 2002.[51]   These 2003 earnings include the nine months immediately following

Bennett's reassignment, where he claims $15,000 in "lost" compensation.   Perhaps most

importantly, when asked in a Request for Production to produce any documentation supporting

his claim that he lost wages, Bennett could not produce anything, and instead responded

nebulously that "[t]he amount of backpay cannot currently be determined for the named

plaintiffs."[52]   Bennett's allegation of discriminatory reduction in pay is simply not supported by

the undisputed facts.

Bennett must present proof showing that he suffered some adverse employment action to

establish a *prima facie* case. *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir.

1999).   The Eighth Circuit has held that, without a decrease in pay or responsibilities, no adverse

employment action exists. *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 715 (8th Cir.

2000).   The undisputed evidence shows that Bennett's earnings actually increased after his

transfer, and he retained the exact same position. Bennett cannot meet the Eighth Circuit's

---

[49] Excerpt from the Deposition of Cornelius Bennett, Ex. 70 at pg.74, ln.1-6, 16-19, complete Deposition can be found at Ex. 16 to the Brief in Opposition to Class Certification; *see also,* Change of Status Forms for Cornelius Bennett, Ex. 71. Excerpt from the Deposition of Mike Dugan, Ex. 72 at pg. 436, ln. 3-7, complete Deposition can be found at Ex. 24 to the Brief in Opposition to Class Certification.

[50] Plaintiffs' Third Amended Complaint, ¶ 29.

[51] Excerpt from the Deposition of Cornelius Bennett, Ex. 73 at pg. 78, ln. 9-24 and pg. 79, ln. 1-8 (where Bennett acknowledged his NYS payroll records stating that he earned $86,803.20 in 2002 and $93,126.39 in 2003), complete Deposition can be found at Ex. 16 to the Brief in Opposition to Class Certification; *see also,* Affidavit of Keith Prevost, Ex.74.

[52] Response and Objections on Behalf of Cornelius Bennett to Defendants' First Request for Production of Documents, Answer to Request # 4, pg. 5.

requirement that there be some injury or adverse employment action to establish a *prima facie* case.

## 2.   Cornelius Bennett was treated the same as Caucasian employees

Even more inexplicable is Bennett's claim that Caucasian co-workers were not subjected to the same worksite changes that he was within the Roll Mill Department.  Roll Mill employees are periodically reassigned between NYS mills to provide valuable training opportunities in the different production processes.[53]  This policy applies equally to all employees regardless of race. For example, a Caucasian coworker, Larry Sanders, was similarly reassigned from NYS II to NYS I in March 2003.[54]   Further weakening Bennett's claims, an African-American employee was transferred into Bennett's position at NYS II when he moved to NYS I.[55]  Bennett's failure to show some sort of adverse employment action, renders him incapable of proving a *prima facie* case under Eighth Circuit precedent.   *Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1034 (8th Cir. 2006).

The Court's decision on Bennett's claims is a simple one.  He has no viable claim for discrimination because he can neither show that he suffered an adverse employment action, nor that he was treated differently than similarly situated Caucasian employees.   Accordingly, this Court should dismiss Bennett's individual claims as a matter of law.

## B.  Clifton Lee's individual claims are ripe for summary judgment

Clifton Lee's allegations are similar to those of Cornelius Bennett and are equally without merit.   Lee claims he was discriminatorily transferred from one section of the NYS

---

[53] Excerpt from the Deposition of Mike Dugan, Ex. 75 at pg. 435-437, complete Deposition can be found at Ex. 24 to the Brief in Opposition to Class Certification.
[54] *Id.* at 436, ln. 3-6; *see also,* Change of Status Form for Larry Sanders, Ex. 76.
[55] Excerpt from the Deposition of Mike Dugan, Ex. 77 at pg. 451 ln. 20-23 and pg.452, ln. 1-6, complete Deposition can be found at Ex. 24 to the Brief in Opposition to Class Certification; *see also,* Change of Status Forms for Albert Dyer, Ex. 78.

facility to another, yet his earnings also increased after the transfer.  Unlike Bennett, Lee did bid

on two different jobs during the class period—yet he voluntarily withdrew his bids for both of

these jobs before selection decisions were made, rendering his failure to promote claim moot.

Regardless, Lee's Title VII claims are barred because he failed to file a lawsuit within the

statutory 90-day period after receiving a right to sue letter from the EEOC.  Even if his lawsuit

had been filed on time, Lee's own testimony reveals the implausibility of his one specific claim

of an incident of racial harassment.  For all of these reasons, this Court should reject Lee's Title

VII and §1981 claims as a matter of law.

### 1.   Clifton Lee never suffered an adverse employment action

Like Bennett, Lee has fabricated a claim of monetary loss based on a transfer from one

part of the facility to another.    Lee claims that he was retaliated against by being reassigned

from the NYS II mill to the NYS I mill in March of 2003.[56]  But reassignment was a common

practice at Nucor-Yamato.  That truth aside, Lee's allegation that he "lost" $17,000 in pay due to

this worksite change is contradicted by payroll records.    Lee could not explain why he earned

almost $6,000 more after his reassignment.[57]   In fact, Lee admitted that NYS payroll records

correctly show that he earned $89,963.54 in 2003, a significant *increase* from his wages of

$84,023.55 in 2002.[58]  After the transfer Lee had the same job classification, the same job duties,

received the same hourly pay, and had the same calculation for production bonus pay.  The facts

show no adverse employment action.

Like Bennett, when asked in a Request for Production to produce any documentation

supporting his claim of lost wages, Lee could not produce anything, and instead responded

---

[56] Plaintiffs' Third Amended Complaint, ¶ 37.
[57] Excerpt from the Deposition of Clifton Lee, Ex. 79 at pg. 222, ln. 6-24 and pg. 223, ln. 1-6, complete Deposition can be found at Ex. 14 to the Brief in Opposition to Class Certification.
[58] *Id.*; *see also,* Affidavit of Keith Prevost, Ex.74.

identically to Bennett that "[t]he amount of backpay cannot currently be determined for the named plaintiffs."[59]   As noted earlier, the law in the Eighth Circuit requires proof that a plaintiff suffered some adverse employment action.  *Kerns,* 178 F.3d at 1016; *Buettner*, 216 F.3d at 715. Lee has none.  His earnings actually increased after his transfer and all other aspects of his job remained the same.  Like Bennett, Lee has produced no proof of injury or adverse employment action to support his *prima facie* case under either Title VII or §1981.

### 2.  Lee was treated the same as Caucasian employees

Further eroding Lee's claim of discriminatory transfer, it is undisputed that Roll Mill employees are periodically reassigned between NYS mills to provide valuable training opportunities in the different production processes.[60]  For example, a Caucasian coworker, Larry Sanders, was similarly reassigned from NYS II to NYS I in March, 2003.[61]    Additionally, an African-American employee was transferred into Lee's position at NYS II when Lee moved to NYS I.[62]  Lee simply cannot show he was not treated any differently than Caucasian employees, rendering him unable to establish his *prima facie* case under Title VII or §1981 pursuant to Eighth Circuit precedent.  *Canady*, 440 F.3d at 1034.

### 3.  Lee's promotion claims are untenable

As a matter of law, Lee cannot prevail on a promotions claim because Nucor-Yamato never denied him a promotion.  While Bennett admits that he never even bid on a job, Lee actually bid on two jobs.  Lee, however, voluntarily withdrew both of those bids before the job selection decision was made.  In 2003, Lee bid on a Cold Saw Operator position but then

---

[59] Response and Objections on Behalf of Cornelius Bennett to Defendants' First Request for Production of Documents, Answer to Request #4, p.5.

[60] Excerpt from the Deposition of Mike Dugan, Ex. 80 at pg. 435 – 437, complete Deposition can be found at Ex. 24 to the Brief in Opposition to Class Certification.

[61] *Id. at*  pg.436, ln. 3-6; *see also,* Change of Status Form for Larry Sanders, Ex.76.

[62] Excerpt from the Deposition of Mike Dugan, Ex. 81 at pg. 451, ln. 20-23 and pg. 452, ln. 1-6, complete Deposition can be found at Ex. 24 to the Brief in Opposition to Class Certification; *see also,* Change of Status Forms for Albert Dyer, Ex. 78.

withdrew his bid voluntarily, as is supported by documentation on the issue.[63] Likewise, in 2003, Lee bid on a Rotary Straightener Operator position from which he subsequently withdrew himself for consideration.[64]   Thus, Nucor-Yamato never had a chance to accept or deny Lee's bid.

Another court has addressed nearly identical circumstances and held that a voluntary withdrawal of a bid renders it impossible to prove a *prima facie* case of discrimination.  *Sanchez v. Univ. of Connecticut Health Care*, 292 F. Supp.2d 385, 394 (D. Conn. 2003) ("Thus, plaintiff does not set forth a prima facie case [for denial of promotion] because she voluntarily withdrew her application.")   As with his claim of a discriminatory transfer, Lee suffered no adverse employment decision in regard to promotion, and therefore he cannot make out a *prima facie* case of discrimination under Title VII or §1981 pursuant to Eighth Circuit precedent.  *Kerns*, 178 F.3d at 1016.

### 4.  Lee's Title VII claims are barred by the statute of limitations

Even if Lee had suffered some adverse employment action, his claim is barred because he failed to file his suit within Title VII's statute of limitations.[65]   Lee's right to sue letter from the EEOC was issued on July 1, 2003.[66]   Under Title VII, he was required to file a lawsuit within 90 days after receiving that notice. 42 U.S.C. § 2000e-5(f)(1); *see also, Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers*, 309 F.3d 1051, 1052 (8th Cir. 2002) (*per curiam*).   Lee missed that deadline.  He did not become a Plaintiff in this lawsuit until March 22, 2004, nearly nine months after his Right to Sue Letter was issued.[67]   Without the class claims upon which to

---

[63] E-mail from Keith Shelton, Ex. 82; *see also,* Affidavit of Keith Shelton, Ex. 83.
[64] Affidavit of Glenn Ellis, Ex. 84.
[65] Lee also alleges a Section 1981 claim which would not be barred by the statute of limitations.  However, the merits of his Section 1981 claim are still insufficient to withstand summary judgment.  Supra, VI(B)(1-3).
[66] EEOC Dismissal and Notice of Rights for Clifton Lee, Ex. 85.
[67] Plaintiffs' Third Amended Complaint.  (Lee was not named as a Plaintiff in the Original Complaint filed on December 8, 2003).

piggyback, Lee's untimely Title VII claims are barred.   Standing alone, Lee's Title VII claims

cannot survive summary judgment for this simple reason—he did not file his lawsuit on time.

### C.  Ozzie Green's individual claims are ripe for summary judgment

Ozzie Green's claims of discrimination under Title VII and §1981 are nothing more than

unsupported allegations designed to seek damages from a Company from which he voluntarily

quit.   Specifically, Green's failure to advance at Nucor-Yamato was not based upon

discrimination; rather, it was the result of his poor work performance and safety violations which

resulted in multiple warnings and counselings.   Green's Title VII claims also fail because he did

not exhaust his administrative remedies by filing an EEOC charge as required by Title VII.

#### 1.  The Court should dismiss Ozzie Green's Title VII claims because he failed to exhaust his administrative remedies

Green alleges that he was discriminated against by Nucor-Yamato because of his race in

violation of Title VII. (Plaintiffs' Third Amended Complaint, ¶ 2). Green's discrimination claim

fails as a matter of law, however, because he did not properly exhaust his administrative

remedies under Title VII.   Green ignored the administrative prerequisites and never filed an

EEOC charge.   This is not in dispute.   When questioned about his compliance with Title VII's

administrative prerequisites, Green stated:

Q.      Mr. Green, did you ever file a charge of Discrimination with the EEOC?

A.      Not that I – not to my knowledge.  I don't know.[68]

Title VII provides in relevant part:

(1) A charge under this section shall be filed within one hundred and eighty days
    after the alleged unlawful employment practice occurred and notice of the
    charge (including the date, place, and circumstances of the alleged unlawful
    employment practice) shall be served upon the person against whom such

---

[68] Excerpt from the Deposition of Ozzie Green, Ex. 86 at pg. 123, ln. 14 -16, complete Deposition can be found at
Ex. 12 to the Brief in Opposition to Class Certification.

charge is made within ten days thereafter, except that in a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred….

42. U.S.C. § 2000e-5(e)(1). The Eighth Circuit has unequivocally and repeatedly held that this provision creates an administrative exhaustion requirement for Title VII actions. *Duncan v. Delta Consol. Ind., Inc.* 371 F.3d 1020, 1024 (8th Cir. 2004); *Faibisch v. Univ. of Minnesota,* 304 F.3d 797, 803 (8th Cir. 2002); *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir. 1994). In *Shannon v. Ford Motor Company*, the Eighth Circuit explained:

> Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.

72 F.3d 678, 684 (8th Cir. 1996). Likewise, in *Burkett v. Glickman*, the Court held that before the federal courts may hear a Title VII discrimination claim, an employee must fully exhaust her administrative remedies. 327 F.3d 658, 660 (8th Cir. 2003). The law in the Eighth Circuit requires that an aggrieved person file an administrative complaint with the EEOC before bringing a lawsuit alleging employment discrimination. Either by design or neglect, Green failed to file an administrative complaint; thus, his individual discrimination claims under Title VII are barred as a matter of law. [69]

### 2. Green's promotions claim does not meet the Eighth Circuit standard

Although Green alleges he was denied promotions based on his race, these claims lack evidentiary support. Where the plaintiff relies on circumstantial evidence of discrimination, the Eighth Circuit Court follows the ubiquitous *McDonnell Douglas* burden-shifting framework.

---

[69] While failure to exhaust administrative remedies only applies to Title VII claims, Green's intentional discrimination claims under 1981 are likewise insufficient to withstand summary judgment. *Infra*, VI(C)(2).

*Pope v. ESA Serv.*, Inc., 406 F.3d 1001, 1006 (8th Cir. 2005); *see also, McDonnell Douglas v. Green*, 411 U.S. 792, 801-804 (1973).   According to *McDonnell Douglas*, a presumption of discrimination is created upon the plaintiff's successful assertion of a *prima facie* case.   *Pope*, 406 F.3d at 1006.   A *prima facie* case requires proof that:

1.    the employee was a member of a protected group;

2.    the employee was qualified for the position sought;

3.    despite the employee's qualifications, she was rejected; and

4.    similarly situated employees, not of a protected class, were promoted instead.[70]

If the plaintiff established a *prima facie* case, the burden shifts to defendant to produce a legitimate, non-discriminatory justification for the decision not to promote.   The Eighth Circuit has consistently held that "[t]he burden is not onerous, and the explanation need not be demonstrated by a preponderance [of the evidence]."   *Bucholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 150 (8th Cir. 1997).   Moreover, Defendant need not prove it was actually motivated by the evidence offered to the court; but must merely raise a genuine issue of fact as to whether defendant discriminated against plaintiff.   *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).    If Defendant is able to meet its burden of production, the presumption of discrimination evaporates, effectively shifting the burden back to the plaintiff to prove that the proffered reason was a pretext for discrimination.   *Pope,* 406 F.3d at 1007.

In his Third Amended Complaint, Green alleges that he was discriminatorily denied a Roll Builder job in 2003.   The fourth element of a *prima facie* case requires Green to prove that employees with similar qualifications, who were not members of a protected class, were promoted to the position sought by plaintiff.   *Pope,* 406 F.3d at 1007; *see also Turner v.*

---

[70] *Shannon,* 72 F.3d at 682; *Marzec v. Marsh*, 990 F.2d 393, 395 (8th Cir. 1993); *McDonnell Douglas*, 411 U.S. at 801-04.

*Honeywell Fed Mfg. & Tech, LLC,* 336 F.3d 716, 722 (8th Cir. 2003).  If Green is unable to prove every element of a *prima facie* case, then the burden does not shift to Defendant and this Court should reject the claim.  Here, five Caucasian employees and four African-American employees bid on the 2003 Roll Turner position.[71]    The job was awarded to Jerry Barklay, an African-American employee.[72]  Because an African-American employee was promoted, Green has failed to carry his *prima facie* burden.

Green also alleges that he was denied a Lead Man position in 2001.  However, there is no bid sheet or any other evidence that Green ever bid on any lead man positions in 2001.   In 2003, Green bid on the two openings for a Finishing Lead Man position.[73]  One of these positions was awarded to an African-American employee, Craig Pry.[74]   Because an African-American employee was promoted to the position sought by Green, he cannot establish the requirements of his *prima facie* case, and this Court should reject his claim for relief.  *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1126 (8th Cir. 1998); *see also, Turner*, 336 F.3d at 721.

Not only does Green fail to meet the basic elements of his *prima facie* case of discrimination because African-American employees were promoted to the positions he claims were discriminatorily filled, he was also not qualified for the positions because of his poor work record.   Specifically, both the Roll Turner position and Finishing Lead Man job required candidates to have "Excellent Safety, Attendance, and Work Record."[75]  During his career with Nucor-Yamato, Green was involved in more than twenty separate disciplinary incidents for repeated insubordination, improper conduct, safety violations and poor attendance.[76]   Before

---

[71] Job Postings for 2003 Roll Builder Position and Applications for Transfer, Ex. 87.
[72] Change of Status Form for Jerry Barklay, Ex. 88.
[73] Job Postings for 2003 Finishing Lead Man Position, Ex. 89.
[74] Craig Pry's change of status form, Ex. 90.
[75] Finishing Lead Man Job Posting and Roll Builder Job Posting, Ex. 91.
[76] Ozzie Green's Warnings, Counselings, and Safety Violations, Ex. 17 in the Brief in Opposition to Class Certification.

bidding on the 2003 positions, Green had received the following counselings documented in his personnel file:

- On February 20, 2003, Green was disciplined with a written warning and three day suspension after confronting his ex-wife, Pat Green, in the Roll Mill office, where she is an administrative clerk. Green was verbally abusive, severely upset Pat Green and another clerk, and had to be directed to leave NYS property by a supervisor.

- On July 02, 2003, Green was disciplined for not following proper call-off procedures.

- On September 22, 2003, Green received a written warning for leaving work early without any remaining "grace days."

- On October 8, 2003, Mr. Craig Pry, disciplined Green for disorderly radio procedure after Green was identified as improperly marking bars.

In fact, in counseling Green, his Department Manager noted that he had the "thickest disciplinary file of any employee still working at Nucor-Yamato."[77]   Green was not denied promotion into these jobs based on discrimination, but rather based on his abysmal work record. If any bias occurred, the bias was against unsafe employees, which are not a protected group. This Court should reject Green's promotions claims because he has failed to meet the basic *prima facie* elements under the *McDonnell Douglas*.

### D.  Larry McBride's individual claims are ripe for summary judgment

Plaintiff Larry McBride's claims of discriminatory treatment are nothing more than conclusory allegations without evidentiary support.   McBride also failed to exhaust his administrative remedies by failing to file an EEOC charge.   Because McBride ignored the statutory requirements of Title VII, and has failed to identify any evidence to support a *prima facie* case of discrimination, this Court should grant summary judgment on all his claims.

---

[77] Frankie Grigg's Memo to Ozzie Green, Ex. 6 in the Brief in Opposition to Class Certification.

### 1. McBride's Title VII claims for relief are barred because he failed to exhaust his administrative remedies

Similar to Green, McBride ignored the EEOC's administrative process and failed to file a charge with the Commission as required by Title VII. This fact is undisputed.

> Q: Mr. McBride, did you file a charge of discrimination with the EEOC?
>
> A: I have no knowledge of filing that.[78]

McBride is attempting to circumvent the central tenet of Title VII's statutory scheme, depriving the EEOC the opportunity to investigate his claims and promote conciliatory efforts. *Shannon,* 72 F.3d at 684. Because McBride ignored the established administrative requirements of Title VII, the Court should reject his individual claims for Title VII relief.[79]

### 2. McBride's promotion claims fail under the Eighth Circuit standard

McBride has done nothing more than make conclusory allegations of discrimination without any evidentiary support. For example, McBride has provided no evidence to support his allegation that African-American employees are required to work for one year before they can bid for a higher position, whereas Caucasian employees are not.[80] McBride alleges that in 2000, he was told that "he was not qualified for a Cold Saw Operator position because he had not been with the company for one year."[81] But to meet the *prima facie* requirements under Title VII, McBride must identify the qualifications necessary for a particular position, as well as offer evidence establishing his or her own qualifications. "Conclusory assertions that he was qualified for the position…[are] insufficient to establish a prima facie case for discriminatory failure to promote." *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1110 (8th Cir. 1998). Mark

---

[78] Excerpt from the Deposition of Larry McBride, Ex. 92 at pg. 36, ln. 24 - pg. 37, ln. 2, complete Deposition can be found at Ex. 13 to the Brief in Opposition to Class Certification.
[79] While failure to exhaust administrative remedies dooms to his Title VII claims, McBride's intentional discrimination claims under Section 1981 are still insufficient to withstand summary judgment. *Infra*, VI(D)(2-3).
[80] Plaintiffs' Third Amended Complaint, ¶ 47
[81] *Id.*

Warren was awarded the Cold Saw Operator position because of his direct experience in the area, cross-training on that specific job, and outstanding work history. At the time he applied for the Cold Saw Operator position, Warren had worked at NYS for six years, and had received consistent evaluations and promotions throughout his tenure. Warren also had direct experience with the cold saw, as he served as a Cold Saw Recorder for more than three years. Finally, Warren consistently participated in various safety and training courses.[82]

Unlike Warren, McBride had been with the Company for less than seven months when he bid on the position.[83] McBride had no direct experience with the saw and had made no attempt to cross-train on that position. Furthermore, and contrary to his allegations, McBride bid on the position and was subsequently interviewed by the hiring supervisor.[84] After careful evaluation of the candidates' qualifications, Nucor-Yamato promoted the most qualified employee.

In light of this legitimate, non-discriminatory reason, the ultimate burden rests with McBride to prove that Nucor-Yamato's proffered legitimate reason is a pretext for race discrimination. *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004). To support a claim of pretext, McBride may satisfy his burden of proof by demonstrating that similarly situated persons of a different race received more favorable treatment. *Id*. As discussed above, McBride has failed to identify any Nucor-Yamato employees who were similarly situated yet were treated more favorably. McBride also identifies his job bid forms on multiple positions that were posted at the mill,[85] and he admits to being interviewed for most if not all of these

---

[82] Safety and Training Records of Mark Warren, Ex. 93.
[83] Change of Status Form for Larry McBride, Ex. 94; *see also,* McBride's Job Bid Sheet, Ex. 95.
[84] Job Posting, Ex. 96.
[85] Excerpt from the Deposition of Larry McBride, Ex. 97 at pg. 109, ln. 16 – pg. 110, ln. 8; pg. 112, ln. 9-22; pg. 114, ln. 10-23; pg. 117, ln. 9-22; pg. 119, ln. 10 – pg. 120, ln. 11; pg. 122, ln. 23 – pg. 123, ln. 14; pg. 128, ln. 7-23; pg. 132, ln. 24 – pg. 133, ln. 15; pg. 134, ln. 21 – pg. 135, ln. 12; pg. 136, ln. 19 – pg. 137, ln. 14, complete Deposition can be found at Ex. 13 to the Brief in Opposition to Class Certification.

positions.[86]   Furthermore, McBride has also been promoted since his hire date in 1999.[87]

Accordingly, McBride cannot establish pretext because he cannot prove he was treated differently than similarly situated Caucasian employees.

### 3.   McBride has failed to produce evidence to support his allegations that he was denied the ability to cross-train because of his race

McBride also alleges that Caucasian employees are allowed to cross-train during regular shifts which receive bonus pay, while black employees must cross-train during off days and do not receive bonus pay.[88]   McBride presents no evidence to support his allegation. All employees at Nucor-Yamato have the opportunity to cross-train during their non-scheduled days.[89]   During this time, employees are paid their regular hourly rate.   At times, employees are allowed to train on other jobs during the regularly scheduled shifts, so long as the normal course of operations is not interrupted.[90]   Although McBride alleges that this policy is discriminatorily applied, he fails to offer anything more than his conclusory allegations to support this claim.   In fact, McBride testified unequivocally that he has cross-trained during regularly scheduled shifts and received regular pay, including a production bonus.

> Q: Mr. McBride, have you ever received your regular pay, including production bonus, while working in a position other than the I-bed inspector during a regularly scheduled shift at Nucor-Yamato from December 1999 until now?
>
> A: Yes, I have.[91]

During his deposition, McBride also identified Caucasian employees that were required to train during their off-days.

---

[86] *Id.*
[87] Change of Status Forms for Larry McBride, Ex. 98.
[88] Plaintiffs' Third Amended Complaint, ¶ 46.
[89] Excerpt from the Deposition of Mike Dugan, Ex. 99 at pg. 147, ln. 11 – pg. 148, ln. 1, complete Deposition can be found at Ex. 24 to the Brief in Opposition to Class Certification.
[90] Excerpt from the Deposition of Mike Dugan, Ex. 100 at pg. 161, ln. 16 – pg. 162, ln. 2; pg. 187, ln. 5-20; pg. 450, ln. 16 – pg. 451, ln. 8, complete Deposition can be found at Ex. 24 to the Brief in Opposition to Class Certification.
[91] Excerpt from the Deposition of Larry McBride, Ex. 101 at pg. 53, ln. 8-13, complete Deposition can be found at Ex. 13 to the Brief in Opposition to Class Certification.

Q: Mr. McBride, have you ever observed white employees at Nucor-Yamato cross-training outside of their regularly scheduled shifts from December 1999 until now?

A: Yes, I have.[92]

McBride's own words undermine his claim.  This Court should dismiss it.  *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999) ("While we view the facts in a light most favorable to the non-moving party, mere allegations which are not supported with specific facts are not enough to withstand the [summary judgment] motion.") *see also, Rose-Maston*, 133 F.3d at 1110.

McBride failed to exhaust his administrative remedies as required by Title VII and has failed to put forth any evidentiary support to show that he was qualified for the Cold Saw Operator position he claims was discriminatorily filled.  Because McBride has failed to provide any evidence of discriminatory treatment during his employment at Nucor-Yamato, this Court should grant Nucor-Yamato's request for summary judgment on all McBride's claims.

### E.  Sylvester Rogers's individual claims are ripe for summary judgment

Rogers's claims for discrimination in promotion fail because he cannot meet the second and fourth requirements of *McDonnell-Douglas*.  Rogers was not qualified for the promotions he sought at Nucor-Yamato because he has one of the worst employment records of all employees at Nucor-Yamato.  Also, for at least one of the jobs which Rogers alleges he was discriminatorily denied, an African-American actually received the job in question.  Finally, Nucor-Yamato had a legitimate non-discriminatory reason for not promoting Rogers, and Rogers cannot produce any proof to show this reason was a mere pretext.  Nor do Rogers's alleged experiences at Nucor-Yamato rise to the level of hostile work environment under Eighth Circuit precedent.

---

[92] *Id.* at pg. 53, ln. 14-18.

### 1. Rogers's promotions claim fails step two of the *McDonnell Douglas* standard under Eighth Circuit precedent

Rogers claims that he was qualified for the promotions he sought.[93]   That claim notwithstanding, Rogers fails the second requirement of *McDonnell Douglas*.  Although Rogers continually asserts that he was qualified for the positions in question, he cannot rely on conclusory assertions—he must be able to demonstrate that he was actually qualified.   *Rose-Maston,* 133 F.3d at 1110.  Rogers cannot do so.

Rogers's work record indicates he has been one of the worst employees at Nucor-Yamato.   During the proposed class period alone, only 1% of production employees were suspended more than once.[94]   Rogers was suspended three times.  He was also involved in more than eleven disciplinary incidents during his employment at Nucor-Yamato.[95]   These incidents and suspensions involved inadequate work performance, insubordination, and threats of violence against other employees.   All of these incidents occurred before Rogers applied for promotion and were considered in denying him promotion.   The following are some excerpts from these incidents:

- May 1999 (Notice of Warning)

  Rogers failed to inspect and remove damaged material.   After Rogers was warned about the problem, he did the same thing.

- June 1999 (Notice of Warning)

  Rogers was unable to perform his new job and was removed for inadequate performance.   He displayed a "very bad attitude."

---

[93] Plaintiffs' Third Amended Complaint ¶ 39.

[94] Sylvester Rogers's Warnings, Counselings, and Safety Violations, Ex. 9 in the Brief in Opposition to Class Certification; *see also,* Excerpt from the Supplemental Expert Report of Dr. Finis Welch, Ex. 102 at pg. 6, complete Supplemental Report can be found at Ex. 32 to the Brief in Opposition to Class Certification.

[95] Sylvester Rogers's Warnings, Counselings, and Safety Violations, Ex. 9 in the Brief in Opposition to Class Certification.

- April 2000 (Notice of Warning)

Told supervisor to "Shut his mouth."

- May 2000 (Notice of Warning)

Rogers failed to perform job as an Inspector, allowed damaged product to get through.  Disciplinary record noted that this has been a continuing problem.

- September 2000 (Notice of Warning)

Rogers failed again as an Inspector and allowed "bad quality steel to get into shipping."

- November 2000 (Notice of Warning)

Rogers left his area without permission while the line was running.

- December 2001 (Notice of Warning)

Threatened to kill another employee.

- July 2002 (Notice of Counseling Session)

Committed a safety violation.

- August 2002 (Notice of Warning)

Rogers threatened another employee with physical violence.

Despite this terrible record, Rogers alleges that he was discriminatorily denied an Inspector position in 2002 and a Hot Saw Operator position in 2003. Plaintiffs' Third Amended Complaint, ¶ 40.  The employees who received the positions in question had better work records than Sylvester Rogers.  Finally, the employees who bid on the Hot Saw Operator position and the Inspector positions were evaluated based upon written criteria which included excellent work record, excellent safety record, and ability to work well with other people.  Rogers's record shows he falls well short in these areas.

### 2. Rogers fails step four of *McDonnell Douglas* because African-American employees received two of the positions Rogers was denied

Of the four Inspector positions which Rogers alleges he was discriminatorily denied, two were given to African-American employees—one of which was fellow Plaintiff Larry McBride.[96] Hence, Rogers falters on the fourth step of the *McDonnell Douglas* test. *Shannon*, 72 F.3d at 682. This Court should grant Nucor-Yamato summary judgment on Rogers's promotions claims on the Inspector positions.

### 3. Poor disciplinary record is a legitimate nondiscriminatory reason not to promote an employee under Eighth Circuit precedent, and Rogers cannot demonstrate pretext

The Eighth Circuit has previously affirmed summary judgment on a similar failure to promote claim brought by an employee with a poor work record. *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1309-11 (8th Cir. 1995). The plaintiff in *Lidge-Myrtil* met her prima facie case in a failure to promote claim under Title VII after not having received a promotion for twelve years despite consistently high scores on her performance evaluations. *Id.* (Unlike plaintiff in *Lidge-Myrtil*, Rogers never received high performance evaluations). The Company demonstrated, however, that Plaintiff had a poor disciplinary record, which was a legitimate, non-discriminatory reason for failing to receive a promotion. *Lidge-Myrtil*, 49 F.3d at 1310; *see also, Rose-Maston,* 133 F.3d at 1109. The District Court required Plaintiff to produce some evidence, beyond the elements of a prima facie case, that would allow a rational jury to find that the poor disciplinary record was a pretext. *Lidge-Myrtil,* 49 F.3d at 1311. The Plaintiff, however, was unable to show pretext, and the Eighth Circuit therefore held that the District Court properly granted summary judgment based on Plaintiffs' poor disciplinary record. *Id.* The Eighth Circuit went on to caution:

---

[96] Job Postings bid on by Sylvester Rogers, Ex. 103.

> [Defendant] proffered a legitimate, non-discriminatory reason for giving [the Caucasian employee] the position. We do not sit to determine if this reason is based on sound principles of business judgment. Nor is it our place to tell a business that it must promote an individual who may very well be inappropriate for a position when it can laterally move someone deemed better suited to fill that position. Rather, the relevant inquiry is whether Deere's decision was based on race. (citations omitted).

*Lidge-Myrtil,* 49 F.3d at 1312.   Like the Plaintiff in *Lidge-Myrtil*, Rogers's lack of promotions rested upon his poor work record, not his race.

The Eighth Circuit has allowed employers to terminate employees with conduct that is comparable to Rogers, consistently holding insubordination and violation of company policy are legitimate reasons for termination. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999); *Price v. S-B Power Tool*, 75 F.3d 362, 365-66 (8th Cir. 1996) (employee terminated for excessive absenteeism); *Miner v. Bi-State Dev. Agency*, 943 F.2d 912, 913-14 (8th Cir. 1991) (employee terminated for insubordination and violating various company policies).   Under this standard, if Nucor-Yamato could have lawfully terminated Rogers, then the Company could lawfully deny him promotion based on that record.

Although Plaintiffs argue that Rogers's allegations of discriminatory remarks should constitute sufficient evidence to show pretext, "[i]t is well established that derogatory remarks made by nondecisionmakers with no connection to an alleged adverse employment decision cannot support a reasonable inference of pretext."   *Cardenas v. AT & T Corp.*, 245 F.3d 994, 1000 (8th Cir. 2001);  *see also, Floyd v. Missouri Dept. of Soc. Servs.*, 188 F.3d 932, 937-38 (8th Cir. 1999); *Ghane v. West*, 148 F.3d 979, 982 (8th Cir. 1998).   There is no evidence that any racial remark was made to Rogers by any Nucor-Yamato employees who were the decisionmakers behind his lack of promotion.

Rogers also may argue pretext by way of his allegation of a discriminatory removal from his Piler Operator job.[97]  Work records show, however, that despite more than 90 days of on-the-job training, Rogers was removed from the Piler job only after causing two accidents which could have seriously injured other employees.[98] Additionally, Rogers's African-American Crew Leader and two senior African-American Piler Operators requested that removal.[99]

Because Rogers was unqualified for the promotions he sought, and Nucor-Yamato had a clear, non-discriminatory reason for denying promotion which Rogers cannot rebut, this Court should grant summary judgment on Rogers's promotion claim.

### F.     Rodney Washington's individual claims are ripe for summary judgment

The individual claims of discrimination alleged by Rodney Washington lack merit. Washington contends he was subjected to a hostile work environment, denied promotions on account of his race, and was wrongfully terminated on account of his race.  Each of these allegations is contrived, and lacks evidentiary support.  Due to his inability to offer evidence which might support his individual claims of racial discrimination, summary judgment is appropriate on Washington's claims.

### 1.  Washington's promotions claim fails the Eighth Circuit standard

Washington cannot prove a *prima facie* case of discrimination in promotions because he was not qualified for the position on which he bid.  As noted earlier, the Eighth Circuit has determined the second element of a *prima facie* case requires plaintiff to prove he was qualified for the position sought.  To satisfy this requirement, the plaintiff must identify the qualifications necessary for a particular position, as well as offer evidence establishing his or her own

---

[97] Plaintiffs' Third Amended Complaint, ¶ 40.
[98] Memo from Mike Dugan regarding removing Rogers from Piler position, Ex. 18 in the Brief in Opposition to Class Certification.
[99] *Id.*

qualifications. *Rose-Maston*, 133 F.3d at 1110. "Conclusory assertions that she was qualified for the position…[are] insufficient to establish a prima facie case for discriminatory failure to promote." *Id.* Here, Washington has presented no specific evidence that he was qualified for any particular position on which he bid. Moreover, his disciplinary and accident record, combined with his eventual termination for workplace violence, demonstrate his lack of qualifications for promotion to any position at Nucor-Yamato.

Washington has only addressed one particular position on which he bid, a Lubricator position in the Maintenance Department. But Washington has failed to offer evidence of the qualifications necessary for the Lubricator position, and he did not provide evidence of his own qualifications. He merely offered the conclusory allegation, "[h]e was qualified for the position"[100] without indicating his specific credentials. This position was awarded to Mike Smith because his knowledge, background, and experience were superior to Washington's.[101] Additionally, Mr. Smith had cross-trained for the lubricator position, whereas Washington had not.[102] Washington is consequently unable to prove a *prima facie* case of discriminatory failure to promote.

Even if Washington could establish a *prima facie* case for discriminatory failure to promote, Nucor-Yamato can offer evidence showing the decisions were based on legitimate, non-discriminatory reasons. Washington was the cause of six workplace accidents and was involved in seven disciplinary incidents during his employment at Nucor-Yamato.[103] These events played a substantial factor in the individual decisions not to promote Washington.

---

[100] Plaintiff's Third Amended Complaint, ¶32.
[101] Excerpt from the Deposition of Rick Ramsdell, Ex. 104 at p 197, ln. 4 – p. 202, ln. 9, complete Deposition can be found at Ex. 37 to the Brief in Opposition to Class Certification.
[102] *Id.*
[103] Rodney Washington's Warnings, Counselings, and Safety Violations. Ex. 10 in the Brief in Opposition to Class Certification.

Furthermore, Washington himself told Nucor-Yamato officials that he had no desire to work for Nucor-Yamato in the future.   Washington unequivocally stated his five-year goal was to be self-employed and not working for Nucor-Yamato.[104]   For these legitimate, non-discriminatory reasons, Washington was not promoted within Nucor-Yamato.  Because he was not qualified for the one position he claims he was discriminatorily denied, Washington cannot meet his burden in his individual case.

## 2. Washington's wrongful termination claim fails because he was terminated based on legitimate, non-discriminatory grounds

Washington claims that he was terminated because of his race, even though he admits that he committed an act of workplace violence that led to his termination.   Washington intentionally punched and broke a glass window which was within inches of supervisor Glenn Ellis's face.   Washington has since explicitly acknowledged this unacceptable workplace violence which resulted in his termination.[105]   In his deposition Washington stated:

> Q.  Did you ever break a window while you were employed at Nucor-Yamato?
> A.  Yes.
> Q.  Where was that window located?
> A.  In my piler pulpit.
> Q.  When did you break it?
> A.  Toward the end of 2003.
> Q.  Was anyone present when you broke the window?
> A.  Yes.
> Q.  Who was present?
> A.  Glenn Ellis.
> Q.  And what did you break the window with?
> A.  I – I cracked it with my fist, my hand.
> Q.  Were you angry when you broke the window with your fist?
> A.  I was upset.[106]

---

[104] Excerpt of Interview notes regarding Washington for 2002 Lubricator position, noting Washington's handwritten goal to be self-employed in five years, Ex. 105, complete Interview Notes for 2002 Lubricator position can be found at Ex. 21 to the Brief in Opposition to Class Certification.

[105] Excerpt from the Deposition of Rodney Washington, Ex. 106 at pg. 135, ln. 1-19, complete Deposition can be found at Ex. 11 to the Brief in Opposition to Class Certification.

[106] *Id.* at ln. 1 – 15.

The company's decision to terminate Washington was based on a legitimate, non-discriminatory reason. Workplace violence and causing damage to company property represent unacceptable behavior at Nucor-Yamato, and constitute suitable grounds for termination. The caselaw is in full agreement on this common sense issue. *Clark v. Runyon*, 218 F.3d 915, 919 (8th Cir. 2000); *Ward v. Proctor & Gamble Paper Prods.*, 111 F.3d 558, 560 (8th Cir. 1997)**.** Accordingly, this Court should grant summary judgment on Washington's wrongful termination claim.

All of Washington's claims are questionable and should be rejected. His one claimed incident of racial harassment was merely hearsay that cannot possibly rise to the level of severity and pervasiveness required by the Eighth Circuit. His one alleged discriminatory denial of a promotion was for a job for which he had no qualifications. Washington's poor work record also generally disqualified him for any promotion. Finally, Washington's termination was based on his admitted workplace violence and destruction of company property. Once Washington's individual claim is extracted from the broader class allegations, it becomes clear that Washington has no case.

## VII.   CONCLUSION

Plaintiffs' claims were cobbled together in an attempt to get a class certified, while attempting to conceal the weaknesses of their individual claims. Once the class was shown to be unsupportable under Rule 23 (because of the inadequacies of the proposed representatives and the utter lack of commonality among the claims), the individual claims finally come to light for what they are—unsupported allegations of discrimination designed to create the illusion of a class claim. As a matter of law, Plaintiffs cannot prove any disparate impact or pattern and practice of discrimination. Likewise, each of their individual claims contains substantial legal

flaws that render them incapable of surviving summary judgment.   Therefore, Defendants respectfully request that this Court reject all of Plaintiffs' individual claims.

Respectfully submitted,

Terry E. Schraeder
Alaniz & Schraeder, L.L.P.
2500 City West Boulevard, Suite 1000
Houston, Texas  77042
Tel:  (281) 531-0927
Fax: (281) 531-8024

D.P. Marshall Jr.
Barrett & Deacon, P.A.
300 South Church Street
P.O. Box 1700
Jonesboro, AR  72403

By:  ___/s/ Terry E. Schraeder_____
ATTORNEYS FOR DEFENDANTS
Nucor-Yamato Steel Company (Limited Partnership), Nucor Steel-Arkansas (a division of Nucor Corporation), and Nucor Corporation.

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the 5th day of October, 2006, I electronically filed the foregoing document with the Clerk of Court using the CM-ECF system, which shall send notification of such filing to the following:

> Robert L. Wiggins, Jr.
> Ann K. Wiggins
> Benjamin J. DeGweck
> Wiggins, Childs, Quinn, & Pantazis, P.C.
> The Kress Building
> 301 19th Street North
> Birmingham, AL 35203


> Phillip E. Kaplan
> Kaplan, Brewer, Maxey & Haralson, P.A.
> 415 Main Street
> Little Rock, Arkansas 72201

I also mailed this document to:

> David Sanford
> 2121 K. Street NW, Suite 700
> Washington, D.C.  20037

> Grant Morris
> 2121 K. Street NW, Suite 700
> Washington, D.C.  20037


                                    /s/ D.P. Marshall Jr.
                                      D.P. Marshall Jr.