IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| CORNELIUS BENNETT, *et al.*, | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | CIVIL ACTION NO: |
| V. | § | 3:04 CV-00291 SWW |
| | § | JURY DEMAND |
| | § | |
| NUCOR CORPORATION, *et al.*, | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**BRIEF IN SUPPORT OF DEFENDANTS NUCOR-YAMATO STEEL COMPANY
(LIMITED PARTNERSHIP) AND NUCOR CORPORATION'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

I.      PRELIMINARY STATEMENT

Pursuant to Rule 56, Defendants Nucor-Yamato Steel Company (Limited Partnership) and Nucor Corporation ("Nucor" or "Defendants") respectfully bring this Motion for Partial Summary Judgment on the training claims asserted by Plaintiffs Rodney Washington, Sylvester Rogers, Clifton Lee, and Ozzie Green.   The Eighth Circuit has recently held that a denial of training alone does not rise to the level of an adverse employment action under Title VII.  *See Clegg v. Arkansas Department of Correction,* 496 F.3d 922, 927-28 (8th Cir. Aug. 13, 2007) and *Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. March 20, 2007), *respectively*.   Under this precedent, and other reasons not briefed in Nucor's Original Motion for Summary Judgment, Nucor brings this motion for partial summary judgment on Plaintiffs' training claims.

## II.     STATEMENT OF FACTS

Plaintiffs Rodney Washington, Ozzie Green, Clifton Lee, and Sylvester Rogers are current and former employees in the Roll Mill Department at Nucor-Yamato Steel ("NYS").[1] Each Plaintiff claims that he was denied training opportunities at Nucor-Yamato Steel ("NYS").[2]

### A.  Roll Mill Training Programs

Roll Mill Department employees can request training through two different training systems at NYS: a formal training program and an informal training program.[3]

### 1.  Formal Training In The Roll Mill

Under the formal training program, Roll Mill employees fill out an application to train in different Roll Mill Department positions.[4]   Formal training must be completed on an employee's off days because the employee is needed at his regular assigned position during normal work hours.[5]   The formal program consists of a thirteen week training schedule, where the employee can train one day per week under the supervisor in charge of the specific job for which the employee wants training.[6]   Normally, when an employee wants to train on another crew, then formal cross-training is the system used.[7]

### 2.  Informal Training In The Roll Mill

Under the informal training system, employees receive training for positions near, or related to, their immediate assigned work area.[8]   Generally, informal training is limited to times

---

[1] Deposition of Clifton Lee, Ex. 108  p. 18, ln. 1-7; Deposition of Sylvester Rogers, Ex. 109 p. 22 ln. 22-p. 23 ln. 3; Deposition of Rodney Washington, Ex. 110 p. 100, ln. 1-11;  Deposition of Ozzie Green, Ex. 111 p. 76, ln. 16-24.

[2] Deposition of Rodney Washington, Ex. 110, p. 90 ln. 12-22;  Deposition of Ozzie Green, p. 27 ln. 4-24; p. 64 ln. 23-p. 65 ln. 6; p. 66, ln. 21-p. 67 ln.3; p. 69, ln. 11-21;  Deposition of Sylvester Rogers, Ex. 109 p. 129 ln. 16-p. 130, ln. 10; Plaintiffs' Third Amended Complaint, p. 14.

[3] Affidavit of Mike Dugan, Ex. 112 ¶ ¶ 13, 14

[4] Affidavit of Mike Dugan, Ex. 112 ¶ 13.

[5] Id.

[6] Id.

[7] Deposition of Steve Jackson, Ex. 113 p. 224, ln. 17-19.

[8] Affidavit of Mike Dugan, Ex. 112 ¶ 14.

when production rates are slowed or reduced due to maintenance and repairs.[9]  Informal training can also include employees covering each other's positions during breaks, meals, or work stoppages.[10]   Every employee has the opportunity to informally train within their crew.[11]  But if an employee wants to informally train, he must go to his supervisor and express an interest in a position.[12]   Additionally, employees may informally train when production rates allow. [13] Before an employee can informally train, an employee should be proficient in their current position.[14]  The employee's supervisor makes the determination of whether an employee is adept in their current position.[15]  In the Roll Mill Department, informal training is less common than formal training.[16]

### 3.  All Employees Are Provided The Opportunity To Train

All Roll Mill Department employees are encouraged to train at various positions in the Department.[17]   Employees who request training in the Roll Mill Department are never denied the opportunity to train—but training may be delayed depending on several factors.[18]  The main factors which can delay training opportunities include: 1) whether other employees are already training ahead of that employee; 2) whether there is mandatory safety training required before an employee can begin training; and 3) whether an employee's training request can be accommodated during times of peak production.[19]  During full production times, there is little

---

[9] Id.
[10] Id.
[11] Id.
[12] Deposition of Mike Dugan, Ex. 114 p. 161, ln. 9—p. 162, ln. 6.
[13] Id.
[14] Id., p. 162, ln. 7—p. 163, ln. 5.
[15] Id., p. 167, ln. 3-8.
[16] Affidavit of Mike Dugan, Ex. 112 ¶ 14.
[17] Affidavit of Mike Dugan, Ex. 112 ¶ 12; Deposition of Steve Jackson, Ex. 113 p. 224, ln. 11.
[18] Affidavit of Mike Dugan, Ex. 112 ¶ 12; Deposition of Durrell Warren, Ex. 115 p. 177, ln. 18-19.
[19] Affidavit of Mike Dugan, Ex. 112 ¶ 12.

opportunity for an employee to leave his assigned position to train elsewhere.[20]  Due to these factors, employees seeking additional training may have to wait until times when training will not affect safety, quality or production.[21]

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is designed to assure the just, speedy, and inexpensive determination of every action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S. Ct. 2548, 2554 (1986). Summary judgment is proper when there is no genuine issue of material fact, making the moving party entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Wormley v. Arkla, Inc.*, 871 F.Supp. 1079, 1081–82 (E.D. Ark. 1994).  When a defendant moves for summary judgment on the plaintiff's cause of action, it may satisfy its summary judgment burden by either presenting evidence that negates the existence of a material element of a plaintiff's claim or by showing there is no evidence to support an essential element of the plaintiff's claim.  *Celotex*, 477 U.S. at 322–24.  To avoid summary judgment the plaintiff must make a sufficient showing on every essential element of his case on which he bears the burden of proof.  *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 857 (8th Cir. 2004).

## IV.   LEGAL STANDARD TO SUPPORT A RACE DISCRIMINATION CLAIM

In order to establish a *prima facie* case of race discrimination in the Eighth Circuit, Plaintiffs must show that they: (1) are members of a protected group; (2) were meeting the legitimate expectations of their employer; (3) suffered an adverse employment action; and (4) similarly-situated employees who are not members of the protected group were treated differently. *Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) (citing *Gilmore v. AT & T*, 319 F.3d 1042, 1046 (8th Cir. 2003)).

---

[20] Affidavit of Mike Dugan, Ex. 112 ¶ 12.
[21] Id.

### A.  Denial Of Training Is Not An Adverse Employment Action.

"[An] adverse employment action must be one that produces a material employment disadvantage." *Higgins*, 481 F.3d at 584 (citing *Kerns v. Capital Graphics, Inc*., 178 F.3d 1011, 1016-17 (8th Cir. 1999)).   The Eighth Circuit has repeatedly held, and even recently reaffirmed its position, that "an employer's denial of an employee's request for more training is not, without more, an adverse employment action." *Clegg,* 496 F.3d 922, 927-28; *Higgins*, 481 F.3d at 584; *Box v. Principi*, 442 F.3d 692, 697 (8th Cir. 2006); *Griffith v. Des Moines*, 387 F.3d 733, 737 (8th Cir. 2004).   Rather, an adverse employment action must produce a "material employment disadvantage." *Higgins*, 481 F.3d at 584 (*quoting Kerns*, 178 F.3d at 1016-17).   Some examples of a "material employment disadvantage" include "termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." *Id.*   Minor changes in duties or working conditions, even unpalatable or unwelcome ones, are not material employment disadvantages. *Baucom v. Holiday Cos.*, 428 F.3d 764, 767 (8th Cir. 2005).

### B.  To Survive Summary Judgment, Similarly-Situated Non-Minority Employees Must Receive The Same Training Plaintiffs Were Denied.

To meet the fourth element in a disparate treatment claim, a plaintiff must show that other specific employees outside of the protected group were allegedly treated more favorably and were "similarly situated in all relevant respects." *McGinnis v. Union Pacific R.R*., 2007 WL 2214432, \*4 (8th Cir. 2007); *Pope v. ESA Servs*., 406 F.3d 1001, 1009 (8th Cir. 2005).   The test for determining whether employees are similarly situated to a plaintiff is a rigorous one. *E.E.O.C. v. Kohler Co*., 335 F.3d 766, 775-76 (8th Cir. 2003).   To establish that a similarly-situated employee received more favorable treatment, the evidence must show that the similarly-situated employee "dealt with the same supervisor, [was] subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Cherry v.*

*Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004) (internal quotation omitted).   Unless

Plaintiffs can show that a similarly-situated employee received the favorable treatment they were

allegedly denied, they cannot meet their *prima facie* burden.  *McGinnis,* 2007 WL 2214432, *4;

*Pope*, 406 F.3d at 1009.

### C.  Mere Allegations Without Specific Facts Cannot Survive Summary Judgment.

The Eighth Circuit has held that "mere allegations which are not supported with specific

facts are not enough to withstand [a] motion" for summary judgment.  *Klein v. McGowan*, 198

F.3d 705, 709 (8th Cir. 1999); *see also Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104,

1110 (8th Cir. 1998) (Conclusory assertions insufficient to make *prima facie* showing of Title

VII violation).  Therefore, Plaintiffs must present specific facts and evidence to meet their *prima*

*facie* burden—general allegations are insufficient.  *Rose-Maston*, 133 F.3d at 1110.

### 1.  Rodney Washington's Training Claims Should Dismissed As A Matter Of Law.

Plaintiff Rodney Washington's training claims cannot survive summary judgment for

three reasons.   First, Washington claims NYS supervisors denied him training in certain

instances.[22]    However, during his deposition, Washington testified that there was only one

position where he claims to have been denied training.[23]  But Washington offers no testimony or

proof that the alleged training denial caused him any material disadvantage.[24]   In fact,

Washington admits he actually received cross-training while he worked at NYS.   Deposition of

Rodney Washington, p. 139, ln. 17—p. 140, ln. 20; p. 177, ln. 21-22; p. 194, ln. 11-14.

Washington's claims that he was denied training in one instance, but received training in others,

---

[22] Deposition of Rodney Washington, Ex. 110, p. 90, ln. 12-22.
[23] Deposition of Rodney Washington, Ex. 110, p. 162, ln. 11-20.
[24] *See generally* Declaration of Rodney Washington, Ex. 116; Second Declaration of Rodney Washington, Ex. 117; Washington originally claimed that he was discriminatorily denied promotions at NYS—but his promotions claims were dismissed on summary judgment. Order on Motion for Summary Judgment, Dkt. 164.

makes his claims similar to the Plaintiff in *Clegg*.  In *Clegg*, the Plaintiff alleged that she was denied training once but the record showed that she received other training from her employer. *Clegg,* 496 F.3d at 927-28.  The Eighth Circuit held that "there is no indication that the denial of this one training session had any impact on [Plaintiff's] eligibility for benefits such as a promotion or pay raise" and affirmed the district court's grant of summary judgment. *Id*.  Similar to *Clegg*, Washington's nebulous training claim cannot account for the fact that, by his own admission, Washington did receive training while working at NYS.  Therefore, Washington's training claim fails and should be dismissed since there is no indication that the alleged denied training had an impact on his eligibility for benefits.  *Clegg,* 496 F.3d at 927-28; *Higgins*, 481 F.3d at 584.

Second, Washington does not claim that any similarly-situated non-minority employees received the training that he was allegedly denied.[25]  Washington's training claim cannot survive summary judgment if he cannot show that other similarly-situated employees outside of the protected group received the training he was denied. *McGinnis*, 2007 WL 2214432, *4; *Pope*, 406 F.3d at 1009.

Finally, Washington does not say who allegedly denied him training for the position, when it was denied, whether he requested formal or informal training, or what reasons were given for the denial.[26]  Mere allegations, not supported with specific facts, cannot withstand a motion for summary judgment.  *Klein*, 198 F.3d at 709; *Gammon v. Flowers*, No. 2:04CV00205 SWW, 2006 WL 618899 (E.D. Ark. 2006) (unpublished) (summary judgment granted on a training claim when plaintiff could not provide any evidence other than his own allegation); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (Plaintiff may

---

[25] *See generally* Declaration of Rodney Washington, Ex. 116; Second Declaration of Rodney Washington, Ex. 117.
[26] Deposition of Rodney Washington, Ex. 110, p. 162, ln. 11-20; *See generally* Declaration of Rodney Washington, Ex. 116; Second Declaration of Rodney Washington, Ex. 117.

not rest on mere allegations or denials of his pleading but must "come forward with specific facts showing that there is a genuine issue for trial").  In a similar case involving discriminatory denial of training opportunities, the Sixth Circuit held that:

> [Plaintiff] simply asserts that she "was not given the same opportunities and/or treatment enjoyed by her male counterparts."  But she does not identify which employees were receiving training or what training these employees received. The district court correctly held that "[a]lthough Ms. Martin's vague and unsubstantiated assertions may be appropriate to state a claim in a complaint, they are insufficient to satisfy her burden on summary judgment."

*Martin v. General Elec. Co*., 187 Fed. Appx. 553, 560 (6th Cir. 2006).  Like the Plaintiff in *Martin*, Washington cannot meet his *prima facie* burden by resting on mere allegations, and therefore, his training claim cannot survive summary judgment under Eighth Circuit precedent.

## 2. Clifton Lee's Training Claims Should Be Dismissed As A Matter Of Law.

Plaintiff Clifton Lee's training claims should also be dismissed for three reasons.  First, Lee claims "every time I requested to be . . . trained in any part of the plant, I was given the 'third degree' by my supervisors…"[27]  But Lee contradicts his training allegation by testifying that, during the period he worked at NYS II, he was "too busy" to find time for training.[28]  Although Lee claims that the training delays hurt his chances for promotion, Lee does not explain which promotions he believes training would have improved his qualifications.[29]   Lee's simple assertion that limited training opportunities hurt his chances for promotion, without any supporting evidence, cannot withstand a motion for summary judgment.  *Matsushita Elec.*, 475 U.S. at 587; *Gammon*, 2006 WL 618899.   For this reason, Lee's training claim should be dismissed because the Eighth Circuit has held that a denial of training alone is not an adverse employment action.  *Clegg*, 496 F.3d at 927-28; *Higgins*, 481 F.3d at 584.

---

[27] Second Declaration of Clifton Lee, Ex. 118 ¶¶ 14, 25.
[28] Deposition of Clifton Lee, Ex. 108 p. 282, l. 14-18.
[29] *See generally* Declaration of Clifton Lee, Ex. 119; Second Declaration of Clifton Lee, Ex. 118.

Second, Lee fails to claim that any similarly-situated non-minority employees received the training that he was allegedly denied.[30]   Lee's failure to show that other similarly-situated employees outside of his protected group received the training he was denied renders his claim insufficient as a matter of law. *See McGinnis*, 2007 WL 2214432, *4; *Pope*, 406 F.3d at 1009. Finally, Lee does not allege who denied him training opportunities, when he was denied training opportunities, whether the training he was denied was under the formal or informal system, or what specific training opportunities he even sought.[31]   Given Lee's failure to provide any specificity to support his training allegation, this Court should dismiss Lee's training claim under *Klein* and *Matsushita Elec*.

### 3.   Ozzie Green's Denial Of Training Claims Should Be Dismissed As A Matter Of Law.

Ozzie Green also claims that he did not have the "training opportunities given white employees and applicants with whom I am familiar."[32]   Specifically, Green alleges he was denied training on the Cold Saw Operator position and "welder certification."[33]   However, there Green gives no indication that this alleged training denial caused him any material disadvantage. *See* Order on Motion for Summary Judgment, Dkt. 164, p. 34 (Granting summary judgment on Green's claims that he was denied two Inspection Bed Operator positions and supervisory jobs. There is no indication from the record that Cold Saw Operator training or "welder certification" is relevant to these dismissed promotions claims).   Moreover, Green admits that he did receive training while at NYS.[34]   Similar to Washington, Green's nebulous training claim cannot account for the fact that, by his own admission, Green did receive training while working at NYS and

---

[30] *See generally* Declaration of Clifton Lee, Ex. 119; Second Declaration of Clifton Lee, Ex. 118.
[31] *See generally* Declaration of Clifton Lee, Ex. 119; Second Declaration of Clifton Lee, Ex. 118.
[32] Second Declaration of Ozzie Green, Ex. 120 ¶ 24.
[33] Deposition of Ozzie Green, Ex. 111 p. 158, ln. 21—p. 159, ln. 5, p. 161, ln. 20—p. 162, ln. 7
[34] Deposition of Ozzie Green, Ex. 111 p. 153 ln. 16-24); p. 162 ln. 13-p. 163 ln. 14.

there is no indication that the alleged denied training had any impact on his eligibility for benefits. *Clegg,* 496 F.3d at 927-28; *Higgins*, 481 F.3d at 584.

Second, while Green does generally allege that two white employees[35] were allowed to train on the Cold Saws, he makes no showing that these employees were similarly-situated.[36] Green's inability to show that other similarly-situated employees outside of the protected group received the training he was denied renders his claim insufficient as a matter of law. *See McGinnis*, 2007 WL 2214432, *4; *Pope*, 406 F.3d at 1009. Finally, Green does not allege who denied him training opportunities, when he was denied training opportunities, what type of training he applied for, or what specific jobs he sought training for.[37] Because Green fails to cite any specific factual basis to support his claims, this Court should dismiss his training claim under *Klein*.

### 4. Sylvester Rogers's Denial Of Training Claims Should Be Dismissed As A Matter Of Law.

Sylvester Rogers's training claims should also be dismissed for three reasons. First, Sylvester Rogers claims NYS supervisors denied him training in certain instances.[38] Specifically, Rogers states that he requested training in the following areas: OP-5, OP-4, Repair Bed, OP-1, OP-6 and OP-7.[39] But many of these allegations extend beyond the applicable Title VII statute of limitations period.[40] Rogers also does not allege what specific losses he suffered

---

[35] Deposition of Ozzie Green, p. 158, ln. 9—p. 161, ln. 19

[36] *See generally*, Declaration of Ozzie Green, Ex. 124; Second Declaration of Ozzie Green, Ex. 120.

[37] *See generally*, Declaration of Ozzie Green, Ex. 124; Second Declaration of Ozzie Green, Ex. 120.

[38] Declaration of Sylvester Rogers, Ex. 121 ¶ 9; Second Declaration of Sylvester Rogers, Ex. 122 ¶ 44.

[39] Deposition of Sylvester Rogers, Ex. 109 p. 120 ln. 19-p. 121 ln. 22.

[40] See 29 CFR 1601.13 (4)(ii)(A); Rogers's EEOC charge, Ex. 23 (Under Title VII, the relevant time period begins 300 days prior to the alleged violation reported on the EEOC charge. Therefore, because Rogers filed on August 10, 2004, many of his training claims are barred by Title VII's statute of limitations. *See* Sylvester Rogers Deposition, p. 123 ln. 11-p.124 ln. 17) (requesting training in OP-5 sometime around 2000); p. 124 ln. 18-p.125 ln. 23) (requesting training in OP-4 from Terry Dennis around 1999-2000); p. 125 ln. 24-126 ln. 6 (requesting training in the repair bed area around 1999-2000); p. 127 ln. 9-21(requesting training in the OP-6 position in 1999-2000); p. 127 ln. 22-p. 129 ln. 21 (requesting training in the OP-6 position in 1999-2000).

from this alleged denial of training at NYS.[41]    Moreover, Rogers admits that he frequently received other types of training while at NYS.[42]    Therefore, Rogers's training claim should be dismissed because he cannot show that his alleged denial of training caused him to suffer any material detriment.  *Clegg,* 496 F.3d at 927-28.  Moreover, Rogers's simple assertion that limited training opportunities hurt his chances for promotion, without any supporting evidence, cannot withstand a motion for summary judgment.  *Matsushita Elec.*, 475 U.S. at 587; *Gammon*, 2006 WL 618899.

Second, although Rogers's claims some white employees received training he was denied, he does not demonstrate how any of the employees were similarly-situated to him.[43] This factual omission renders Rogers's claims insufficient under *McGinnis* and *Pope*.  Finally, since Rogers does not say who allegedly denied him training, when the training was denied, or under what circumstances the training was denied[44] his allegations are not specific enough to survive summary judgment under *Klein*.

## V.    CONCLUSION

In sum, Plaintiffs Rodney Washington, Sylvester Rogers, Clifton Lee and Ozzie Green fail to meet their *prima facie* burden to bring a denial of training claim under Eighth Circuit precedent.  These plaintiffs cannot prove their alleged denial of training caused them any material disadvantage.  They cannot show that similarly-situated employees received the training they were denied.  They cannot even support their training claims with specific facts required to counter the summary judgment standard.  Accordingly, this Court should dismiss the training claims of Plaintiffs Washington, Rogers, Lee and Green as a matter of law.

---

[41] Declaration of Sylvester Rogers, Ex. 121 ¶ 9; Second Declaration of Sylvester Rogers, Ex. 122 ¶ 44.
[42] Deposition of Sylvester Rogers, Ex. 109 p. 155 ln. 19—p. 156 ln. 6; p. 178 ln. 9—p. 180 ln. 3; p. 198 ln. 22-199 ln. 12.
[43] *See generally*, Declaration of Sylvester Rogers, Ex. 121;  Second Declaration of Sylvester Rogers, Ex. 122.
[44] *See generally* Declaration of Sylvester Rogers, Ex. 121; Second Declaration of Sylvester Rogers, Ex. 122.

Respectfully submitted,

Terry E. Schraeder
John K. Linker
Micah S. Heilbrun
Alaniz & Schraeder, L.L.P.
2500 City West Boulevard, Suite 1000
Houston, Texas  77042
Tel:  (281) 833-2200
Fax: (281) 833-2240

Paul Waddell
Barrett & Deacon, P.A.
300 South Church Street
P.O. Box 1700
Jonesboro, AR  72403


By: ____/s/ Micah Heilbrun_____
ATTORNEYS FOR DEFENDANTS
Nucor-Yamato Steel Company (Limited Partnership), Nucor Steel-Arkansas (a division of Nucor Corporation), and Nucor Corporation.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of October, 2007, I electronically filed the foregoing document with the Clerk of Court using the CM-ECF system, which shall send notification of such filing to the following:

Robert L. Wiggins, Jr.
Ann K. Wiggins
Susan Donahue
Wiggins, Childs, Quinn, & Pantazis, P.C.
The Kress Building
301 19th Street North
Birmingham, AL 35203

Nate Coulter
Wilson, Engstrom, Corum & Coulter
200 South Commerce, Suite 600
P.O. Box 71
Little Rock, Arkansas  72203

/s/ Micah Heilbrun
Micah Heilbrun