IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| CORNELIUS BENNETT, ET AL. | * | |
| Plaintiffs | * | |
| VS. | * | |
| | * | NO.  3:04CV00291 SWW |
| NUCOR CORPORATION and | * | |
| NUCOR-YAMATO STEEL | * | |
| COMPANY | * | |
| Defendants | | |

## ORDER

Six plaintiffs bring this employment discrimination case against Nucor Corporation and Nucor-Yamato Steel Company (collectively "Nucor") pursuant to Title VII of the 1964 Civil Rights Act, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1981.  Plaintiffs, who are black, are current and former employees of Nucor's plant in Blytheville, Arkansas.  The case is before the Court on the following matters:  (1) Nucor's motion for partial summary judgment (docket entries #171, #172, #173), Plaintiffs' response in opposition (docket entries #180, #181, #182), and Nucor's reply (docket entry #190) and (2) Nucor's motion to strike Plaintiffs' third declarations (docket entries #183, #188), Plaintiffs' response in opposition (docket entry #191), and Nucor's reply (docket entry #192).  After careful consideration, and for the reasons that follow, the motion for partial summary judgment will be granted, and the motion to strike will be denied as moot.

**I.**

By order entered August 13, 2007, the Court granted in part and denied in part Nucor's

1

motion for summary judgment. The claims remaining for trial are as follows: (1) Plaintiffs' hostile environment claims; (2) Plaintiff Bennett's involuntary transfer claim; (3) Plaintiff Rogers's failure-to-train and retaliation claims; (4) Plaintiff Washington's failure-to-train claim; (5) Plaintiff Lee's failure-to-promote, failure-to-train, involuntary transfer, and retaliation claims, and (6) Plaintiff Green's failure-to-train claim.

Nucor filed a second motion for partial summary judgment[1] seeking dismissal of the remaining failure-to-train claims asserted by Washington, Lee, Green, and Rogers (hereinafter, referred to collectively as "Plaintiffs"). Nucor asserts that there are no genuine issues for trial with respect to Plaintiffs' failure-to-train claims because Plaintiffs are unable to show that they suffered an adverse employment action related to training or that similarly-situated employees outside of Plaintiffs' protected class received favorable treatment.

Because Plaintiffs seek to prove discriminatory treatment with circumstantial evidence,

---

[1] Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).   "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

their claims are properly evaluated under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). Under that framework, to create a presumption of discrimination, Plaintiffs must show the following: (1) they belong to a protected class; (2) they met all applicable job qualifications; (3) they suffered an adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated differently. *Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007)(quoting *Davis v. KARK-TV*, *Inc*., 421 F.3d 699, 704 (8th Cir. 2005)). If Plaintiffs establish a prima facie case, the burden shifts to Nucor to provide a legitimate, non-discriminatory reason for its action. *Id.* If Nucor meets that burden, then the burden shifts back to Plaintiffs to establish that the reasons proffered by Nucor are pretext for discrimination. *Id.*

### Adverse Employment Action

"'[An] adverse employment action must be one that produces a material employment disadvantage.'" *Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007)(quoting *Kerns v. Capital Graphics, Inc*., 178 F.3d 1011, 1016-17 (8th Cir.1999)). "'Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge.'" *Id.* However, "'an employer's denial of an employee's request for more training is not, without more, an adverse employment action.'" *See id.* at 585(quoting *Box v. Principi*, 442 F.3d 692, 697 (8th Cir.2006)(quoting *Griffith v. Des Moines*, 387 F.3d 733, 737 (8th Cir.2004)).

In an attempt to show adverse employment action, Plaintiffs speculate that denial of training opportunities prevented them from attaining job qualifications necessary for promotion. In separate declarations, each Plaintiff identifies 10 white employees who, during a time period

spanning December 1999 to February 2004, received training for particular jobs at Nucor and were subsequently hired or promoted to the jobs for which they received training. However, the undisputed record shows that training is only one of many factors that Nucor decisionmakers consider when making hiring decisions. Additionally, Plaintiffs submit no evidence showing that they were rejected for promotion to a particular position based on a lack of training.[2]

In *Baucom v. Holiday Companies*, 428 F.3d 764, 768 (8th Cir. 2005), *partial abrogation on other grounds recognized by Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007), the Eighth Circuit held that several negative disciplinary warnings and a negative performance evaluation, which had the potential to negatively affect the plaintiff's future employment prospects, did not amount to adverse employment action because the employer never used the warnings and evaluation to change the terms or conditions of employment to the detriment of the plaintiff. *See id*. at 768(citing *Burchett v. Target Corp*., 340 F.3d 510, 518 (8th Cir.2003)). Defendants assert that the same reasoning is applicable here, and the Court agrees. "[T]o be adverse, the denial of a . . . training opportunity must have a discernable, as opposed to a speculative, effect on the terms, conditions, or privileges of one's employment." *Higgins*, 481 F.3d at 585. Because Plaintiffs present no evidence that lack of training resulted in tangible adverse employment consequences to them, they have failed to show adverse employment action.

---

[2]The Court granted summary judgment in favor of Nucor on failure-to-promote claims asserted by Green and Rogers because these plaintiffs failed to present evidence that they possessed the minimum qualifications, which include qualifications other than training, necessary for a promotion. *See* docket entry #192, at 20, 32. Washington and Lee, on the other hand, came forward with evidence showing qualifications for particular positions they sought, but Nucor's stated reasons for denying their bids for promotion are unrelated to a lack of training. *See id.* at 22-25, 28-29.

**Similarly-Situated Employees**

In order to show disparate treatment, a plaintiff must show that his employer treated him less favorably than a similarly-situated employee who is not a member of the plaintiff's protected class. *See E.E.O.C. v. Kohler Co.* 335 F.3d 766, 775 -776 (8th Cir. 2003)(citing *Lynn v. Deaconess Medical Ctr.-West Campus,* 160 F.3d 484, 487 (8th Cir.1998)). In an effort to make this showing, Plaintiffs submit third declarations[3] that, for the most part, contain identical testimony. In each declaration, Plaintiffs repeat a list of white employees who they report received training "on the racially segregated rolling mill crews . . . . " Docket entry #180, Ex. #201, ¶ 22; Ex. #202, ¶ 22; Ex. #203, ¶ 22; Ex. #204, ¶ 22. The list includes over 150 entries containing a job title, an employee name, and the date on which the named employee completed training. The training completion dates range from December 1998 to November 2004.[4] Plaintiffs do not state that they requested training for the same position and at the same time as the employees on the list, but they claim that they sought training during the same period. *See id.* Immediately following the list, each plaintiff states: "I was denied such training by the two Roll Mill Department Managers under whom I worked: Franky Griggs prior to 2003 and Mike Dugan beginning in January 2003. . . . The supervisors reporting to Griggs and Dugan who were

---

[3]Each plaintiff submitted an initial declaration in support of the motion for class certification and a second declaration in opposition to Nucor's first motion for summary judgment.

[4]In its motion to strike Plaintiffs' third declarations, Nucor notes that Green, Washington, and Lee were not present at Nucor during the entire period from December 1998 to November 2004. *See* docket entry #148, Ex. #43 (Green Dec.) ¶ 16(stating that Green left Nucor in March 2004 when "it became obvious" that his race and participation in EEOC proceedings left him with no chance of promotion); docket entry #71. Ex. #2, ¶ 4(stating that Washington worked at Nucor from 1993 until 2003);*Lee v. Nucor*, case no. 4:07CV00455 WRW, Complaint, ¶ 10(alleging that Lee was on medical leave from Nucor from March 2004 until June 2005).

involved in denying me such training included Velon Marshall, Curtis Hawkins, Mark Huff, and Keith Shelton." Docket entry #180, Ex. #201, ¶ 24; Ex. #202, ¶ 24; Ex. #203, ¶ 24; Ex. #204, ¶ 23. Plaintiffs do not identify the supervisors involved in granting training to the white employees named on the list set forth in their decelerations.

Plaintiffs testify that their supervisors informed them that training opportunities were open to all employees.[5] They argue that because training was ostensibly available to all employees, all Nucor employees were similarly situated with respect to training opportunities.

---

[5] Mike Dugan, the manager of the roll mill department since 2003, acknowledges that informal cross-training is open to all employees, but he states that training might be delayed for several reasons. By affidavit, Dugan testifies:

> For example, an employee may have to wait to train at a position if other employees are . . . already cross-training ahead of that employee. Additionally, there may be mandatory safety training required before an employee can begin training in an area with specialized hazards. Another factor is whether an employee's cross-training request can be accommodated during high levels of production. The roll mill operates with as few employees as possible. During full production, there is little time for an employee to leave his position to train elsewhere. Further, an experienced worker cannot hand over his duties to an inexperienced employee during demanding production runs. Due to these factors, employees seeking training experience may have to wait until times when training will not affect safety, quality, or production.

*See* docket entry #172, Ex. #112 (Dugan Aff.) ¶ 12.

Plaintiffs deny that the factors cited by Dugan played a role in whether they received training. Each Plaintiff states: "No one has ever stated . . . that any of such factors applied to me. I was denied such training, not just delayed." Docket entry #180, Ex. #201, ¶ 30; Ex. #202, ¶ 30; Ex. #203, ¶ 30; Ex. #204, ¶ 29. Each Plaintiff further testifies: "There were many time periods that did not involve 'peak production periods' in the months and years following my requests for training." Docket entry #180, Ex. #201, ¶ 32; Ex. #202, ¶ 32; Ex. #203, ¶ 32; Ex. #204, ¶ 3. As for safety training, Plaintiffs state: "There was never any mandatory safety training that I lacked for jobs I requested to be trained on. Mandatory safety training was never given as a reason for denying me the one-the-job training I requested." Docket entry #180, Ex. #201, ¶ 36; Ex. #202, ¶ 36; Ex. #203, ¶ 36; Ex. #204, ¶ 35.

Additionally, Plaintiffs argue that at the prima facie stage, the burden to show dissimilar treatment of similarly situated employees is not onerous.

In *Rogers v. U.S. Bank, N.A.*, 417 F.3d 845, 851 (8th Cir. 2005), and more recently in *Fields v. Shelter Mut. Ins. Co.*, 2008 WL 763017, *4 (8th Cir. March 25, 2008), the Eighth Circuit acknowledged a conflicting line of cases in this Circuit regarding two different approaches for determining whether employees are similarly situated at the prima facie stage: the "low threshold" test and a more rigorous test that requires a showing that the plaintiff and his comparators are similarly situated in all relevant respects.

The *Rogers* panel applied a low threshold standard and required the plaintiff, who claimed that she was discharged based on race, to show that she and another employee were involved in or accused of the same or similar conduct but were disciplined in different ways. The Court stated that any distinguishing details would be relevant at the pretext, not the prima facie, stage. The *Fields* panel, in contrast, applied a more rigorous standard at the prima facie stage and required the plaintiff to show that she was similarly situated in all relevant respects to other employees who she claimed received higher pay.

The Court finds that even under a low threshold standard, each Plaintiff must at least show that he requested training for a particular job at a particular time, that a white employee requested the same training at the same time, and the same decisionmaker[6] denied Plaintiff's request and granted the white employee's request. Plaintiffs have failed to make this showing.

---

[6]"When different decision-makers are involved, two decisions are rarely similarly-situated in all relevant respects." *Stanback v. Best Diversified Prods., Inc*., 180 F.3d 903, 910 (8th Cir. 1999).

Because Plaintiffs Washington, Lee, Green, and Rogers have failed to establish a prima facie case of discrimination with respect to training, the Court finds no genuine issues for trial on these claims.

### III.  Motion to Strike Plaintiffs' Third Declarations

In support of its motion to strike, Nucor asserts that Plaintiffs' nearly identical third declarations "grossly expand" Plaintiffs' prior deposition testimony, contain self-serving, conclusory statements, and, for the most part, are not based on Plaintiffs' personal knowledge. As explained above, even considering Plaintiffs' third declarations, the Court finds no genuine issues for trial with respect to the failure-to-train claims. Accordingly, the motion to strike will be denied as moot.

### IV.

IT IS THEREFORE ORDERED that Defendants' motion for partial summary judgment (docket entry #171) is GRANTED. The failure-to-train claims asserted by Plaintiffs Washington, Lee, Green and Rogers are DISMISSED WITH PREJUDICE. The claims remaining for trial are as follows:  (1) Plaintiffs' hostile environment claims; (2) Plaintiff Bennett's involuntary transfer claim; (3) Plaintiff Rogers's retaliation claim; and (4) Plaintiff Lee's failure-to-promote, involuntary transfer, and retaliation claims.

IT IS FURTHER ORDERED that Defendants' motion to strike (docket entry #183) is DENIED AS MOOT.

IT IS SO ORDERED THIS 7TH DAY OF APRIL, 2008.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE